Electronically Filed - Johnson - December 23, 2015 - 12:13 PM

IN THE CIRCUIT COURT OF JOHNSON COUNTY, MISSOURI
AT WARRENSBURG

JAMES ANTHONY MUELLER )
2909 Endicott Ave )
St. Louis MO 63114, )
)
      Plaintiff, )
)
vs. )    Case No. 15 JO-CC00305
)
BRYAN ROY ESCABUSA )
430 West Cooper St. )
Tipton, MO 65081, )
(No Service Required) )
)
and )
)
SAFE AUTO INSURANCE COMPANY )
Serve: )
    Missouri Division of Insurance )
    120 South Central )
    Clayton, Missouri 63105, )
)
and )
)
COLUMBIA MUTUAL INSURANCE CO., )
Serve: )
    Missouri Division of Insurance )
    120 South Central )
    Clayton, Missouri 63105, )
)
      Defendants. )

## PLAINTIFF'S AMENDED PETITION FOR EQUITABLE GARNISHMENT
### PURSUANT TO MISSOURI REVISED STATUTE §379.200

COMES NOW Plaintiff and for his cause of action against Defendants, Bryan Escabusa,

Safe Auto Insurance Company (hereinafter Safe Auto) and Columbia Mutual Insurance Company

(hereinafter Columbia Mutual), for equitable garnishment pursuant to Missouri Revised Statute

§379.200, states as follows:



**PLAINTIFF'S EXHIBIT**

A

1.      At all times and places relevant herein, Plaintiff and Defendants, Bryan Escabusa, and Columbia Mutual are and were citizens of Missouri.

2.      At all times and places relevant herein, Safe Auto and Columbia Mutual were and are insurance corporations doing business in Missouri, and they maintain offices and agents in Johnson County, Missouri, to carry out their ordinary and customary business interest of selling and issuing auto insurance policies.  Safe Auto and Columbia Mutual sold to Bryan Escabusa and/or his family, Ronald and Emma Smith in Missouri their Missouri Personal Automobile policies that are at issue in this equitable garnishment action.

3.      At all times relevant herein, Safe Auto and Columbia Mutual are considered to be a citizens of the State of Missouri as Bryan Escabusa's and his parent's Missouri citizenship are imputed to them, to wit: Missouri See 28 U.S.C. §1332(c)(1), Kendall v. Northern Assurance, No.09-0539 CV-W GAF, 2009 US Dist. Lexis 75306, Prendergast v. Alliance General Insurance Company, 921 F.Supp. 653, 654-655 (E.D. Mo. 1996), Glover v. USAA Fire and Casualty Company, 984 F.2d 259 (8th Circuit 1993), Cincinnati Insurance Company v. R&L Siding, Inc., 01-4091 (W.D. Mo. June 21, 2002) and Parsons/Cantrell v. Allstate Insurance Company, No. 02-421 (W.D. Mo. 3-31-2003).

4.      Pursuant to Missouri Revised Statute §379.200 Bryan Escabusa is a necessary and proper party to this equitable garnishment action.  See Prendergast v. Alliance General Insurance Company, 921 F.Supp. 653, 654-655 (E.D. Mo. 1996).

5.      On May 22, 2012, and at all times relevant herein, Defendant Safe Auto and Columbia Mutual maintained offices and agents in Johnson County, Missouri, to carry on its ordinary and customary business of selling insurance policies to the public and said Defendants

2

sold and issued to Defendant Escabusa and his family two (2) auto insurance policies at issue in this garnishment case. Venue is proper in the Circuit Court of Johnson County, Missouri, pursuant to Missouri Revised Statute §508.010, State ex rel. Rothermich v. Gallager, 816 S.W.2d 194 (Mo. En Banc 1991) and State ex rel. Auto Owners Insurance Company v. Messina, 311 S.W. 3d 662, 665 (Mo. En Banc 2011). Defendants Safe Auto and Columbia Mutual sold and issued two (2) car insurance policies in Missouri to Bryan Escabusa and his family which insured Defendant, Bryan Escabusa's liability and negligence on May 22, 2012, for the motor vehicle accident that caused injuries to James Mueller and Plaintiff's resulting judgment against Bryan Escabusa. The Escabusa's Safe Auto and Columbia4 Mutual Insurance car insurance policies apply to the money judgment Plaintiff obtained against Defendant Escabusa all as relates to the motor vehicle accident of May 22, 2012.

6.　　On May 22, 2012, Plaintiff, James Mueller, was lawfully operating a 2001 Volkswagon westbound on Missouri Highway 50 in Tipton, Missouri.

7.　　At the aforesaid time and place, Defendant, Bryan Escabusa, was carelessly and negligently operating a 1996 Mercury Sable southbound on Independence Street in Tipton, Missouri, when he failed to obey the stop sign and proceeded in the intersection and into the path of the vehicle James Mueller was operating resulting in a violent collision. (See the Missouri Uniform Crash Report marked "Plaintiff's Exhibit 1," which is attached hereto and incorporated by reference.) This collision caused James Mueller to sustain severe and permanent injuries. Upon information and belief the 1996 Mercury Sable was owned by Emma Smith.

3

Electronically Filed - Johnson - December 23, 2015 - 12:13 PM

8.      When Safe Auto and Columbia Mutual refused to settle with Plaintiff, he filed a civil suit on October 21, 2013, against Bryan Escabusa for his damages in the Circuit Court of Moniteau County, Missouri, under Case No.: 13MT-CC00040.  (See Plaintiff's Exhibit A).

9.      On October 5, 2015, the Circuit Court of Moniteau County, Missouri, after hearing Plaintiff's evidence entered a money judgment in favor of Plaintiff, James Mueller, and against Defendant, Escabusa for $1,250,000.  (A copy of the Judgment is attached hereto and incorporated by reference marked as Exhibit B.)  The Court found Defendant, Bryan Escabusa legally liable to Plaintiff for his damages related to the motor vehicle collision of May 22, 2012. In addition, the Court awarded Plaintiff, James Mueller prejudgment interest.  On November 3, 2015, the court signed an Amended Judgment correcting the prejudgment interest award to $77,283.99 for a total judgment of $1,327,283.90. (See Exhibit C).  The aforesaid judgment has not been fully paid or satisfied by Safe Auto, Columbia Mutual or Defendant, Bryan Escabusa. Specifically, Safe Auto and Columbia Mutual have not paid all of the additional payments for prejudgment interest, post judgment interest, and all of the court costs due and owing on Plaintiff's final judgment.  Safe Auto and Columbia Mutual have not paid Plaintiff all that is covered by the Safe Auto and Columbia Mutual auto policies at issue. Columbia Mutual has not paid the liability coverage or the additional payments or supplementary payments for the interest and costs awarded Plaintiff and has denied coverage to Plaintiff.

11.      Pursuant to Missouri Revised Statute §379.200, Plaintiff, as a judgment creditor, hereby request this Court to enter a money judgment directly against Defendants Safe Auto and Columbia Mutual and to order Safe Auto and Columbia Mutual to pay to Plaintiff, in partial satisfaction of said judgment against Bryan Escabusa, all insurance coverages and benefits owed

4

under the Safe Auto and Columbia Mutual insurance policies, including the prejudgment interest and the post judgment interest accrued on said judgment and the court costs assessed in the underlying proceeding, and all other coverages owed and/or due under Defendant Escabusa's Safe Auto and Columbia Mutual insurance policies. Discovery is needed to determine if there are other polices that may insure Escabusa for Plaintiff's final Judgment to determine all coverages Defendants owe Plaintiff.

12.     At all times relevant herein, Safe Auto and Columbia Mutual have failed and refused to pay all sums of money due on Plaintiff's final judgment against Escabusa, and as provided for in Defendant's Safe Auto and Columbia Mutual insurance policies at issue herein. In addition, Columbia Mutual breached the contract of insurance by denying coverage to Defendant Escabusa and refusing to defend and indemnify him for Plaintiff's judgment against him.

13.     Plaintiff hereby proceeds in equity against Defendants Safe Auto, Columbia Mutual and Bryan Escabusa so as to reach and apply the insurance money under all applicable auto insurance policies in partial satisfaction of Plaintiff's final judgment against Bryan Escabusa and to obtain a direct money judgment against Safe Auto and Columbia Mutual so as to collect all insurance coverages and benefits under all auto insurance policies applicable to Plaintiff's final judgment against Defendant Escabusa.

14.     Plaintiff prays for a money judgment directly against Safe Auto and Columbia Mutual as set forth herein so as to reach all of the insurance money owed under Defendant Escabusa's Safe Auto and Columbia Mutual insurance policies pursuant to Missouri Revised Statute §379.200.

Electronically Filed - Johnson - December 23, 2015 - 12:13 PM

15.     Bryan Escabusa's Safe Auto and Columbia Mutual insurance policies at issue herein were in full force and effect at the time of the subject motor vehicle wreck of May 22, 2012, and Bryan Escabusa qualified as an insured under those policies and the vehicle he was driving was covered. Safe Auto and Columbia Mutual have failed and refused to pay all of the insurance money and coverages owed under said auto policies to Plaintiff on his final judgment against Defendant, Bryan Escabusa.

16.     Plaintiff has performed and complied with all terms precedent concerning his final judgment against Bryan Escabusa and his right to the insurance coverages of the Safe Auto and Columbia Mutual insurance policies at issue.

17.     Plaintiff has furnished to Safe Auto and Columbia Mutual and Bryan Escabusa due notice of his judgment against Bryan Escabusa and Safe Auto and Columbia Mutual had actual notice of Plaintiff's judgment against Defendant Escabusa.

18.     Safe Auto and Columbia Mutual, at all times relevant herein, have failed and refused to honor its contracts of insurance with Bryan Escabusa by paying to Plaintiff all sums due under the aforementioned insurance policies and as required by Missouri law. Safe Auto and Columbia Mutual have thereby breached their contracts of insurance with Bryan Escabusa and his family and necessitated the filing of this equitable garnishment action.

19.     Plaintiff is legally entitled to a money judgment directly against Safe Auto and Columbia Mutual pursuant to the final judgment the Plaintiff has against Bryan Escabusa all pursuant to Missouri Revised Statute §379.200 and as provided for in the Safe Auto and Columbia Mutual insurance policies at issue.

6

20.     Safe Auto and Columbia Mutual's insurance policies are ambiguous as to the Additional Payments or supplementary payments coverages as to interest and court costs and must be construed in favor of additional coverages owed Plaintiff.

21.     Defendant Escabusa had a reasonable expectation that the Safe Auto and Columbia Mutual auto policies would cover all interest awarded and the court costs assessed against him.

22.     The Safe Auto and Columbia Mutual auto policies are ambiguous as a matter of law because they promise additional payments or supplementary payments at one point and attempt to take it away at another point.  (See  Exhibit D).

23.     Plaintiff requests the Court to declare parties rights, duties and obligations under all auto insurance policies that insured Bryan Escabusa for Plaintiff's final judgment pursuant to Missouri Supreme Court Rule 87.01 and Missouri Revised Statute §527.010 et seq.

24.     The aforesaid motor vehicle insurance policies and provision as to the additional payments and supplementary payments for interest and costs are ambiguous and must be construed in favor of coverage for Defendant Escabusa and legally owed to Plaintiff.

25.     The aforesaid auto insurance policies and provision Defendants Safe Auto and Columbia Mutual may rely upon to limit coverage and/or exclude coverage are against Missouri's Public Policy and Missouri Appellate Court opinions and are therefore void and unenforceable.

26.     At the times relevant, and on May 22, 2012, Bryan Escabusa and his family lived and resided at 430 West Cooper Street, Tipton, Missouri 65081.

7

27.     Columbia Mutual Insurance Company wrongfully denied coverage to Bryan Escabusa for Plaintiff's claim and judgment, rendering Columbia Mutual liable for all resulting damages to Bryan Escabusa pursuant to <u>Columbia Casualty Company v. Hiar Holdings, LLC</u>, 411 S.W.3d 258 (Mo. En Banc. 2013).

WHEREFORE, Plaintiff prays for a direct money judgment against Defendants Safe Auto and Columbia Mutual for all coverages under their auto insurance policies including prejudgment interest, post judgment interest, liability coverages and for the statutory court costs of this action including all deposition costs and expenses pursuant to Missouri Revised §492.590, for a declaration of the parties' rights, duties and obligations under the Safe Auto and Columbia Mutual auto insurance policies and any other applicable insurance policies and for such other and further relief as the Court deems just and proper.

/s/ Wm. Dirk Vandever
Wm. Dirk Vandever – 24463
The Popham Law Firm
712 Broadway, Suite 100
Kansas City, MO 64105
Telephone: (816) 221-2288
Facsimile: (816) 221-3999
Email: dvandever@pophamlaw.com

ATTORNEY FOR PLAINTIFF,
JAMES MUELLER

8



IN THE CIRCUIT COURT OF MONITEAU COUNTY, AT CALIFORNIA, MISSOURI
CIRCUIT COURT DIVISION

JAMES ANTHONY MUELLER )
3021 Howey Creek Road )
Jefferson City, Missouri 65101, )
)
     Plaintiff, )
)
V. )    Case No. _____
)
BRYAN ROY ESCABUSA )
4776 Old Lohman Road )
Jefferson City, Missouri 65109 )
)
     Defendant. )

## PETITION FOR DAMAGES

Comes now Plaintiff, James Anthony Mueller and for his injury and related damage

claim against Defendant, Bryan Roy Escabusa, alleges and states as follows:

1. At all times and places relevant herein and on May 22, 2012, Plaintiff and

Defendant are and were citizens and residents of Missouri.

2. On May 22, 2012, at approximately 6:24 a.m., Plaintiff, James Mueller, and

Defendant were involved in a motor vehicle wreck that occurred on Missouri Highway 50 at

Independence Street in Tipton, Moniteau County, Missouri. (A copy of the Tipton Police

Department Missouri Uniform Accident Report concerning this wreck is attached hereto, marked

"Plaintiff's Exhibit 1," and incorporated by reference.)

3. Venue is proper in the Circuit Court of Moniteau County, Missouri, pursuant to

Missouri Revised Statute §508.010 because Plaintiff's first injuries and damages and the subject

motor vehicle wreck all occurred in Tipton, Moniteau County, Missouri.

*Exhibit A*

4.     On May 22, 2012, at approximately 6:24 a.m. Plaintiff, James Anthony Mueller, was lawfully operating a 2001 Volkswagen on Missouri Highway 50 westbound, at Independence Street in Tipton, Moniteau County, Missouri.

5.     At the aforesaid time and place, Defendant, Bryan Escabusa, was carelessly and negligently operating a 1996 Mercury Sable, owned by Emma Smith, southbound on Independence Street, when he disobeyed the stop sign and proceeded into the intersection and into the path of the vehicle James Anthony Mueller was operating causing a violent collision between the vehicles.

6.     As a direct and proximate result of said wreck, Plaintiff, James Anthony Mueller, sustained severe, permanent, progressive and disabling injuries as set forth herein.

7.     On May 22, 2012, and at the time of the subject motor vehicle wreck, Defendant was careless, negligent and at fault in causing the subject motor vehicle wreck and Plaintiff's resulting injuries and damages in the following respects, to-wit:

a.     Defendant drove in a careless and imprudent manner by failing to stop at the posted stop sign, by failing to keep a careful lookout and by failing to yield the right-of-way to James Mueller in violation of Missouri Revised Statutes §304.010, §304.012, §304.014, §304.351, and Tipton City Ordinance §320.030 constituting negligence per se;

b.     Defendant failed to keep a careful lookout for the roadway, other vehicles and for the vehicle Plaintiff, James Mueller, was operating;

c.     Defendant failed to yield the right-of-way to Plaintiff, James Mueller, in violation of Missouri Revised Statute §304.351 and Tipton City Ordinance§ 335.040, constituting negligence per se;

d.     Defendant knew or by the use of the highest degree of care could have known that there was a reasonable likelihood of collision in time thereafter to have stopped, slowed, swerved, slackened his speed,

sounded a warning, slackened his speed or sounded a warning, but Defendant failed to do so;

e.   Defendant failed to keep the motor vehicle he was operating under proper control and at the stop sign until it was clear for Defendant to proceed;

f.   Defendant failed to yield the right of way to Plaintiff in violation of Tipton City Ordinance §335.060 constituting negligence per se;

g.   Defendant failed to take timely and proper evasive action;

h.   Defendant operated his vehicle with defective equipment and mirrors in violation of Missouri Revised Statute §307.170 and Tipton City Ordinance §210.210 constituting negligence per se;

i.   Defendant failed to lawfully stop his motor vehicle at the stop sign before running into the motor vehicle James Mueller was driving;

j.   Defendant violated and pled guilty to knowingly causing property damage to Plaintiff's vehicle in violation of Tipton City Ordinance §210.300 constituting negligence per se;

k.   Defendant failed to take timely and appropriate evasive action to avoid a collision with the motor vehicle James Mueller was driving;

l.   Defendant violated the rules of the road as pled herein and in violation of Missouri Revised Statute §304.014 constituting negligence per se;

m.   Defendant failed to sound his horn before the collision;

n.   Defendant was driving a motor vehicle while using or attempting to use a cell phone;

o.   Defendant failed to properly stop his vehicle and remain at the stop sign until the intersection was clear before proceeding;

p.      Defendant failed to slow or stop his vehicle at the stop sign;

q.      Defendant failed to keep the motor vehicle he was operating under proper control and in his lane of travel;

r.      Defendant failed to drive on the right side of the highway in violation of Missouri Revised Statute §304.015 constituting negligence per se;

s.      Defendant drove too fast for the conditions;

t.      Defendant drove into the side of the vehicle James Mueller was driving;

u.      Defendant failed to see the stop sign and/or the vehicle James Mueller was driving;

v.      Defendant failed to obey the stop sign constituting per se for violating Tipton City Ordinance §335.040;

w.      Defendant failed to pull forward and stop and look before pulling out into the intersection;

x.      Defendant failed to stop at the proper point on the roadway so as to be able to see James Mueller's vehicle before proceeding into the intersection;

y.      Defendant failed to keep a careful lookout after driving past the stop sign and into the intersection; and

z.      Defendant failed to stop his motor vehicle before the collision with Plaintiff's vehicle.

8.      As a direct and proximate result of the aforesaid motor vehicle wreck and the carelessness and negligence of the Defendant, Plaintiff, James Mueller, sustained severe, progressive, painful and disabling injuries to his neck and right leg consisting of a femoral shaft fracture – requiring reduction and intramediullary nailing of the femur and decreased strength and muscle control of right leg. He has been caused to undergo medical treatment and he has incurred expenses in connection therewith and will continue to incur expenses in connection

therewith in the future. He has lost income and will lose income in the future. All of the aforesaid injuries are permanent except for those of a superficial nature.

9. As a direct and proximate result of the carelessness and negligence of the Defendant, all as aforesaid and of said collision, Plaintiff, James Mueller, prays for fair and reasonable damages against Defendant.

10. On July12, 2013, Plaintiff, James Mueller, offered to settle his injury claim against Defendant for $250,000.00 in accordance with Missouri Revised Statute §408.040.

11. The offers were sent in writing and by certified mail, return receipt requested, to Defendant and to his representatives/attorneys and to Safe Auto Insurance Company and Columbia Insurance Company.

12. The offer was left open for ninety (90) days after receipt in accordance with Missouri Revised Statute§408.040.

13. Plaintiff submitted his supportive documents, medical records and bills and a list of medical providers along with a medical authorization to Defendant and his representatives/attorneys and to Safe Auto Insurance Company and Columbia Insurance Company.

14. Defendant received the written prejudgment interest settlement offer on July 18, 2013.

15. Safe Auto Insurance Company and Columbia Insurance Company received the written prejudgment interest settlement offer on July18, 2013.

16. Defendant's attorneys received the written prejudgment interest settlement offer on July 15, 2013.

17. Plaintiff believes his injury claim exceeds his offer of settlement.

18.   Plaintiff, James Mueller, requests the Court to award prejudgment interest against Defendant pursuant to Missouri Revised Statute §408.040 after a judgment is rendered in this case.

WHEREFORE, Plaintiff, James Anthony Mueller, prays for judgment against Defendant for fair and reasonable damages for his bodily injuries and related damages, together with the statutory court costs, including all deposition costs and expenses pursuant to Missouri Revised Statute §492.590, for prejudgment and post-judgment interest at the lawful rate per annum pursuant to Missouri Revised Statute §408.040 and for such other and further relief as the Court shall deem just and proper under the facts and circumstances.

ANDREW J. GELBACH          #26003
Professional Corporation
Attorney at Law
109 East Market Street
Post Office Box 375
Warrensburg, MO  64093
Telephone:  (660) 747-5138
FAX:  (660) 747-8198
Email:  agelbach@gelbachlaw.com

ATTORNEY FOR PLAINTIFF

**1 – GENERAL CRASH INFORMATION**

SPACE USED FOR BARCODE

AGENCY NAME AND ORI: *Tipton Police Dept.* Mo 0680200

| LEFT THE SCENE | DRIVER NO. | CLEARED | CRASH CLASSIFICATION | PROPERTY DAMAGE ONLY | NO. INJURED | NO. KILLED | REPORT / CASE / INCIDENT NUMBER |
|---|---|---|---|---|---|---|---|
| ☐ Yes ☒ No | 2 | ☒ Yes ☐ No | | | 2 | 0 | 12-13 |

| NO. VEH. INV. | CRASH DATE | CRASH TIME (MIL.) | NOTIFIED DATE | TIME NOTIFIED (MIL.) | INVESTIGATION DATE | TIME ARRIVED (MIL) | INVEST. AT SCENE |
|---|---|---|---|---|---|---|---|
| 2 | 5-22-12 | 06:24 | 5-22-12 | 06:26 | 5-22-12 | 06:52 | ☒ Yes ☐ No |

**CRASH TYPE**
- ROADWAY: ☒ On Roadway ☐ Off Roadway
- NON-COLLISION: ☐ Overturning ☐ Fire / Explosion ☐ Immersion ☐ Jackknife ☐ Fell/Jumped From MV ☐ Cargo / Equip Loss / Shift ☐ Other Non-Collision
- COLLISION INVOLVING: ☐ Animal ☐ Pedalcycle ☐ Fixed Object ☐ Other Object ☐ Pedestrian ☐ Railway Vehicle ☐ Animal Drawn Veh / Animal Ridden Trans. ☒ Motor Vehicle in Transport → ☐ Parked Motor Vehicle → ☐ Working Motor Vehicle →
- DIRECTIONAL ANALYSIS FOR IMPACT WITH MOTOR VEHICLE: ☐ Front to Front ☐ Front to Rear ☐ Rear to Rear ☐ Rear to Side ☒ Angle ☐ Sideswipe (Same Dir.) ☐ Sideswipe (Opp. Dir.) ☐ Falling / Shang Cargo (Set in motion by MV) ☐ Other (Explain) ☐ Unknown (Explain)

**COMMERCIAL MOTOR VEHICLE INVOLVEMENT CRITERIA** – Answer the following to determine if the "Commercial Vehicle" fields in Section 7G must be completed.

1. Does this crash involve any of the following?
   1a. A person fatally injured; OR
   1b. A person transported for medical attention; OR
   1c. A vehicle towed due to disabling damage.
   ☒ No – No commercial vehicle fields need completion.
   ☐ Yes – Go to number 2.

2. Examine each vehicle to determine if it is a commercial vehicle based upon the following:
   2a. A truck / cargo van with GVWR / GCVWR of more than 10,000 lbs; OR
   2b. A motor vehicle with seating for 9 or more including driver; OR
   2c. A vehicle with a hazardous materials placard.
   ☒ No – Non commercial vehicle fields need completion.
   ☐ Yes – Complete Section 7G for appropriate vehicle.

| EVIDENTIARY PHOTOS TAKEN | BY WHOM | | AVAILABLE FROM ☐ Investigating Agency |
|---|---|---|---|
| ☐ Yes ☒ No | | | |
| RECONSTRUCTION ☐ Yes ☒ No | BY WHOM | | AVAILABLE FROM ☐ Investigating Agency |

**2 – LOCATION**

| COUNTY | MUNICIPALITY | BEAT / ZONE | TRP/DIST/PCT | GPS COORDINATES (DD MM.S.S FORMAT) |
|---|---|---|---|---|
| *Moniteau* | *Tipton* | T-1 | P-6 | LAT: N    LONG: W |

| ON | RDWY. DIR. | DISTANCE FROM | LOCATION | INTERSECTING |
|---|---|---|---|---|
| HWY 50 W | | ___ ☐ NA Feet<br>___ ☐ Before Miles | ☐ After ☐ NA ☒ At | *Independence St* |

| SPEED LIMIT | ROAD MAINTAINED BY | | INTERSECTING SPEED LIMIT | INT. DIR. | GEO-CODE |
|---|---|---|---|---|---|
| 35 | ☒ State ☐ County ☐ Municipal ☐ Private Property ☐ Other ☐ Unknown | | 25 | | |

**TRAFFICWAY**
- ☐ One-Way ☒ Two-Way; Not Divided ☐ Two-Way; Divided; Unprotected Median ☐ Other
- ☐ Two-Way; Not Divided; Continuous Center Turn Lane ☐ Two-Way; Divided; Positive Median Barrier ☐ Unknown

**ROAD ALIGNMENT:** ☒ Straight ☐ Curve ☐ Unknown (Explain)

**ROAD PROFILE:** ☒ Level ☐ Downhill ☐ Dip ☐ Uphill ☐ Hillcrest ☐ Unknown (Explain)

**INTERSECTION TYPE**
- ☒ NA ☒ 4-way Intersection ☐ Y-Intersection ☐ 5-way / More ☐ Unknown (Explain)
- ☐ T-Intersection ☐ Roundabout ☐ Other (Explain)

**ROAD CONDITION:** ☒ Dry ☐ Snow ☐ Slush ☐ Standing Water ☐ Sand / Gravel ☐ Unknown (Explain) ☐ Wet ☐ Ice / Frost ☐ Mud / Dirt ☐ Moving Water ☐ Other (Explain)

**ROAD SURFACE:** ☐ Concrete ☐ Brick ☐ Dirt / Sand ☐ Cobblestone ☐ Other (Explain) ☒ Asphalt ☐ Gravel ☐ Multi-Surface ☐ Unknown (Explain)

**WEATHER CONDITION:** ☒ Clear ☐ Rain ☐ Sleet / Hail ☐ Fog / Mist ☐ Other (Explain) ☐ Cloudy ☐ Snow ☐ Freezing (Temp) ☐ Severe Crosswind ☐ Unknown (Explain)

**LIGHT CONDITION:** ☒ Daylight ☐ Dark-Lighted ☐ Dark-Unlighted ☐ Dark-Unknown Lighting ☐ Other (Explain) ☐ Unknown (Explain)

**3 – DAMAGE TO PROPERTY OTHER THAN VEHICLES** ☒ None

LIST OWNER'S NAME & ADDRESS, DESCRIPTION OF PROPERTY, AND DAMAGE. ☐ MoDOT ☐ County ☐ Municipality

PLAINTIFF'S EXHIBIT

1

**4 – WITNESS** ☒ None Identified ☐ Additional Witnesses in Narrative

| NAME | ADDRESS (Street, City, State, Zip) | PHONE NUMBER |
|---|---|---|
| | | |
| | | |
| | | |
| | | |

**5 – PEDESTRIAN** ☒ NA ☐ Law Enforcement Officer ☐ Other Emergency Services Personnel ☐ MoDOT Worker ☐ Other Trafficway Worker ☐ Other Pedestrian

| NO. | NAME (Last, First, MI) & ADDRESS (Street, City, State, Zip) | | PHONE NUMBER |
|---|---|---|---|
| | | | |

| DATE OF BIRTH | SEX | STRUCK BY VEH #: | INJ | TRANS-PORT | SAFETY DEVICES | LOCATION |
|---|---|---|---|---|---|---|
| | | | | | | ☐ On Roadway ☐ In Driveway Access ☐ On Median / Crossing Island<br>☐ On Sidewalk ☐ Off Roadway ☐ Unknown |

**CROSSING ROAD** ☒ NA
☐ With Signal ☐ Not At Crosswalk
☐ Against Signal ☐ In Marked Crosswalk
☐ No Signal ☐ In Unmarked Crosswalk
☐ Unknown

**OTHER ACTIONS** ☐ NA / None
☐ Getting On / Off Vehicle
☐ Standing / Lying / Sitting in Trafficway
☐ Pushing / Working On Vehicle
☐ Behind / In Front of Parked Veh.
☐ Working in Trafficway
☐ Playing in Trafficway
☐ Walking / Running in Trafficway
☐ With Traffic ☐ Against Traffic
☐ Unknown
☐ Other (Explain)

**SCHOOL INFO.** ☐ NA
☐ Going To / From School
☐ Getting On / Off School Bus
☐ Both Of The Above
☐ Unknown (Explain)

**PROBABLE CONTRIBUTING CIRCUMSTANCES** ☐ None
☐ Failed To Yield ☐ Alcohol (Explain) ☐ Other (Explain)
☐ Distracted / Inattentive ☐ Drugs ☐ Physical Impairment (Explain) ☐ Unknown (Explain)

**DISTRACTED / INATTENTIVE CODE(S)** ☐ NA

**ALCOHOL USE** ☐ Yes ☒ No ☐ Unknown

Case 2:15-cv-04224-NKL   Document 6-1   Filed 12/28/15   Page 15 of 82

| 6. COLLISION DIAGRAM | Compass Direction Before Crash Event(s) (Circle One) | V1 N E S W U | V2 N E S W U | V3 N E S W U | V4 N E S W U | V5 N E S W U | V6 N E S W U |
|---|---|---|---|---|---|---|---|



INDICATE NORTH

HWY 30 West

North INDEPEN. ST

INDICATE ROAD NAMES

DIAGRAM NOT TO SCALE

Case 2:15-cv-04224-NKL   Document 6-1   Filed 12/28/15   Page 16 of 82

**7 - DRIVERS, VEHICLES, OWNERS, & OCCUPANTS**

**7A. DRIVER - NAME** (Last, First, MI) & ADDRESS (Street, City, State, Zip)
Escobusu Bryon Roy R

PHONE NUMBER: 573-448-2164

| DRIVER LICENSE / ID NUMBER | STATE | LIC STATUS | | | | LIC TYPE | | | MC ENDORSEMENT |
|---|---|---|---|---|---|---|---|---|---|
| X001294016 | MO | ☒ Valid ☐ Susp / Rev / Denied ☐ Cancelled / Oth Invalid ☐ NA | ☐ Expired ☐ Disqual CDL ☐ Unknown | ☐ Operator Class ___ ☐ CDL Class ___ ☐ Intern / Grad ☐ NA | ☒ Permit ☐ MC Only ☐ Unlicensed | ☐ Unknown (Explain) | ☐ Yes ☐ No ☐ NA ☐ Unknown (Explain) |

| DATE OF BIRTH | SEX | SEAT LOC | INJ | TRANS-PORT | EJEC-TION | AIR BAG | SAFETY DEVICES | VISION OBSTRUCTED | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 02-15-93 | M | FL 5 | 1 | 2 5 | 5 | | | ☒ Not Obstructed ☐ Windshield ☐ Load on Veh ☐ NA | ☐ Trees / Brush ☐ Building ☐ Embankment | ☐ Sign ☐ Hillcrest ☐ Parked Veh | ☐ Moving Veh ☐ Stopped Veh ☐ Glare | ☐ Other (Explain) ☐ Unknown (Explain) |

**PROOF OF INSURANCE:** ☒ Yes ☐ No ☐ Not Required
**INSURANCE COMPANY** ☐ Expired: Saff Auto
**PHONE NO. (Optional)** 1-800 Shfe Auto
**POLICY NUMBER** MO001482 66A-00
☒ Driver ☐ Vehicle

**7B. VEHICLE - OWNER NAME** (Last, First, MI) & ADDRESS (Street, City, State, Zip) ☐ SAD
EMMA SMITH 430 W. Cooper Tipton Mo 65081
PHONE NUMBER: 573 418 2164

| YEAR | MAKE | MODEL | COLOR | VEH. TYPE | TOTAL NO. OF OCC. |
|---|---|---|---|---|---|
| 1996 | Merc | Soble | WHT | 4 | 2 |

| LICENSE - PLATE NO. | STATE | YEAR | VIN | TOWED FROM SCENE | TOWED DUE TO DIS. DAMAGE |
|---|---|---|---|---|---|
| FH7 R7A | MO | 14 | 1 MELM 50 U1 TA 661342 | ☐ Yes ☐ No | ☒ Yes ☐ No |

**VEHICLE DAMAGE** (Mark all damaged areas)    ☐ Vehicle Used As Public Conveyance
INITIAL IMPACT NO. ① ② ③ 4 5 6 7 8 — 1B - Undercarriage   22 - Cargo
☐ NA 14 ... 9 — 19 - Windshield   23 - Unknown
... — 20 - Burned   24 - Other (Explain)
12 11 10 — 21 - Towed Unit

**TOWED BY** ☐ Unknown ☐ NA
Lepper California MO

**VEHICLE BODY TYPES - Automobiles / Specialty Vehicles**

☒ Passenger Car
☐ Van (< 9 W/Driver)
☐ Passenger Van (9+ W/Driver)
☐ Sport Utility Vehicle
☐ Limousine (7-8 W/Driver)
☐ Limousine (9-15 W/Driver)
☐ Motorized Bicycle
☐ Pedalcycle
☐ To / From School

☐ Small Bus (9-15 W/Driver)
☐ Large Bus (16+ W/Driver)
   ☐ School Bus
   ☐ Intercity
   ☐ Transit / Commuter
   ☐ Charter / Tour
   ☐ Other

☐ Motorcycle
☐ ATV
   ☐ 2 Wh
   ☐ 3 Wh
   ☐ 4 Wh
   ☐ 5 Wh / More
   ☐ Unknown

☐ Motor Home
☐ Farm Implements
☐ Construction Equip. Heavy Mach.
☐ Other Vehicle (Code) ___
☐ Cargo Van
☐ Pickup
☐ Other Heavy Truck
☐ Unknown (Explain)

☐ Single-unit Truck; 2 axles, 6 tires
☐ Single-unit Truck; 3 or more axles
☐ Veh. Pulling Another Unit(s) (Does not apply to Truck Tractors)
☐ Truck Tractor With No Units
☐ Truck Tractor With One Unit
☐ Truck Tractor With Two Units
☐ Truck Tractor With Three Units

**GVW / GCVW RATING** (Not Licensed Weight)
(Pickups, Cargo Vans, All Trucks, Trck Tractors, or Haz Mat Placard Veh. Only)
☐ Less than or equal to 10,000 lbs.
☐ 10,001 - 26,000 lbs.
☐ Greater than 26,000 lbs.
☐ Unknown

**EMERGENCY VEHICLE INVOLVEMENT** ☒ NA
☐ Police   ☐ Ambulance
☐ Fire   ☐ Other (Must check "A" / "B") →
A. Emergency Vehicle on Emergency Run
B. Stationary With Emergency Equip. Activated

**CONTRIBUTING TRAFFIC CONDITIONS** ☐ NA
☐ Congestion Ahead   ☐ Other Incident Ahead
☐ Crash Ahead   ☐ Unknown (Explain)

**VEHICLE ACTION / SEQUENCE OF EVENTS CODES** ☐ Unknown   ☐ Additional Codes Listed in Narrative   (See Codes in Section 8)
SEQUENCE OF EVENTS CODES: 9 - 5 - 34
ANIMAL CODE(S)    FIXED OBJECT CODE(S)
**ALCOHOL USE** ☐ Yes ☐ Unk ☐ No ☒ NA

**7D. PROBABLE CONTRIBUTING CIRCUMSTANCES** ☐ None

☐ Vehicle Defects (Explain)
☐ Speed - Exceeded Limit
☐ Too Fast For Conditions
☒ Violation Signal / Sign
☐ Failed To Yield
☐ Alcohol
☐ Drugs

☐ Vision Obstructed
☐ Driver Fatigue / Asleep
☐ Improper Signal
☐ Improper Backing
☐ Improper Turn
☐ Improper Passing
☐ Improperly Parked

☐ Failed To Dim Headlights
☐ Failed To Use Lights
☐ Following Too Close
☐ Wrong Side (Not Passing)
☐ Wrong Side (One-Way)
☐ Physical Impairment (Explain)
☐ Improper Start From Park

☐ Improper Towing / Pushing
☐ Improperly Stopped On Roadway
☐ Improper Lane Usage / Change
☐ Overcorrected
☐ Improper Riding / Clinging To Veh. Exterior
☐ Failed To Secure Load / Improper Loading
☐ Animal(s) In Roadway

☐ Object / Obstruction In Roadway
☐ Distracted / Inattentive (Designate Type)
☐ Unknown (Explain)
☐ Other (Explain)

**DISTRACTED / INATTENTIVE CODE(S)** ☐ NA (See Codes in Section 8)

**7E. WORK ZONE** ☐ Yes ☒ No ☐ Unknown
**TRAFFIC CONTROL** ☐ None ☐ Unknown
Electric: ☐ Green/Yellow/Red ☐ Flashing Red ☐ Flashing Yellow ☐ Ramp Meter ☐ Other (Explain)
Other Controls: ☒ Stop Sign ☐ No Passing Zone ☐ Turn Restricted ☐ Officer / Flagger ☐ Signal On School Bus
☐ Warning Sign / Device ☐ Railway Crossing Sign / Device ☐ School Zone ☐ Yield Sign ☐ Other (Explain)

**Workers Present** ☐ Yes ☒ No ☐ Unknown

**CONTROL MALFUNCTIONING / INOPERATIVE / MISSING**
☐ Yes (Explain) ☐ No
☐ Unknown ☐ NA

| 7F. | OCCUPANTS - NAME (Last, First, MI) ADDRESS (Street, City, State, Zip) | DATE OF BIRTH MM-DD-YYYY | SEX | SEAT LOC | INJ | TRANS-PORT | EJEC-TION | AIR BAG | SAFETY DEVICES | PHONE NUMBER |
|---|---|---|---|---|---|---|---|---|---|---|
| | EMMA SMITH 430 W. Cooper ST Tipton Mo 65081 | 07-25-55 | F | FR 4 | 2 | 2 | 5 | | 3 | 573 418 2164 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |

**7G. COMMERCIAL MOTOR VEHICLE** ☒ NA   Required on vehicle if "Yes" was answered to questions in parts 1 and 2 in CMV involvement criteria and vehicle meets one of the three criteria in part 2.

**MOTOR CARRIER IDENTIFICATION** (Lessee, etc.) - NAME & ADDRESS (Street, City, State, Zip) ☐ SAO
PHONE NUMBER ☐ SAO

| COMMERCIAL / OMMERCIAL | ☐ Interstate Carrier ☐ Intrastate Carrier | ☐ Not In Commerce - Government Vehicle ☐ Not In Commerce - Rental Vehicle | ☐ Not In Commerce - Other Vehicle | MC / MX / ICC NO. | USDOT NO. |
|---|---|---|---|---|---|

| CARGO BODY TYPE | ☐ Enclosed Box ☐ Cargo Tank | ☐ Flatbed ☐ Dump | ☐ Concrete Mixer ☐ Auto Transporter | ☐ Garbage / Refuse ☐ Grain / Chip / Gravel | ☐ Pole Trailer ☐ Log | ☐ Vehicle Towing Another Veh. | ☐ Intermodal Container Chassis | ☐ NA (No Cargo Body) | ☐ Other ☐ Unknown |
|---|---|---|---|---|---|---|---|---|---|

| HAZARDOUS MATERIALS | PLACARD DISPLAYED ☐ Yes ☐ No ☐ Unknown | 4-DIGIT NO. | CLASS | HM CARGO PRESENT ☐ Yes ☐ No | HM CARGO RELEASED ☐ Yes ☐ No | HAZARDOUS MATERIAL NAME |
|---|---|---|---|---|---|---|

Case 2:15-cv-04224-NKL Document 6-1 Filed 12/28/15 Page 17 of 82

## 7 - DRIVERS, VEHICLES, OWNERS, & OCCUPANTS

**7A. DRIVER - NAME** (Last, First, MI) & ADDRESS (Street, City, State, Zip)
*Mueller Jones Anthony 3021 Howey Creek RD, Jefferson City, Mo* 65101    **PHONE NUMBER** 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

**DRIVER LICENSE / ID NUMBER** *R001307026*   **STATE** *Mo*   **LIC STATUS** ☑ Valid / ☐ Expired / ☐ Permit / ☐ Unknown (Explain)   ☐ Susp / Rev / Denied / ☐ Disqual COL / ☐ Cancelled / Oth Invalid / ☐ Unknown   **LIC TYPE** ☐ NA   **Operator Class** *F* / ☐ CDL Class / ☐ Interm / Grad   ☐ Permit Only / ☐ Unlicensed   **MC ENDORSEMENT** ☐ Yes ☐ No ☑ NA / ☐ Unknown (Explain)

**DATE OF BIRTH** *06-30-90*   **SEX** *M*   **SEAT LOC** *FL*   **INJ** *2*   **TRANSPORT** *2*   **EJECTION** *2*   **AIR BAG** *5*   **SAFETY DEVICES** *5*   **VISION OBSTRUCTED** ☑ Not Obstructed ☐ NA / ☐ Windshield / ☐ Load on Veh / ☐ Trees / Brush / ☐ Building / ☐ Embankment / ☐ Sign / ☐ Hillcrest / ☐ Parked Veh / ☐ Moving Veh / ☐ Stopped Veh / ☐ Glare / ☐ Other (Explain) / ☐ Unknown (Explain)

**PROOF OF INSURANCE** ☐ Yes ☐ No ☐ Not Required   **INSURANCE COMPANY** ☐ Expired *THE General*   **PHONE NO.** (Optional) *800·280·1466*   **POLICY NUMBER** *1051562* ☐ NA   ☐ Driver ☐ Vehicle

**7D. VEHICLE - OWNER NAME** (Last, First, MI) & ADDRESS (Street, City, State, Zip) ☑ SAD    **PHONE NUMBER** ☐ SAD

**YEAR** *2001*   **MAKE** *VOLK*   **MODEL**   **COLOR** *Grey*   **VEH. TYPE** *2*   **TOTAL NO. OF OCC.** *1*

**LICENSE - PLATE NO.** *YP4-64J*   **STATE** *Mo*   **YEAR** *12*   **VIN** *9BWPG.6156.14076438*   **TOWED FROM SCENE** ☑ Yes ☐ No   **TOWED DUE TO DIS. DAMAGE** ☐ SAD

**VEHICLE DAMAGE** (Mark all damaged areas) ☐ Vehicle Used as Public Conveyance   **INITIAL IMPACT NO.** *2* ☐ NA   **TOWED BY** ☐ Unknown ☐ NA *Leppers California, Mo.*

18 - Undercarriage   22 - Cargo
19 - Windshield   23 - Unknown
20 - Burned   24 - Other (Explain)
21 - Towed Unit

### VEHICLE BODY TYPES - Automobiles / Specialty Vehicles

☑ Passenger Car
☐ Van (< 9 W/Driver)
☐ Passenger Van (9+ W/Driver)
☐ Sport Utility Vehicle
☐ Limousine (7-8 W/Driver)
☐ Limousine (9-15 W/Driver)
☐ Motorized Bicycle
☐ Pedalcycle
☐ To / From School

☐ Small Bus (9-15 W/Driver)
☐ Large Bus (16+ W/Driver)
   ☐ School Bus
   ☐ Intercity
   ☐ Transit / Commuter
   ☐ Charter / Tour
   ☐ Other

☐ Motorcycle
☐ ATV
   ☐ 2 Wh
   ☐ 3 Wh
   ☐ 4 Wh
   ☐ 5 Wh / More
   ☐ Unknown

☐ Motor Home
☐ Farm Implements
☐ Construction Equip. Heavy Mach.
☐ Other Vehicle (Code)
☐ Cargo Van
☐ Pickup
☐ Other Heavy Truck
☐ Unknown (Explain)

☐ Single-unit Truck; 2 axles, 6 tires
☐ Single-unit Truck; 3 or more axles
☐ Veh. Pulling Another Unit(s) (Does not apply to Truck Tractors)
☐ Truck Tractor With No Units
☐ Truck Tractor With One Unit
☐ Truck Tractor With Two Units
☐ Truck Tractor With Three Units

**GW / GCVW RATING** (Not Licensed Weight) (Pickups, Cargo Vans, All Trucks, Tack Tractors, or Haz Mat Placard Veh. Only)
☐ less than or equal to 10,000 lbs.
☐ 10,001 - 26,000 lbs.
☐ Greater than 26,000 lbs.
☐ Unknown

### EMERGENCY VEHICLE INVOLVEMENT ☑ NA
☐ Police   ☐ Ambulance   ☐ A. Emergency Vehicle on Emergency Run
☐ Fire   ☐ Other (Must check "A" / "B") ⟶ ☐ B. Stationary With Emergency Equip. Activated

### CONTRIBUTING TRAFFIC CONDITIONS ☑ NA
☐ Congestion Ahead   ☐ Other Incident Ahead
☐ Crash Ahead   ☐ Unknown (Explain)

**VEHICLE ACTION / SEQUENCE OF EVENTS CODES** ☐ Unknown   ☐ Additional Codes Listed in Narrative   (See Codes In Section 8)
**SEQUENCE OF EVENTS CODES** *01-34*   **ANIMAL CODE(S)**   **FIXED OBJECT CODE(S)**   **ALCOHOL USE** ☐ Yes ☐ Unk ☐ No ☑ NA

### 7D. PROBABLE CONTRIBUTING CIRCUMSTANCES ☑ None

☐ Vehicle Defects (Explain)
☐ Speed - Exceeded Limit
☐ Too Fast For Conditions
☐ Violation Signal / Sign
☐ Failed To Yield
☐ Alcohol
☐ Drugs

☐ Vision Obstructed
☐ Driver Fatigue / Asleep
☐ Improper Signal
☐ Improper Backing
☐ Improper Turn
☐ Improper Passing
☐ Improperly Parked

☐ Failed To Dim Headlights
☐ Failed To Use Lights
☐ Following Too Close
☐ Wrong Side (Not Passing)
☐ Wrong Side (One-Way)
☐ Physical Impairment (Explain)
☐ Improper Start From Park

☐ Improper Towing / Pushing
☐ Improperly Stopped On Roadway
☐ Improper Lane Usage / Change
☐ Overcorrected
☐ Improper Riding / Clinging To Veh. Exterior
☐ Failed To Secure Load / Improper Loading
☐ Animal(s) In Roadway

☐ Object / Obstruction In Roadway
☐ Distracted / Inattentive (Designate Type)
☐ Unknown (Explain)
☐ Other (Explain)

**DISTRACTED / INATTENTIVE CODE(S)** ☐ NA (See Codes In Section 8)

### 7E. WORK ZONE ☐ Yes ☑ No ☐ Unknown

**TRAFFIC CONTROL** ☑ None ☐ Unknown
Electric: ☐ Green/Yellow/Red ☐ Flashing Red ☐ Flashing Yellow ☐ Ramp Meter ☐ Other (Explain)
Other Controls: ☐ Stop Sign ☐ No Passing Zone ☐ Turn Restricted ☐ Officer / Flagman ☐ Signal On School Bus ☐ Warning Sign / Device ☐ Railway Crossing Sign / Device ☐ School Zone ☐ Yield Sign ☐ Other (Explain)

**Workers Present** ☐ Yes ☑ No ☐ Unknown

**CONTROL MALFUNCTIONING / INOPERATIVE / MISSING** ☐ Yes (Explain) ☐ No ☐ Unknown ☐ NA

### 7F.

| OCCUPANTS - NAME (Last, First, MI) / ADDRESS (Street, City, State, Zip) | DATE OF BIRTH MM-DD-YYYY | SEX | SEAT LOC | INJ | TRANSPORT | EJECTION | AIR BAG | SAFETY DEVICES | PHONE NUMBER |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |

### 7G. COMMERCIAL MOTOR VEHICLE ☑ NA
Required on vehicle if "Yes" was answered to questions in parts 1 and 2 in CMV involvement criteria and vehicle meets one of the three criteria in part 2.

**MOTOR CARRIER IDENTIFICATION** (Leasee, etc.) - NAME & ADDRESS (Street, City, State, Zip) ☐ SAO    **PHONE NUMBER** ☐ SAO

**COMMERCIAL / NON-COMMERCIAL**
☐ Interstate Carrier ☐ Not In Commerce - Government Vehicle ☐ Not In Commerce - Other Vehicle   **MC / MX / ICC NO.**   **USDOT NO.**
☐ Intrastate Carrier ☐ Not In Commerce - Rental Vehicle

**CARGO BODY TYPE**
☐ Enclosed Box ☐ Flatbed ☐ Concrete Mixer ☐ Garbage / Refuse ☐ Pole Trailer ☐ Vehicle Towing Another Veh. ☐ Intermodal Container Chassis ☐ NA (No Cargo Body) ☐ Other (Explain)
☐ Cargo Tank ☐ Dump ☐ Auto Transporter ☐ Grain / Chip / Gravel ☐ Log

**HAZARDOUS MATERIALS**   **PLACARD DISPLAYED** ☐ Yes ☐ No ☐ Unknown   **4-DIGIT NO.**   **CLASS**   **HM CARGO PRESENT** ☐ Yes ☐ No   **HM CARGO RELEASED** ☐ Yes ☐ No   **HAZARDOUS MATERIAL NAME**

**11. NARRATIVE / STATEMENTS CONTINUATION (If additional room is necessary use Narrative / Statements Continuation / Supplement)**

Case 2:15-cv-04224-NKL   Document 6-1   Filed 12/28/15   Page 19 of 82

**8 - CODES**

| LOCATION | | |
|---|---|---|
| Not Known | FR SR TR | |
| B - Pedalcycle | FC SC TC | |
| M - Motorcycle | FL SL TL | |

CP - Commercial Passenger
OE - Occupant - Enclosed Load Area
OU - Occupant - Unenclosed Load Area
RC - Rail Crew
SV - Other (Explain in Narrative)
NA - Not Applicable

**INJURY**
1. Fatal
2. Disabling
3. Evident -
    Not Disabling
4. Probable -
    Not Apparent
5. None Apparent
U. Unknown
N. NA

**TRANSPORTED** (For Medical Treatment)
1. No
2. EMS
3. Other
4. Unknown
N. NA

**EJECTION**
1. NA
2. No
3. Partially
4. Totally
U. Unknown

**AIR BAG**
1. None / NA
2. Not Deployed
3. Removed
4. Deployed - Front
5. Deployed - Side
6. Deployed - Curtain
7. Deployed - Other (Knee, Air Bag, etc.)
8. Deployed - Combination
9. Deployed
10. Deployment Unknown
U. Air Bag Presence Unknown

**SAFETY DEVICES**
1. None
2. Not Used
3. Shoulder Belt Only
4. Lap Belt Only
5. Shoulder and Lap Belt
7. DOT Compliant MC Helmet
8. No Helmet
10. Booster Seat
11. Child Restraint - Forward Facing
12. Child Restraint - Rear Facing
13. Other Helmet
14. Reflector Clothing
15. Other
U. Use Unknown
N. Not Applicable

**VEHICLE ACTION / SEQUENCE OF EVENTS** (Items with double-asterisk (**) require additional coding)
1. Going Straight
2. Overtaking
3. Making Right Turn
4. Right Turn on Red
5. Making Left Turn
6. Making U-Turn
7. Skidding / Sliding
8. Slowing / Stopping
9. Start In Traffic
10. Start From Parked
11. Backing
12. Stopped In Traffic
13. Parked
14. Changing Lanes
15. Avoiding
16. Cross Median
17. Cross Center Of Road
18. Cross Road
19. Airborne
20. Ran Off Roadway - Right
21. Ran Off Roadway - Left
22. Overturn / Rollover
23. Fire / Explosion
24. Immersion
25. Jackknife
26. Cargo Loss / Shift
27. Equipment Failure
28. Separation Of Units
29. Returned To Roadway
30. Collision Inv. Pedestrian
31. Collision Inv. Bicycle/Pedalcycle
32. Collision Inv. Railway Veh.
33. Collision Inv. Animal (**)
34. Collision Inv. MV in Transport
35. Collision Inv. Parked MV
36. Collision Inv. Fixed Object (**)
37. Collision Inv. Other Object (Explain)
38. Other Non-collision
39. Collision Inv. Bicycle/Pedalcycle In Bicycle Lane
40. Collision Inv. Animal Drawn Vehicle / Animal Ridden For Transportation
41. Collision Inv. Working MV
42. Downhill Runaway
43. Fell/Jumped From MV
44. Thrown/Falling Object
45. Struck By Falling, Shifting Cargo, Object Set In Motion By Own MV
46. Ran Off Roadway - Other (Explain)
47. Cross Separator

**ANIMAL CODES FOR VEHICLE ACTION / SEQUENCE OF EVENTS**
60. Deer    61. Farm Animal    62. Dog    63. Other Animal    U. Unknown

**FIXED OBJECT CODES FOR VEHICLE ACTION / SEQUENCE OF EVENTS**
20. Tree / Stump (Standing)
21. Embankment / Driveway / Ground / Rock Bluff
22. Guardrail Face
23. Utility Pole
24. Fence
25. Street Light Support
26. Culvert
27. Highway Traffic Sign Post / Support
28. Bridge Pier / Abutment / Support
29. Curb
30. Mail Box
31. Concrete Traffic Barrier
32. Building
33. Traffic Signal Support
34. Impact Attenuator / Crash Cushion
35. Fire Hydrant
36. Other (Explain)
37. Bridge Parapet End
38. Bridge Rail
39. Guardrail End
40. Other Traffic Barrier
41. Overhead Sign Support
42. Ditch
43. Other Post / Pole / Support
44. Wall
45. Cable Barrier
46. Bridge Overhead Structure
47. Overhead Line / Cable
U. Unknown

**DISTRACTED / INATTENTIVE CODES**
1. External Distraction
2. Passengers
3. Stereo / Audio / Video Equipment
4. Navigation Device
5. Communication Device - Hand-held
6. Communication Device - Hands Free
7. Communication Device - Texting / E-mailing
8. Communication Device - Web Browsing
9. Eating / Drinking
10. Reading
11. Tobacco Use
12. Grooming
13. Computer Equipment / Electronic Games / etc.
14. Adjusting Vehicle Controls
15. Other (Explain)

**VEHICLE TYPE CODES**
1. Motor Vehicle In Transport
2. Parked Motor Vehicle
3. Working Motor Vehicle
4. Pedalcycle
5. Animal Drawn Vehicle / Animal Ridden For Transport Purposes
U. Unknown

**OTHER VEHICLE CODES**
1. Riding Mower / Garden Tractor
2. Golf Cart
3. Snowmobile
4. Forklift
5. Animal Drawn Vehicle / Animal Ridden For Transportation
6. Low Speed Vehicle
7. Other (Explain)

**NARRATIVE / STATEMENTS** (If additional room is necessary, use Section 11 - Narrative / Statements Continuation)

Driver #1 State he Stop Went to Pull out on Hwy didn't See Driver #2 Coming.

Driver #2 Stated he going down Road When Vec #1 pulled Right out in front of him. He try to miss him but couldn't.

**REPORTING AND REVIEWING OFFICER INFORMATION**

| REPORTING OFFICER NAME | DSN / BADGE NO. | BEAT / ZONE | TROOP / DISTRICT / PRECINCT |
|---|---|---|---|
| | 586 T1 | T1 | F.6 |
| REVIEWING OFFICER NAME | DSN / BADGE NO. | REVIEWING OFFICER 2 NAME | DSN / BADGE NO. |

Case 2:15-cv-04224-NKL   Document 6-1   Filed 12/28/15   Page 20 of 82

# TIPTON MUNICIPAL COURT
## TIPTON, MISSOURI

| NAME | CHARGE |
|---|---|
| Escabusa, Bryan Roy R | Failure to Yield Rite a way *Property Damage* |
| RESIDENCE | INSURANCE |
| 430 W Cooper ST Tipton, MO 65081 | |

**PLAINTIFF'S EXHIBIT**
_____ 2 _____

| DOB | RACE | SEX | HEIGHT | WEIGHT |
|---|---|---|---|---|
| 02.15.1993 | W | M | 5'09" | 135 |

| SS# | OLN# | CASE NUMBER |
|---|---|---|
| | X001294016 | MU-9K-12-080-MT |

| ARREST DATE | TICKET # | ARRESTING OFFICER |
|---|---|---|
| | 111449661 | Petree |

*BOND IN THE AMOUNT OF $*          *RECEIVED*

| Date | Orders of Court: |
|---|---|
| | UTT filed. Arraignment set for |
| | Bond set in the amount of $          taken and approved by the Court |
| | Continued to          at 7:00 pm and Defendant ordered to appear |
| | Continued to          at 7:00 pm and Defendant ordered to appear |
| 6-27-12 | City moves Court allow amended charge and amendment allowed *to Prop Damage* |
| | Defendant fails to appear. Warrant ordered. Bond set at $ |
| | Fine/costs remain unpaid and Deft fails to appear. Warrant ordered. Bond $ |
| | Defendant pays in full. Receipt # |
| 6-25-12 | City by Prosecuting Attorney. Defendant in person and by attorney |
| 6-25-12 | Defendant advised of rights, charge, range of punishment and Defendant arraigned |
| 6-25-12 | Defendant pleads Not Guilty. Case set for trial/bench with counsel 7-30-12 at 7:00pm |
| | Defendant knowingly, understandingly, and voluntarily enters waiver of counsel |
| 6-27-12 | Defendant knowingly, understandingly, and voluntarily enters a plea of Guilty *to Amend Chrg* |
| | Allocution. Defendant sentenced to a fine of $          .Costs taxed to Defendant |
| 6-27-12 | Allocution. Defendant directed to pay $250. total fine and costs |
| | Allocution. Defendant directed to serve          days in County Jail |
| | Further imposition of sentence suspended & Deft placed on probation in accordance of entry file |
| | Further execution of sentence suspended & Deft placed on probation in accordance of entry filed |
| | Costs taxed to Defendant |
| | Defendant given until          to pay fine/costs or appear at 7:00 pm on that date |
| | Defendant given until          to pay fine/costs or appear at 7:00 pm on that date |
| | Cash Bond applied to payment of sums owed |
| | |
| | Pay $          per month, due the          each month, beginning: |
| | |
| | Defendant enters Plea of Guilty without appearing in Court. Allocution. Defendant sentenced |
| | to $          total fine and costs. Bond ordered applied to sums owed. |
| 7-18-12 | Entry of Appearance filed |
| 7-20-12 | "By agreemnt of PA Green & Atty Lutz, case continued to Aug 27, 2012 @ 7pm. PA Green to notify Atty Lutz." |

Case 2:15-cv-04224-NKL   Document 6-1   Filed 12/28/15   Page 22 of 82

ORI. NO. MO0600200
**TIPTON POLICE DEPARTMENT**
**UNIFORM CITATION**

Nº 111449661

| STATE OF MISSOURI | | DIVISION |
|---|---|---|
| IN THE CIRCUIT COURT OF MUNICIPAL | MONITEAU COUNTY | 20 |

COURT ADDRESS (STREET, CITY, ZIP)
P.O. BOX 517 · 101 E MONITEAU STREET · TIPTON, MO 05081

| COURT DATE | COURT TIME ☐ AM ☐ PM | COURT PHONE NO. ( 660 )   433-2620 |
|---|---|---|

I, KNOWING THAT FALSE STATEMENTS ON THIS FORM ARE PUNISHABLE BY LAW, STATE THAT I HAVE PROBABLE CAUSE TO BELIEVE THAT:

| ON/ABOUT (DATE) | AT TIME HRS | HWY CLASS | UPON/AT OR NEAR (LOCATION) |
|---|---|---|---|

WITHIN CITY/COUNTY AND STATE AFORESAID,

NAME (LAST, FIRST, MIDDLE)

STREET ADDRESS

| CITY | STATE | ZIP CODE |
|---|---|---|

| DATE OF BIRTH | AGE | RACE | SEX | HEIGHT | WEIGHT |
|---|---|---|---|---|---|

| DRIVER'S LIC. NO. | COL ☐ YES ☐ NO | STATE |
|---|---|---|

**LEAVE THIS LINE BLANK**

EMPLOYER

ADDRESS (STREET, CITY, STATE, ZIP)

| DID UNLAWFULLY | ☐ OPERATE/DRIVE | ☐ PARK | | ☐ C.M.V. | ☐ WITH HAZ MAT |
|---|---|---|---|---|---|
| V E H I C L E | YEAR | MAKE | MODEL | STYLE | COLOR |
| | REGISTERED WEIGHT | L I C  NUMBER | STATE | YEAR |

DID THEN AND THERE COMMIT THE FOLLOWING OFFENSE. THE FACTS SUPPORTING THIS BELIEF ARE AS FOLLOWS:

_____

_____

_____

☐ Subject taken into custody. (Complete "For Issuance of a Warrant" section on reverse side.)

| DRIVING MPH | POSTED SPEED LIMIT MPH | DETECTION METHOD ☐ STATIONARY RADAR ☐ WATCH (AIR) ☐ PACE ☐ MOVING RADAR ☐ WATCH (GROUND) ☐ OTHER |
|---|---|---|

| IN VIOLATION OF | ☐ RSMo ☐ ORD | CHARGE CODE | ☐ IN FATAL ACCIDENT |
|---|---|---|---|
| | | | ☐ IN ACCIDENT |
| SEAT BELT VIOLATION: | ☐ ORD ☐ _____ RSMo | CHARGE CODE | ☐ DWI/BAC |

| OFFICER | BADGE | TRP/ZONE | DATE |
|---|---|---|---|

ON INFORMATION, UNDERSIGNED PROSECUTOR CHARGES THE DEFENDANT AND INFORMS THE COURT THAT ABOVE FACTS ARE TRUE AND PUNISHABLE BY: _____ ☐ RSMo ☐ ORD

| PROSECUTOR'S SIGNATURE | DATE |
|---|---|

I PROMISE TO DISPOSE OF THE CHARGES OF WHICH I AM ACCUSED THROUGH COURT APPEARANCE OR PREPAYMENT OF FINE AND COURT COSTS.

SIGNATURE X

DR. LIC. POSTED ☐ YES ☐ NO

MO 100-0051 (10-02)                    INFORMATION
Elkins-Swyers Co., Springfield, Mo.-Form 1298

# IN THE CIRCUIT COURT OF MONITEAU COUNTY, AT CALIFORNIA, MISSOURI
## CIRCUIT COURT DIVISION

JAMES ANTHONY MUELLER,      )
                            )
   Plaintiff,    )
                            )
vs.                         )  Case No. <u>13MT-CC00040</u>
                            )
BRYAN ROY ESCABUSA,         )
                            )
   Defendant.    )

*Filed*
*10-5-15*
*ZMH.*

## <u>JUDGMENT ENTRY</u>

On October 5, 2015, Plaintiff appears in person and by and through his attorneys, Andrew J. Gelbach, Fred Branson and Dirk Vandever. Defendant, Bryan Escabusa, appears by and through his attorney, John Fogarty. The parties announce ready for trial. The parties waive a trial by jury. Plaintiff presents witnesses and his evidence. Defendant presents no evidence. The Court after hearing the evidence and arguments of counsel and being duly advised in the premises, finds Defendant 100% at fault in causing the motor vehicle accident of May 22, 2012, involving James Mueller and therefore legally liable to James Mueller for all of his resulting lifetime injuries and damages. The Court finds that Plaintiff, James Mueller, on his bodily injury claim has been damaged in the sum of $1,250,000.00.

The Court finds that Plaintiff made a prejudgment settlement offer on July 12, 2013, pursuant to Missouri Revised Statute §408.040 offer to settle his claim for $250,000 and Plaintiff's judgment exceeds that offer. The Court finds that Plaintiff has complied with all of the provisions of Missouri Revised Statute §408.040 and is therefore entitled to prejudgment interest as a matter of law. Plaintiff is hereby awarded prejudgment interest in the sum of $126,665.28 pursuant to Missouri Revised Statute §408.040.

*Exhibit B*

IT IS THEREFORE, ORDERED, ADJUDGED AND DECREED, by the Court, that Plaintiff, James Mueller, shall receive the sum of $1,250,000 for his actual damages and $126,665.28 for prejudgment interest for a total judgment of $1,376,665.28 against Bryan Escabusa.

The Court sets the post judgment interest rate at 5.13% pursuant to Missouri Revised Statute §408.040. The Court further assesses the statutory court costs of this case against Defendant, Bryan Escabusa, including all depositions costs of $1,850.55 pursuant to Missouri Revised Statute §492.590. The clerk is directed to include and list the deposition costs on the statement of the total statutory court costs owed by Defendant.

ALL FOR WHICH EXECUTION SHALL LIE.


_____

THE HONORABLE KENNETH HAYDEN

2

IN THE CIRCUIT COURT OF MONITEAU COUNTY, AT CALIFORNIA, MISSOURI
CIRCUIT COURT DIVISION

**FILED**

**NOV - 3 2015**

CIRCUIT CLERK & EX-OFFICIO RECORDER
MONITEAU COUNTY, MO

JAMES ANTHONY MUELLER,          )
                                )
                  Plaintiff,    )
                                )
vs.                             )     Case No. 13MT-CC00040
                                )
BRYAN ROY ESCABUSA,             )
                                )
                  Defendant.    )

## AMENDED JUDGMENT ENTRY

NOW on this 3.1 day of _November_, 2015, the Court takes up and considers the parties' Joint Motion to Amend Judgment Pursuant to Rule 78.07 and Rule 75.01, and enters this Amended Judgment as follows:

On October 5, 2015, Plaintiff appears in person and by and through his attorneys, Andrew J. Gelbach, Fred Branson and Dirk Vandever. Defendant, Bryan Escabusa, appears by and through his attorney, John Fogarty. The parties announce ready for trial. The parties waive a trial by jury. Plaintiff presents witnesses and his evidence. Defendant presents no evidence. The Court after hearing the evidence and arguments of counsel and being duly advised in the premises, finds Defendant 100% at fault in causing the motor vehicle accident of May 22, 2012, involving James Mueller and therefore legally liable to James Mueller for all of his resulting lifetime injuries and damages. The Court finds that Plaintiff, James Mueller, on his bodily injury claim has been damaged in the sum of $1,250,000.00.

The Court finds that Plaintiff made a prejudgment settlement offer on July 12, 2013, pursuant to Missouri Revised Statute §408.040 offer to settle his claim for $250,000 and Plaintiff's judgment exceeds that offer. The Court finds that Plaintiff has complied with all of the provisions of Missouri Revised Statute §408.040 and is therefore entitled to prejudgment interest as a matter of law. The Court sets the prejudgment interest rate at 3.13% pursuant to Missouri Revised Statute §408.040.

Exhibit C

Plaintiff is hereby awarded prejudgment interest in the sum of $77,283.99 pursuant to Missouri Revised Statute §408.040.

IT IS THEREFORE, ORDERED, ADJUDGED AND DECREED, by the Court, that Plaintiff, James Mueller, shall receive the sum of $1,250,000 for his actual damages and $77,283.99 for prejudgment interest for a total judgment of $1,327,283.90 against Bryan Escabusa.

The Court sets the post judgment interest rate at 5.13% pursuant to Missouri Revised Statute §408.040. The Court further assesses the statutory court costs of this case against Defendant, Bryan Escabusa, including all depositions costs of $1,850.55 pursuant to Missouri Revised Statute §492.590. The clerk is directed to include and list the deposition costs on the statement of the total statutory court costs owed by Defendant.

ALL FOR WHICH EXECUTION SHALL LIE.


_____
THE HONORABLE KENNETH HAYDEN

2



4 Easton Oval
Columbus, OH 43219
1-800-SAFEAUTO
(1-800-723-3288)

SAFEAUTO
INSURANCE

# Auto Insurance Policy Declarations

Safe Auto Insurance Company NAIC# 25405
Policy Number: MO00148266A-00
Policy Period Begin Date: 03/09/2012 at 06:27 PM ET
Policy Period End Date: 09/09/2012 at 12:01 AM ET

BRYAN-ROY ESCABUSA
4776 OLD LOHMAN RD
JEFFERSON CITY MO 65109

This amended Declarations Page supersedes all prior Declaration Pages.
    Endorsement Reasons:
       Home Owner's Discount Removed
    Endorsement Effective 03/09/2012 at 06:27 PM ET

Your Policy is comprised of: This Declarations Page (Form DECLR-MO-0610); the Policy Book (Form MO1010/1008); your Application (Form APPLC-MO-0112); and any amendments or forms listed below. The only insurance coverages and limits afforded by this Policy are indicated below with respect to each described vehicle, where appropriate. The limit of the company's liability for each coverage is subject to all the terms, conditions, and exclusions of the Policy.

Amendments / Forms Made Part of this Policy:
MO1010/1008     APPLC-MO-0112     DECLR-MO-0610     AMND1-MO-0112

| | Name | DOB | Sex | M/S | SR-22 | Usage |
|---|---|---|---|---|---|---|
| Named Insured | BRYAN-ROY ESCABUSA | 02/15/1993 | M | S | N | PERSONAL |
| Driver 2 | RONALD W. SMITH | 07/04/1952 | M | M | N | PERSONAL |
| Driver 3 | EMMA R. SMITH | 07/25/1955 | F | M | N | PERSONAL |

Applied Discount(s):

Super Saver          AirBag - Single

Applied Surcharge(s):
None

I hereby certify this *document* to be a true and accurate copy of SAFE AUTO INSURANCE COMPANY'S *Auto Insurance Policy Declaration*
Date *10/29/12*

**PLAINTIFF'S EXHIBIT**
D

Missouri law states that a person commits a fraudulent insurance act if he or she knowingly makes a statement or written document for a claim or insurance application which that person knows to contain material false information or conceals information concerning a material fact.

| Coverage | Limits of Liability | | 6 Month Premium Per Vehicle |
|---|---|---|---|
| | | | Veh 1 |
| Bodily Injury Liability | $ 25,000 Each Person / $ 50,000 Each Accident | $ | 149 |
| Property Damage Liability | $ 10,000 Each Accident | $ | 178 |
| Excess Medical Expense | $  1,000 Each Accident | $ | 12 |
| Uninsured Motorist Bodily Injury | $ 25,000 Each Person / $ 50,000 Each Accident | $ | 28 |

| | | | 6 Month Premium Per Coverage |
|---|---|---|---|
| Accidental Death Benefit | $ 10,000 Each Person | $ | 12 |

| | Year - Make / Model | VIN | 6 Month Premium |
|---|---|---|---|
| Vehicle 1 | 1996 - MERCURY / SABLE GS | 1MELM50U1TA661342 | |
| Owner | EMMA SMITH | | |

|  |  |  |
|---|---|---|
| Comprehensive and Collision - Not Selected | $ | 0 |
| Towing and Labor - $ 40 per Disablement (Maximum of 6) | $ | 6 |
| Rental Reimbursement  - Not Selected | $ | 0 |

Lienholder / Additional Interest
    None

| | | |
|---|---|---|
| Total Six (6) Month Coverage Premium | $ | 385.00 |
| Acquisition Expense Load | $ | 8.00 |





**SAFEAUTO INSURANCE**

4 Easton Oval
Columbus, OH 43219
1-800-SAFEAUTO
(723-3288)

# MISSOURI
# PERSONAL
# AUTOMOBILE
# POLICY

I hereby certify this *document* to be a true and accurate copy of SAFE AUTO INSURANCE COMPANY'S *Mo Personal Auto Policy* Date *10/29/12*

MISSOURI LAW STATES THAT A PERSON COMMITS A FRAUDULENT INSURANCE ACT IF HE OR SHE KNOWINGLY MAKES A STATEMENT OR WRITTEN DOCUMENT FOR A CLAIM OR INSURANCE APPLICATION WHICH THAT PERSON KNOWS TO CONTAIN MATERIAL FALSE INFORMATION OR CONCEALS INFORMATION CONCERNING A MATERIAL FACT.

## TABLE OF CONTENTS

**AGREEMENT**

    Duties In Case Of An Accident Or Loss ............................ 2
    Other Duties ................................................................ 2
    Definitions .................................................................... 2

**PART I – LIABILITY TO OTHERS**

    Insuring Agreement ...................................................... 4
    Additional Definitions ................................................... 4
    Additional Payments .................................................... 4
    Exclusions .................................................................. 5
    Limits Of Liability ........................................................ 6
    Other Insurance .......................................................... 7
    Financial Responsibility Laws ....................................... 7
    Out-of-State Coverage ................................................. 7
    Two or More Policies Issued By Us ............................... 7

**PART II – EXCESS MEDICAL EXPENSE COVERAGE**

    Insuring Agreement ...................................................... 7
    Additional Definitions ................................................... 7
    Exclusions .................................................................. 7
    Limit of Liability .......................................................... 8
    Other Insurance .......................................................... 9
    Two or More Policies Issued By Us ............................... 9

**PART III – UNINSURED MOTORIST COVERAGE**

    Insuring Agreement – Uninsured Motorist Bodily Injury
    Coverage .................................................................... 9
    Additional Definitions ................................................... 9
    Exclusions .................................................................. 9
    Limits Of Liability ...................................................... 10
    Other Insurance ........................................................ 10

**PART IV – PHYSICAL DAMAGE COVERAGE**

    Insuring Agreement- Collision Coverage ....................... 11
    Insuring Agreement – Comprehensive Coverage ........... 11
    Additional Definitions ................................................. 11
    Exclusions ................................................................ 11
    Limits Of Liability ...................................................... 13
    Insuring Agreement - Rental Reimbursement................ 13
    Payment Of Loss ...................................................... 14
    No Benefit To Bailee .................................................. 14
    Loss Payee Agreement............................................... 14
    Appraisal .................................................................. 14
    Other Sources of Recovery ......................................... 14

**PART V – TOWING AND LABOR**

    Insuring Agreement .................................................... 14
    Additional Definitions ................................................. 14
    Exclusions ................................................................ 15

**PART VI – ACCIDENTAL DEATH BENEFIT**

    Insuring Agreement .................................................... 15

    Additional Definitions ................................................. 15
    Exclusions ................................................................ 15
    Limit Of Liability ........................................................ 16
    Payment Of Benefits .................................................. 16
    Other Insurance ........................................................ 16

**GENERAL PROVISIONS**

    Business Use Coverage .............................................. 16
    Policy Period And Territory .......................................... 16
    Policy Changes ......................................................... 16
    Two or More Policies Issued By Us ............................. 17
    Terms of Policy Conform to Statutes ........................... 17
    Transfer................................................................... 17
    Number of Owned Vehicles Listed .............................. 17
    Two or More Vehicle Policies ...................................... 17
    Fraud or Misrepresentation......................................... 17
    Premium Payment Terms and Conditions ..................... 17
    Cancellation ............................................................. 18
    Cancellation Refund .................................................. 19
    Nonrenewal .............................................................. 19
    Automatic Termination ............................................... 19
    Coverage Changes .................................................... 19
    Legal Action Against Us.............................................. 19
    Our Rights to Recover Payment ................................... 19
    Bankruptcy ............................................................... 19
    Pollution Exclusion..................................................... 19
    Missouri Property and Casualty Insurance Guaranty
    Association Coverage Limitation .................................. 20

**NAMED OPERATOR - NON-OWNED VEHICLE
COVERAGE** ....................................................................20



## MISSOURI MOTOR VEHICLE POLICY

If **you** pay **your** premium on time, we will provide the insurance described in this policy, subject to all of its terms, conditions and exclusions, and up to the Limits of Liability described herein and shown on the **declarations page**. **Your** policy consists of this policy contract, **your** insurance application, the **declarations page**, and all endorsements to this policy.

## DUTIES IN CASE OF AN ACCIDENT OR LOSS

For coverage to apply under this policy, **you** or the person seeking coverage must report each accident or loss arising out of the ownership, maintenance or use of a **vehicle**, for which coverage under this policy may apply, to **us** as soon as practicable by calling 1-800-SAFE-AUTO (1-800-723-3288) or 1-614-231-0200.

**You or an insured person must report each accident or loss even if an insured person is not at fault for coverage under this policy to apply.**

The following accident information should be reported as soon as it is obtained:

1. time;

2. place;

3. circumstances of the **accident** or loss (for example; how the **accident** happened and weather conditions);

4. names and addresses of all persons involved;

5. names and addresses of any witnesses; and

6. the license plate numbers of the vehicles involved.

**You** or an insured person must also notify the police within twenty-four **(24)** hours or as soon as practicable if:

1. a hit-and-run vehicle is involved;

2. **you** cannot identify the **owner** or operator of a vehicle involved in the **accident**; or

3. theft or vandalism has occurred.

## OTHER DUTIES

A person claiming coverage under this policy must:

1. cooperate with **us** in any matter concerning a claim or lawsuit;

2. provide any written proof of loss we may reasonably require;

3. allow **us** to take signed and recorded statements, including sworn statements and examinations under oath, and answer all reasonable questions we may ask, when and as often as **we** may reasonably require;

4. promptly send **us** any and all legal papers relating to any claim or lawsuit;

5. attend hearings and trials as we require;

6. take reasonable steps after a **loss** to protect the **covered vehicle**, or any other **vehicle** for which

coverage is sought, from further loss. **We** will pay reasonable expenses incurred in providing that protection. If **you** fail to do so, any further damages will not be covered under this policy;

7. allow us to inspect and appraise the damage to a **covered vehicle** or **non-owned vehicle** before its repair or disposal;

8. submit to medical examinations at our expense by doctors we select as often as we may reasonably require; and

9. authorize **us** to obtain medical and other records reasonably related to the accident or loss.

## DEFINITIONS

Except as otherwise defined in this policy, terms appearing in boldface will have the following meaning:

"**Accident**" means a sudden, unexpected, and unintended occurrence.

"**Bodily injury**" means bodily harm, sickness, or disease, including death that results from bodily harm, sickness, or disease.

"**Business use**" means your use of a **covered vehicle** to convey you:

1. from one location to another;

2. during and in the course and scope of **your** employment; and

3. at the direction of **your** employer.

**Business use** includes only **your** use of a **covered vehicle**:

1. for consumer oriented sales, service or direct home sales;

2. to visit multiple locations without the transportation of clients or patients;

3. for rare business-related errands; or

4. to transport tools or other materials used in a trade or business if:

   a. no more than three **(3)** job sites are visited per day; or

   b. there is no hauling of explosives, chemicals or flammable materials.

**Business use** does not include **your** use of a **covered vehicle** for the following activities:

1. the pickup or delivery of goods. This includes, but is not limited to, delivery of magazines, newspapers, food, or any other products;

2. the transport of persons or property for a fee. This includes limousine, taxi, or livery services;

3. the transport of people. This includes, but is not limited to, nursery school children, medical patients, clients, migrant workers, or hotel/motel guests during and in the course of **your** employment;

2

4. snow removal; or

5. any other commercial purpose not expressly set forth in the definition of business use.

This policy is intended to cover the following activities regardless of whether **you** purchase **business use** coverage:

1. shared-expense car pools; or

2. commuting to and from **your** place of employment.

"**Covered vehicle**" means:

1. any **vehicle** shown on the declarations page, unless **you** have asked **us** to delete that **vehicle** from the policy;

2. any additional **vehicle** on the date **you** become the **owner** if:

   a. **you** acquire the **vehicle** during the policy period shown on the **declarations page**;

   b. **we** insure all **vehicles** owned by **you**; and

   c. no other insurance policy provides coverage for that **vehicle**.

   Part IV - Physical **Damage** Coverage does not apply to any additional **vehicle you** acquire unless specifically requested by the Named Insured before a **loss** involving such **vehicle. We** will provide coverage, other than coverage under Part IV - Physical **Damage** Coverage, for a period of thirty (30) days after **you** become the **owner. We** will not provide coverage after this thirty (30) day period, unless within this period **you** ask **us** to insure the **vehicle**;

3. any replacement **vehicle** on the date **you** become the **owner** if:

   a. **you** acquire the **vehicle** during the policy period shown on the **declarations page**;

   b. the **vehicle** that **you** acquire replaces one shown on the **declarations page**;

   c. no other insurance policy provides coverage for that **vehicle**; and

   d. **you** ask **us** to insure this replacement **vehicle** within thirty (30) days after **you** become the **owner**.

   If the **vehicle** that **you** acquire replaces one shown on the **declarations page**, it will have the same coverage as the **vehicle** it replaces. You must ask **us** to insure a replacement **vehicle** within thirty (30) days after **you** become the **owner**. If the **vehicle** replaced did not have coverage under Part IV – Physical **Damage** Coverage, **you** may add such coverage for the replacement **vehicle**. However, if **you** add coverage under Part IV – Physical **Damage** Coverage, it will not become effective until after **you** ask **us** to add the coverage; and

4. any **temporary substitute motor vehicle**.

"**Custom parts or equipment**" means equipment, devices, accessories, enhancements, and changes, other than those which are original manufacturer installed, which:

1. are permanently installed or attached; and

2. alter the appearance or performance of a **vehicle**.

This includes any electronic equipment, antennas, and other devices used exclusively to send or receive audio, visual, or data signals, or to play back recorded media, other than those which are original manufacturer installed, that are permanently installed in a **covered vehicle** using bolts or brackets, including slide-out brackets.

"**Declarations page**" means the document identified by **us** as the declarations page listing:

1. the policy period;

2. the types of coverage **you** have selected;

3. the limit for each coverage;

4. the cost for each coverage;

5. the specified **vehicles** covered by this policy;

6. the types of coverage for each such **vehicle**; and

7. other information applicable to this policy.

"**Loss**" means sudden, direct, and accidental loss or damage.

"**Non-owned vehicle**" means any **vehicle** that is not owned by **you**, a **relative**, a resident of **your** household, the spouse of the Named Insured even if not residing in the same household as the Named Insured, or anyone listed on the **declarations page** as an additional driver, provided the **vehicle** is not rented from a car rental agency or garage.

"**Occupying**" means in, upon, getting in, on, out of, or off.

"**Owned**" means the person:

1. holds legal title to the **vehicle**;

2. has legal possession of the **vehicle** that is subject to a written security agreement with an original term of six (6) months or more; or

3. has legal possession of the **vehicle** that is leased to that person under a written agreement for a continuous period of six (6) months or more.

"**Owner**" means any person who, with respect to a **vehicle**:

1. holds legal title to the **vehicle**;

2. has legal possession of the **vehicle** that is subject to a written security agreement with an original term of six (6) months or more; or

3. has legal possession of the **vehicle** that is leased to that person under a written agreement for a continuous



3

period of six (6) months or more.

"Property damage" means physical damage to or destruction of, or loss of use of, tangible property.

"Relative" means a person residing in the same household as you, and related to you by blood, marriage, or adoption, including a ward, stepchild, or foster child. Your unmarried dependent children temporarily away from home will be considered residents if they intend to continue to reside in your household.

"Temporary substitute motor vehicle" means any vehicle rented from a car rental agency or auto repair shop and used with the permission of the owner while the covered vehicle is being serviced or repaired as the result of a covered loss.

"Trailer" means a non-self-propelled, wheeled, mobile unit designed to be towed on public roads by a vehicle. It includes a farm wagon or farm implement while being towed by a vehicle. It does not include a mobile home, or a trailer that:

1. is used for any business use;

2. is used as a primary residence;

3. is used as a premises for office, store, or display purposes; or

4. is used as a passenger conveyance.

"Vehicle" means a self-propelled land motor vehicle:

1. which is a private passenger auto, pickup truck, or van;

2. designed for operation principally upon public roads;

3. with no more nor less than four (4) wheels; and

4. with a gross vehicle weight of 10,000 pounds or less.

However, vehicle does not include any kit car, step-van, parcel delivery van, cargo cutaway van, or other van with a cab separate from the cargo area.

"We", "us", and "our" mean Safe Auto Insurance Company.

"You" and "your" mean:

1. the person shown as the Named Insured on the declarations page; and

2. the spouse of the Named Insured if residing in the same household at the time of the loss.


## PART I – LIABILITY TO OTHERS

### INSURING AGREEMENT

Subject to the terms, conditions and exclusions of this policy, and Limits of Liability, if you pay the premium for liability coverage, we will pay damages, other than punitive or exemplary damages, for bodily injury and property damage for which an insured person becomes legally responsible because of an accident arising out of the:

1. ownership, maintenance, or use of a vehicle; or

2. use of any trailer while attached to a:

   a. covered vehicle; or

   b. temporary substitute motor vehicle or non-owned vehicle operated by an insured person.

Damages include prejudgment interest awarded against an insured person. We will settle or defend, as we consider appropriate, any claim or suit for damages covered by this Part I. Our duty to settle or defend ends when our Limit of Liability for this coverage has been paid.

### ADDITIONAL DEFINITIONS

When used in this Part I, "insured person" or "insured persons" means:

1. you, a relative, or any other person listed on the declarations page as an additional driver, with respect to an accident arising out of the ownership, maintenance, or use of a covered vehicle;

2. any person with respect to an accident arising out of that person's use of a covered vehicle with the express or implied permission of you or a relative unless that person is a resident who is not listed on the declarations page as an additional driver; and

3. you, a relative, or any other person listed on the declarations page as an additional driver, with respect to an accident arising out of the maintenance or use of a non-owned vehicle with the express or implied permission of the owner of the vehicle.

### ADDITIONAL PAYMENTS

In addition to our Limit of Liability, we will pay for an insured person:

1. all expenses we incur in the settlement of any claim or defense of any lawsuit;

2. prejudgment interest awarded against an insured person on that portion of the judgment that does not exceed our Limit of Liability under this Part I – Liability to Others. However, such payment will only be made if a claimant has made a written demand for payment of a claim, or a written offer to settle the claim, to the insured person or his or her representatives and us, if known to the claimant, and the amount of the judgment exceeds the demand for payment or offer of settlement. Prejudgment interest shall begin to accrue ninety (90) days after the demand or offer was received, as shown by certified mail return receipt, or from the date the demand or offer was rejected without counteroffer, whichever is earlier. To qualify as a demand or offer, such demand or offer must:

   a. be in writing and sent by certified mail return receipt requested; and

   b. be accompanied by an affidavit of the claimant describing the nature of the claim, the nature of

4

any injuries claimed, and a general computation of any category of damages sought by the claimant with supporting documentation, if any is reasonably available; and

c. for wrongful death, personal injury, and bodily injury claims, be accompanied by a list of the names and addresses of medical providers who have provided treatment to the claimant or decedent for such injuries, copies of all reasonably available medical bills, a list of employers if the claimant is seeking damages for loss of wages or earnings, and written authorizations sufficient to allow the **insured person**, his or her representatives, and **us**, if known to the claimant, to obtain records from all employers and medical care providers;

d. specifically reference Mo. Rev. Stat. § 408.040; and

e. be left open for ninety (90) days.

If **we** make an offer to pay **our** Limit of Liability, **we** will not pay any prejudgment interest accruing after **our** offer to pay **our** Limit of Liability;

3. interest accruing after entry of judgment is entered in any suit **we** defend. **Our** duty to pay interest ends when **we** offer to pay, or deposit in court, that portion of the judgment which does not exceed **our** Limit of Liability for this coverage. All such judgments will bear a per annum interest rate equal to the intended Federal Funds Rate, as established by the Federal Reserve Board, plus five percent. This does not apply if **we** have not been given notice of the suit or the opportunity to defend an **insured person**;

4. the premium on any appeal bond or attachment bond required in any lawsuit **we** defend. **We** have no duty to purchase a bond in an amount exceeding **our** Limit of Liability, and **we** have no duty to apply for or furnish these bonds;

5. reasonable expenses, including loss of earnings, up to $50 a day, incurred at **our** request; and

6. up to $250 for a bail bond required because of an **accident** resulting in **bodily injury** or **property damage** covered under this Part I. **We** have no duty to apply for or furnish this bond.

**EXCLUSIONS — READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART I.**

Coverage under this Part I, including **our** duty to defend, does not apply to:

1. punitive or exemplary damages;

2. **bodily injury** or **property damage** arising out of the ownership, maintenance or use of a vehicle or trailer while it is:

   a. being used to carry persons for compensation or a fee including, but not limited to nursery school children, medical patients, clients, migrant workers, or hotel/motel guests. This exclusion does not apply to shared-expense car pools;

   b. being used to carry property for compensation or a fee including, but not limited to snow removal, or any kind of wholesale or retail delivery such as food, magazine, flowers, newspaper, mail or other business types of delivery;

   c. rented or leased to another. This exclusion does not apply to the operation of a **covered vehicle** by an **insured person**;

   d. being used in the course of any business or employment, unless **you** have paid a specific premium for business use coverage;

   e. being used as a residence or premises;

   f. being used to pull a mobile home or **trailer** which is used as an office, store, display, or recreational vehicle;

   g. being used for the transportation of any explosive substance, flammable liquid, or similarly hazardous material;

   h. being operated by a resident of **your** household, other than a **relative**, or by a regular user of the vehicle unless that person is listed as an additional driver on the declarations page;

   i. being used without a reasonable belief that the person is entitled to do so;

3. any liability assumed by an **insured person** under any contract, bailment or agreement. This exclusion does not apply to **property damage** to any vehicle being used by an **insured person** that is:

   a. loaned for demonstration purposes or as a replacement for **your covered vehicle** while it is out of use because of breakdown, repair or servicing; and

   b. owned by a person, firm, or corporation engaged in the business of selling, repairing, or servicing motor vehicles;

4. **bodily injury** to an employee of an **insured person** arising out of or within the course of employment, except for domestic employees if benefits are neither paid nor required to be provided under workers' compensation, disability benefits, or similar laws;

5. **bodily injury** or **property damage** arising out of an **accident** involving a vehicle or trailer while being used by a person while employed or engaged in the business of selling, leasing, repairing, parking, storing, servicing, delivering, or testing vehicles. This exclusion does not apply to **you**, a **relative**, any other person listed on the declarations page as an additional driver, or an employee of



you or a relative, when using a **covered vehicle**;

6. **bodily injury** or **property damage** resulting from, or sustained during practice or preparation for:

   a. any pre-arranged or organized racing, speed or demolition contest, stunting activity; or

   b. any driving activity conducted on a permanent or temporary racetrack or racecourse;

7. **bodily injury** or **property damage** caused by an intentional act of the **insured person** or at the direction of the **insured person**, even if the actual injury or damage is different than that which was intended or expected;

8. **property damage** to any property owned by, rented to, being transported by, used by, or in the charge of an **insured person**. However, this exclusion does not apply to a rented residence or a rented garage damaged by a **covered vehicle**;

9. **bodily injury** or **property damage** resulting from the operation or use of a vehicle, other than a **covered vehicle**, owned or leased by **you**, a **relative**, a person who resides with **you**, or any person listed on the **declarations** page as an additional driver or available for **your**, a resident's, or an **insured person's** regular use;

10. **bodily injury** or **property damage** resulting from an **insured person's** operation or use of a vehicle that is not listed on the **declarations** page that is available for the **insured person's** regular use;

11. **bodily injury** or **property damage** arising out of the ownership, maintenance or use of a vehicle or trailer while it is:

    a. being used to flee or elude law enforcement;

    b. being used in any illicit trade or transportation;

    c. used in the commission of any felony, including theft of **your covered vehicle**;

    d. seized by federal or state law enforcement officers as evidence in a case against an **insured person** under the federal Controlled Substances Act, 21 U.S.C. Chapter 13, Section 801 et seq.

    This exclusion applies regardless of whether that **insured person** is actually charged with, or convicted of, a crime; or

12. **bodily injury** or **property damage**:

    a. caused by war (declared or undeclared), civil war, insurrection, rebellion, revolution, nuclear reaction, radiation, radioactive contamination, or any consequence of any of these;

    b. for which insurance is afforded under an atomic or nuclear energy liability insurance contract or would be afforded under an atomic or nuclear energy liability insurance contract but for its termination upon exhaustion of its limit of

liability. The reason for this is that by law such policies protect all persons involved in the **accident**, regardless of fault;

   c. for which the United States Government is liable under the Federal Tort Claims Act;

   d. arising out of the use of farm machinery; or

   e. which occurs while a **covered vehicle** is towing another vehicle.

## LIMITS OF LIABILITY

The Limit of Liability shown on the **declarations** page is the most we will pay regardless of the number of:

1. claims made;

2. **covered vehicles**;

3. **insured persons**;

4. lawsuits brought;

5. **vehicles** involved in the accident;

6. premiums paid;

7. claimants; or

8. policies.

**Your declarations page shows a split limit:**

1. the amount shown for "each person" is the most we will pay for all **damages** due to a **bodily injury** to one person resulting from any one **accident**; and

2. subject to the "each person" limit, the amount shown for "each accident" is the most we will pay for all **damages** due to **bodily injury** sustained by two or more persons in any one **accident**; and

3. the amount shown for **property damage** is the most we will pay for the total of all **property damage** for which **you** become legally liable as a result of any one **accident**.

The "each person" Limit of Liability includes the total of all claims made for **bodily injury** to a person and all claims of others derived from such **bodily injury**, including but not limited to, emotional injury or mental anguish resulting from the **bodily injury** of another or from witnessing the **bodily injury** of another, loss of society, loss of companionship, loss of services, loss of consortium, and wrongful death.

No one will be entitled to duplicate payments for the same elements of loss under this coverage part and Part II – Excess Medical Expense Coverage or Part III – Uninsured Motorist Coverage of this policy.

Any payment to a person under this Part I shall be reduced by any payment to that person under Part II – Excess Medical Expense Coverage or Part III – Uninsured Motorist Coverage for the same element of damages.

6

A **vehicle** and attached **trailer** are considered one **vehicle**. Therefore, the limits of liability will not be increased for an accident involving a **vehicle** which has an attached **trailer**.

## OTHER INSURANCE

If there is other applicable liability insurance or bond, **we** will pay only **our** share of the damages. **Our** share is the proportion that **our** Limit of Liability bears to the total of all applicable limits. Any insurance **we** provide for a **vehicle**, other than a **covered vehicle**, will be excess over any other collectible insurance, self-insurance, or bond. Any insurance **we** provide for use of a **covered vehicle** by any person other than **you** will be excess over any other collectible insurance, self-insurance or bond.

## FINANCIAL RESPONSIBILITY LAWS

When **we** certify this policy as proof of financial responsibility, this policy will comply with the law to the extent required. If **we** certify the coverage provided under this Part I as proof of financial responsibility, **you** must reimburse **us** if **we** make a payment that **we** would not have made otherwise.

## OUT-OF-STATE COVERAGE

If an **accident** to which this Part I applies occurs in any state, territory, or possession of the United States of America or any province or territory of Canada, in which **we** are licensed to write the type of insurance provided by this policy, other than the one in which a **covered vehicle** is principally garaged, and the state, province, territory or possession has:

1. a financial responsibility or similar law requiring minimum limits of liability for **bodily injury** or **property damage** higher than the limits shown on the **declarations page**, this policy will provide the higher limit; or

2. a compulsory insurance or similar law requiring a non-resident to maintain insurance whenever the non-resident uses a **vehicle** in that state, province, territory or possession, this policy will provide the greater of:

   a. the required minimum amounts and types of coverage; or

   b. the Limits of Liability under this policy.

## TWO OR MORE POLICIES ISSUED BY US

If this policy and any other policies that are issued by **us**, or any company affiliated with **us**, insure **you** as a Named Insured or an additional insured, and provide liability coverage, and apply to the same **accident**, then the aggregate limit of liability under all such policies shall not exceed the highest applicable limit of liability under any one policy.

## PART II – EXCESS MEDICAL EXPENSE COVERAGE

## INSURING AGREEMENT

Subject to the terms, conditions and exclusions of this policy, and the Limits of Liability, if **you** pay the premium for Excess Medical Expense Coverage, **we** will pay the **usual and customary charge** for reasonable and necessary expenses incurred within one (1) year from the date of an **accident**, for medical and funeral services because of **bodily injury**:

1. sustained by an **insured person**;

2. caused by **accident**; and

3. arising out of the ownership, maintenance, or use of a **covered vehicle**.

Any dispute as to the **usual and customary charge** will be resolved between **us** and the service provider.

This Part II does not cover expenses for **bodily injury** arising out of the ownership, maintenance or use of a **trailer**.

This Part II does not apply to that amount paid or payable under any health or accident insurance available to **you** regardless of whether the other coverage is primary, excess, or contingent.

## ADDITIONAL DEFINITIONS

When used in this Part II:

"**Insured person**" and "**insured persons**" mean:

1. **you**, a **relative**, or any other person listed on the **declarations page** as an additional driver while occupying any **covered vehicle**;

2. any other person while occupying a **covered vehicle** with the permission of **you**, a **relative**, or any other person listed on the **declarations page** as an additional driver.

"**Usual and customary charge**" means an amount which **we** determine represents a customary charge for services in the geographical area in which the service is rendered. **We** shall determine this customary charge through the use of independent sources of **our** choice.

**EXCLUSIONS – READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART II.**

Coverage under this Part II does not apply to **bodily injury**:

1. sustained while **occupying** a **vehicle** while being used to:

   a. carry persons for compensation or a fee including, but not limited to nursery school children, medical patients, clients, migrant workers, or hotel/motel guests. This exclusion does not apply to shared-expense car pools;



7

b. carry property for compensation or a fee including, but not limited to snow removal, or any kind of wholesale or retail delivery such as food, magazine, flowers, newspaper, mail or other business types of delivery;

2. if workers' compensation benefits are available for the **bodily injury**;

3. sustained by any person while **occupying** a **covered vehicle** without the express or implied permission of **you** or a **relative**;

4. sustained by **you**, a **relative**, or a person listed on the **declarations page** as an additional driver, while **occupying** a **non-owned vehicle** without the express or implied permission of the **owner**;

5. caused intentionally by the **insured person** or at the **insured person**'s direction, even if the actual injury or damage is different than that which was intended or expected;

6. sustained while **occupying** any **vehicle** or **trailer** while being used as a residence or premises;

7. arising out of an **accident** involving a **vehicle** or **trailer** while being used by a person while employed or engaged in the **business** of selling, leasing, repairing, parking, storing, servicing, delivering, or testing **vehicles**. However, this exclusion does not apply to **you**, a **relative**, any person listed on the **declarations page** as an additional driver, or an agent or employee of **you** or a **relative**, when using a **covered vehicle**;

8. resulting from any pre-arranged or organized racing, speed or demolition contest, stunting activity, or in practice or preparation for any such contest or activity;

9. resulting from the operation or use of a **vehicle**, other than a **covered vehicle**, owned or leased by **you**, a **relative**, a person who resides with **you**, or any person listed on the **declarations page** as an additional driver or available for **your**, a resident's, or an **insured person's** regular use;

10. resulting from an **insured person's** operation or use of a **vehicle** that is not listed on the **declarations page** that is available for the **insured person's** regular use;

11. to any person while **occupying** any **covered vehicle** while rented or leased to another. This exclusion does not apply to the operation of a **covered vehicle** by an **insured person**;

12. caused by war (declared or undeclared), civil war, insurrection, rebellion, revolution, or any consequence of any of these;

13. for which insurance is afforded under an atomic or nuclear energy liability insurance contract or would be afforded under an atomic or nuclear energy liability insurance contract but for its termination upon exhaustion of its limit of liability. The reason for

this is that by law such policies protect all persons involved in the **accident**, regardless of fault;

14. caused directly or indirectly by:

a. any accidental or intentional discharge, dispersal, or release of radioactive, nuclear, pathenogenic, or poisonous material; or

b. any intentional discharge, dispersal, or release of chemical or hazardous material for any purpose other than its safe and useful purpose;

15. for which the United States Government is liable under the Federal Tort Claims Act;

16. arising out of the ownership, maintenance or use of a **vehicle** or **trailer** while it is:

a. being used to flee or elude law enforcement;

b. being used in any illicit trade or transportation;

c. used in the commission of any felony, including theft of **your covered vehicle**;

d. seized by federal or state law enforcement officers as evidence in a case against an **insured person** under the federal Controlled Substances Act, 21 U.S.C. Chapter 13, Section 801 et seq;

This exclusion applies regardless of whether that **insured person** is actually charged with, or convicted of, a crime; or

17. sustained in the course of any business or employment, unless **you** have paid a specific premium for **business use coverage**.

## LIMIT OF LIABILITY

The Excess Medical Expense Coverage Limit of Liability shown on the **declarations page** is the most **we** will pay for each **accident** to cover injuries to one or more **insured persons** injured in any one (1) **accident**, regardless of the number of:

1. claims **made**;

2. **covered vehicles**;

3. **insured persons**;

4. lawsuits brought;

5. **vehicles** involved in the **accident**;

6. premiums paid; or

7. policies.

Any amounts payable to an **insured person** under this Part II will be reduced by any amounts paid or payable under Part I – Liability to Others or Part III – Uninsured Motorist Coverage of this policy.

No one will be entitled to duplicate payments for the same elements of loss under this coverage part and Part I – Liability To Others or Part III – Uninsured Motorist Coverage of this policy.

## OTHER INSURANCE

If there is other applicable **vehicle** medical payments insurance, **we** will pay only **our** share of the medical and funeral expenses. **Our** share is the proportion that **our** Limit of Liability bears to the total of all applicable limits. Any insurance **we** provide for an **insured person** **occupying a vehicle**, other than a **covered vehicle**, will be excess over any other collectible insurance providing payments for medical or funeral expenses.

## TWO OR MORE POLICIES ISSUED BY US

If this policy and any other policies that are issued by **us**, or any company affiliated with **us**, insure **you** as a Named Insured or an additional insured, and provide liability medical payments coverage, and apply to the same **accident**, then the aggregate limit of liability under all such policies shall not exceed the highest applicable limit of liability under any one policy.

## PART III – UNINSURED MOTORIST COVERAGE

### INSURING AGREEMENT – UNINSURED MOTORIST BODILY INJURY COVERAGE

Subject to the terms, conditions and exclusions of this policy, and the Limits of Liability, if **you** pay the premium for Uninsured Motorist Bodily Injury Coverage, **we** will pay damages, other than punitive or exemplary damages, which an **insured person** is legally entitled to recover from the **owner** or operator of an **uninsured motor vehicle** because of **bodily injury**:

1. sustained by an **insured person**;

2. caused by **accident**; and

3. arising out of the ownership, maintenance, or use of an **uninsured motor vehicle**.

Any judgment or settlement for damages against an operator or **owner** of an **uninsured motor vehicle** which arises out of a lawsuit brought without **our** written consent is not binding on **us**.

An **insured person** must give **us** reasonable notice in writing before entering into any settlement with the **owner** or operator of an **uninsured motor vehicle**, or that person's liability insurer. In order to preserve **our** right of subrogation, **we** may elect to pay any sum offered in settlement by, or on behalf of, the **owner** or operator of the **uninsured motor vehicle**. If **we** do this, **you** agree to assign to **us** all rights to the extent of **our** interest that **you** have against the **owner** or operator of the **uninsured motor vehicle**.

Determination as to whether an **insured person** is legally entitled to recover damages and as to the amount of damages will be made by agreement between the **insured person** and **us**.

## ADDITIONAL DEFINITIONS

When used in this Part III:

"**Insured person**" and "insured persons" mean:

1. **you** or a **relative**;

2. a person listed on the **declarations** page as an additional driver; or

3. any person **occupying a covered vehicle**.

"**Motor vehicle**" means a self-propelled motorized vehicle designed for use, and principally used, on public roads, including an automobile, truck, semi-tractor trailer, motorcycle and bus. A **motor vehicle** does not include a trolley, streetcar, trailer, railroad engine, railroad car, motorized bicycle, golf cart, off-road recreation vehicle, snowmobile, forklift, aircraft, watercraft, construction equipment, farm tractor or other motorized vehicle designed and principally used for agricultural purposes, mobile home, motorized vehicle traveling on treads or rails, or any similar motorized vehicle.

"**Uninsured motor vehicle**" means a land **motor vehicle** or trailer:

1. to which no **bodily injury** liability bond or policy applies at the time of the **accident**;

2. to which a **bodily injury** liability bond or policy applies at the time of the **accident**, but the bonding or insuring company:

   a. denies coverage; or

   b. is or becomes insolvent within two (2) years of the date of the **accident**;

3. that is a hit-and-run vehicle whose operator or **owner** cannot be identified and which causes an **accident** resulting in **bodily injury** to an **insured person**, provided that the **insured person**, or someone on his or her behalf, reports the **accident** to the police or civil authority within twenty-four (24) hours or as soon as practicable after the **accident**; or

4. to which a **bodily injury** liability bond or policy applies at the time of the **accident**, but its limit of liability are less than the minimum limits required by the Missouri Motor Vehicle Financial Responsibility Law.

An **uninsured motor vehicle** does not include any motorized vehicle or equipment:

1. owned or operated by a self-insurer under any applicable vehicle law, except a self-insurer that is or becomes insolvent;

2. operated on rails or crawler treads;

3. designed mainly for use off public roads, while not on public roads;

4. while used as a residence or premises; or

5. that is a **covered vehicle**.

EXCLUSIONS – READ THE FOLLOW-ING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART III.



Coverage under this Part III does not apply:

1. to **bodily injury** sustained by any person while using or **occupying** a **covered vehicle** while being used to carry persons for compensation or a fee including, but not limited to nursery school children, medical patients, clients, migrant workers, or hotel/motel guests. This exclusion does not apply to shared-expense car pools;

2. to **bodily injury** sustained by any person while using or **occupying** a **covered vehicle** while being used to carry property for compensation or a fee including, but not limited to snow removal, or any kind of wholesale or retail delivery such as food, magazine, flowers, newspaper, mail or other business types of delivery;

3. to **bodily injury** sustained by any person while using or **occupying** a **motor vehicle** that is owned by or available for the regular use of you, a **relative**, or any other person listed on the **declarations page** as an additional driver. This exclusion does not apply to:

   a. a **covered vehicle** that is insured under this Part III; or

   b. **you** with respect to the portion of the damages that is less than or equal to the minimum limits of uninsured motorist coverage required by Missouri law;

4. to **bodily injury** sustained by any person while using or **occupying** any **motor vehicle** or equipment owned by any governmental unit or agency. This exclusion does not apply to the portion of the damages that is less than or equal to the minimum limits of uninsured motorist coverage required by Missouri law;

5. to **bodily injury** sustained by **you**, a **relative**, or any other person listed on the **declarations page** as an additional driver while using any vehicle, other than a **covered vehicle**, without the permission of the owner of the vehicle or the person in lawful possession of the vehicle;

6. directly or indirectly to benefit any insurer or self-insurer under any of the following or similar laws:

   a. workers' compensation; or

   b. disability benefits law;

7. to any punitive or exemplary damages; or

8. to **bodily injury** sustained by any person if that person or the legal representative of that person settles without **our** written consent.

## LIMITS OF LIABILITY

The Limit of Liability shown on the **declarations page** for Uninsured Motorist Coverage shown under this Part III is the most **we** will pay regardless of:

1. claims made;

2. **insured persons**;

3. lawsuits brought; or

4. vehicles involved in the **accident**.

Regardless of the number of premiums paid, coverage available under this Part III may not be added, combined, or stacked together to determine the limits of liability available for any one **accident** with respect to **insured persons** other than **you**, a **relative**, or any other person listed on the **declarations page** as an additional driver.

**Your declarations page** shows a split limit. This means:

1. the amount shown for "each person" is the most **we** will pay for all damages due to a **bodily injury** to one person; and

2. subject to the "each person" limit, the amount shown for "each **accident**" is the most **we** will pay for all damages due to **bodily injury** sustained by two or more persons in any one **accident**.

The Limit of Liability under this Part III for "each person" includes the total of all claims made for such **bodily injury** to an **insured person** and all claims of others derived from such **bodily injury**, including, but not limited to, emotional injury or mental anguish resulting from the **bodily injury** of another or from witnessing the bodily injury of another, loss of society, loss of companionship, loss of services, loss of consortium, and wrongful death.

The Limits of Liability under this Part III will be reduced by all sums paid because of **bodily injury** by or on behalf of any persons or organizations that may be legally responsible, including, but not limited to, all sums paid under Part I – Liability to Others.

The Limits of Liability under this Part III will not be reduced by any sums:

1. paid or payable under Part II – Medical Payments Coverage; or

2. paid or payable because of **bodily injury** under any of the following or similar laws:

   a. workers' compensation law; or

   b. disability benefits law.

If multiple auto policies issued by **us** are in effect for **you**, or for any **insured person**, **we** will pay no more than the highest limit of liability for this coverage available under any one policy.

No one will be entitled to duplicate payments for the same elements of loss under this coverage part and Part I – Liability To Others or Part II – Excess Medical Expense Coverage of this policy.

## OTHER INSURANCE

If there is other applicable uninsured motorist coverage, **we** will pay only **our** share of the damages. **Our** share is the proportion that **our** Limit of Liability bears to the total of all available coverage limits. Any insurance **we** provide with respect to a vehicle that is not a **covered**

10

vehicle shall be excess over any other uninsured motorist coverage.

## PART IV – PHYSICAL DAMAGE COVERAGE

### INSURING AGREEMENT- COLLISION COVERAGE

Subject to the terms, conditions and exclusions of this policy, and Limits of Liability, if **you** pay the premium for Collision Coverage, **we** will pay for a collision loss to a **covered vehicle** for which Collision Coverage has been purchased when it overturns or is in a collision with another object, subject to the Limits of Liability.

### INSURING AGREEMENT – COMPREHENSIVE COVERAGE

Subject to the terms, conditions and exclusions of this policy, and Limits of Liability, if **you** pay a premium for Comprehensive Coverage, **we** will pay for comprehensive **loss** to a **covered vehicle** for which Comprehensive Coverage has been purchased.

A comprehensive **loss** is a **loss** to a **covered vehicle** caused by any event other than collision, including, but not limited to, any of the following:

1. contact with an animal;
2. explosion or earthquake;
3. fire;
4. malicious mischief or vandalism;
5. missiles or falling objects;
6. riot or civil commotion;
7. theft or larceny; or
8. windstorm, water, hail, or flood.

If **you** pay a premium for Comprehensive Coverage under this policy, **we** will pay **you** up to $10 per day, but not more than a total of $300 per **loss** for:

1. reasonable transportation expenses incurred by **you** if a **covered vehicle** is stolen; and
2. **loss** of use damages that **you** are legally liable to pay if a **non-owned vehicle** is stolen.

Transportation expenses coverage begins forty-eight (48) hours after **you** report the theft to **us**, and ends the earlier of when the **covered vehicle** has been:

1. recovered and returned to **you** or its owner; or
2. recovered, repaired or replaced.

However, if the **covered vehicle** is deemed by **us** to be a **total loss** or unrecoverable, transportation expenses coverage ends forty-eight (48) hours after **we** make an offer to pay the applicable Limit of Liability under this Part IV.

**You** must provide **us** written proof of **your** transportation expenses and damages.

If **we** can pay the **loss** under either Comprehensive or Collision Coverage, **we** will pay under the coverage where **you** collect the most.

### ADDITIONAL DEFINITIONS

When used in this Part IV:

"Total Loss" means:

1. the theft of the **covered vehicle** if the **covered vehicle** is not recovered within thirty (30) days; or
2. any other **loss** to the **covered vehicle** that is payable under this Part IV if the cost to repair the damage to the **covered vehicle** (including parts and labor), when combined with the salvage value, exceeds the actual cash value of the **covered vehicle** at the time of the **loss**.

EXCLUSIONS – READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART IV.

Coverage under this Part IV does not apply for **loss**:

1. to a **covered vehicle**:

   a. being used to carry persons for compensation or a fee including, but not limited to nursery school children, medical patients, clients, migrant workers, or hotel/motel guests. This exclusion does not apply to shared-expense car pools;

   b. being used to carry property for compensation or a fee including, but not limited to snow removal, or any kind of wholesale or retail delivery such as food, magazine, flowers, newspaper, mail or other business types of delivery;

   c. while rented or leased to another. This exclusion does not apply to the operation of a **covered vehicle** by **you**, a **relative**, or any other person listed on the declarations page as an additional insured;

   d. being used in the course of any business or employment, unless **you** have paid a specific premium for business use coverage;

   e. being used as a residence or premises;

   f. being used to pull a mobile home or trailer which is used as an office, store, display, or recreational vehicle;

   g. being used for the transportation of any explosive substance, flammable liquid, or similarly hazardous material;

   h. being operated by a resident of **your** household, other than a **relative**, or by a regular user of the vehicle unless that person is



listed as an additional driver on the declarations page;

  i.  resulting from any pre-arranged or organized racing, speed or demolition contest, stunting activity, or in practice or preparation for any such contest or activity;

  j.  caused by war (declared or undeclared), civil war, insurrection, rebellion, revolution, nuclear reaction, radiation, radioactive contamination, or any consequence of any of these;

  k.  for which insurance is afforded under an atomic or nuclear energy liability insurance contract or would be afforded under an atomic or nuclear energy liability insurance contract but for its termination upon exhaustion of its limit of liability. The reason for this is that by law such policies protect all persons involved in the **accident**, regardless of fault;

  l.  for which the United States Government is liable under the Federal Tort Claims Act;

  m.  which occurs while a **covered vehicle** is towing another vehicle;

  n.  being used without the **owner's** permission, or outside the scope of that permission, or by any person who does not have a reasonable belief of being entitled to do so. This does not apply to theft of a **covered vehicle**;

2.  to a **covered vehicle**, while being used or driven by a person while employed or engaged in the business of selling, leasing, repairing, parking, storing, servicing, delivering, or testing **vehicles**. However, this exclusion does not apply to **you**, a **relative**, any person listed on the **declarations page** as an additional driver, or their agent or employee, when using a **covered vehicle**;

3.  arising out of the ownership, maintenance or use of a **vehicle** while it is:

  a.  being used to flee or elude law enforcement official(s);

  b.  being used in any illicit trade or transportation;

  c.  used in the commission of any felony; or

  d.  seized by federal or state law enforcement officers as evidence in a case against an **insured person** under the federal Controlled Substances Act, 21 U.S.C. Chapter 13, Section 801 et seq;

This exclusion applies regardless of whether that **insured person** is actually charged with, or convicted of, a crime;

4.  to a **covered vehicle**, caused by an intentional act of **you**, a **relative**, or any person listed on the **declarations page** as an additional driver, or at the direction of **you**, a **relative**, or any person listed on the **declarations page** as an additional driver, even

if the actual injury or damage is different than that which was intended or expected. This exclusion does not apply for a **loss** to the extent of the legal interest of an innocent coinsured if:

  a.  the loss is caused as a result of a pattern of domestic violence by **you**; a **relative**, or any person residing in **your** household; and

  b.  the innocent coinsured claiming the **loss**:

    i.  did not cooperate in or contribute to the creation of the loss;

    ii.  files a police report; and

    iii.  completes a sworn affidavit for **us** that indicates both the cause of the **loss** and a pledge to cooperate in any criminal prosecution of the person who committed the act causing the loss.

**We** will not make any subsequent payment to any other person for the part of any **loss** for which the innocent coinsured has received payment;

5.  to a **covered vehicle**, that is due and confined to:

  a.  wear and tear;

  b.  freezing;

  c.  mechanical or electrical breakdown or failure;

  d.  road damage to tires; or

  e.  manufacturer's defects.

This exclusion does not apply if the damage results from the theft of a **covered vehicle**;

6.  due to theft or conversion of a **covered vehicle**:

  a.  by **you**, a **relative**, any person listed on the declarations page as an additional driver, or any resident of **your** household;

  b.  prior to its delivery to **you**, a **relative**, or any person listed on the **declarations page** as an additional driver; or

  c.  while in the care, custody, or control of anyone engaged in the **business** of selling the vehicle;

7.  to wearing apparel or personal effects;

8.  to any device used for the detection or location of radar, laser, or other speed measuring equipment or its transmissions;

9.  to any of the following optional equipment whether or not factory installed by the original auto manufacturer:

  a.  car telephone equipment;

  b.  televisions or their accessories or antennas;

  c.  home high fidelity equipment;

  d.  two-way radios;

  e.  scanning monitor receivers; or

f. awnings, cabanas, or equipment designed to provide additional living facilities;

10. while the **covered vehicle** is subject to any bailment, lease, conditional sale, mortgage, or other encumbrance not specifically declared and described on this policy;

11. to **custom parts or equipment**;

12. to a **covered vehicle**, for diminution of value; or

13. caused directly or indirectly by mold, mildew or fungus, including any type or form of:

    a. decomposing or disintegrating organic material or microorganism;

    b. organic surface growth on moist, damp, or decaying matter;

    c. yeast or spore-bearing plant-like organism; or

    d. spores, scents, toxins, bacteria, viruses, or any other by-products produced or released by any mold, mildew, fungus or other microbes.

However, this exclusion does not apply to **loss** caused by mold, mildew or fungus, if such **loss** is caused by any other **loss** covered under this Part IV.

## LIMIT OF LIABILITY

The Limit of Liability for **loss** to a **covered vehicle** is the lowest of:

1. the actual cash value of the stolen or damaged property at the time of the **loss**, reduced by the applicable deductible shown on the **declarations page**, and by its salvage value if **you** or the owner retain the salvage;

2. the amount necessary to replace the stolen or damaged property, reduced by the applicable deductible shown on the **declarations page**, and by its salvage value if **you** or the owner retain the salvage; or

3. the amount necessary to repair the damaged property to its pre-loss condition, reduced by the applicable deductible shown on the **declarations page**; or

4. the amount stated on the **declarations page** of this policy.

Payments for **loss** covered under Collision Coverage and Comprehensive Coverage are subject to the following provisions:

1. no more than one (1) deductible shall be applied to any one (1) covered **loss**;

2. the actual cash value will be determined by the market value, age and condition at the time the **loss** occurs;

3. an adjustment for depreciation and physical condition, including a reduction for unrepaired prior damage, will be made in determining the Limit of Liability at the time of **loss**. Unrepaired prior damage includes broken, cracked, or missing parts; rust; dents; scrapes; gouges; and peeling paint. The reduction for unrepaired period damage is the cost of labor, parts, and materials necessary to repair or replace damage, deterioration, defects, or wear and tear on exterior body parts, windshields and other glass, wheels, and paint, that existed prior to the accident and that is eliminated as a result of the repair or replacement of property damaged in the **loss**;

4. in determining the amount necessary to repair damaged property to its pre-loss condition, **our** estimate will be based on:

    a. the prevailing competitive labor rates charged in the area where the property is to be repaired, as reasonably determined by **us**; and

    b. the cost of repair or replacement parts and equipment which may be new, refurbished, restored, or used, including, but not limited to:

        i. original manufacturer parts and equipment; and

        ii. non-original manufacturer parts or equipment;

5. duplicate recovery for identical elements of damages is not permitted under this policy.

If more than one (1) **vehicle** is shown on the **declarations page**, coverage will be provided as specified on the **declarations page** as to each **vehicle**.

## INSURING AGREEMENT - RENTAL REIMBURSEMENT

Subject to the terms, conditions and exclusions of this policy, and Limits of Liability, if **you** pay the premium for Rental Reimbursement Coverage, **we** will reimburse rental charges incurred when **you** rent a **temporary substitute motor vehicle** due to a **loss** to a **covered vehicle** that is payable under Comprehensive Coverage or Collision Coverage under this Part IV. However, this coverage:

1. does not apply to the theft of a **covered vehicle**; and

2. applies only to **loss** to a **covered vehicle** for which this coverage has been purchased.

Additional fees or charges for insurance, damage waivers, optional equipment, fuel, or accessories are not covered.

**Our** Limit of Liability is the amount and the number of days shown on the **declarations page**.

If Rental Reimbursement Coverage applies, no other coverage under this policy for transportation expenses will apply.

Rental charges will be reimbursed beginning:

1. when the **covered vehicle** cannot be driven due to a **loss**; or

2. if the **covered vehicle** can be driven, when **you** deliver the **covered vehicle** to a vehicle repair shop for repairs due to the loss;

and ending the earlier of when the covered vehicle has been:

1. returned to **you**;

2. repaired or replaced.

However, if the **covered vehicle** is deemed by **us** to be a **total loss**, subject to the applicable Limit of Liability, rental charges will be reimbursed until forty-eight (48) hours after **we** make an offer to pay the applicable Limit of Liability under this Part IV.

**You** must provide **us** with written proof of **your** rental charges.

Duplicate recovery for identical elements of damages is not permitted under this policy.

**PAYMENT OF LOSS**

**We** may, at **our** option:

1. pay for the **loss** in money; or

2. repair or replace the damaged or stolen property.

At **our** expense, **we** may return any recovered stolen property to **you** or to the address shown on the declarations page, with payment for any damage resulting from the theft. **We** may keep all or part of the property at the agreed or appraised value. **We** may settle any **loss** either with **you** or the **owner** or lienholder of the property.

**NO BENEFIT TO BAILEE**

Coverage under this Part IV shall not directly or indirectly benefit any carrier or other bailee for hire.

**LOSS PAYEE AGREEMENT**

Payment under this Part IV for a **loss** to a **covered vehicle** will be made according to **your** interest and the interest of any Loss Payee or lienholder shown on the declarations page or designated by **you**. Payment may be made both jointly, or separately, at **our** discretion.

The lienholder's interest will not be protected where the **loss** is otherwise not covered under the terms of this policy.

If this policy is cancelled or nonrenewed, the interest of any lienholder under this agreement will also terminate.

**We** will be entitled to the Loss Payee or lienholder's rights of recovery, to the extent of **our** payment to the Loss Payee or lienholder.

**APPRAISAL**

If **we** cannot agree with **you** on the amount of **loss**, then **we** or **you** may demand an appraisal of the **loss**. If the demand for an appraisal is made, each party shall appoint a competent and impartial appraiser. The

appraisers will determine the amount of the **loss**. If they fail to agree, the disagreement will be submitted to a qualified and impartial umpire chosen by the appraisers. The amount of **loss** agreed to by both appraisers, or by one appraiser and the umpire, will be binding. **You** shall pay **your** appraiser's fees and expenses. **We** will pay **our** appraiser's fees and expenses. Payment of the umpire and all other expenses of the appraisal will be shared equally by **us** and **you**. Neither **we** nor **you** waive any rights under this policy by agreeing to an appraisal.

**OTHER SOURCES OF RECOVERY**

If other sources of recovery also cover the **loss**, **we** will pay only **our** share of the **loss**. **Our** share is the proportion that **our** Limit of Liability bears to the total of all applicable limits. However, any insurance **we** provide for a **non-owned vehicle** not shown on the declarations page will be excess over any other collectible source of recovery including, but not limited to:

1. any coverage provided by the **owner** of the **non-owned vehicle**;

2. any other applicable physical damage insurance; or

3. any other source of recovery applicable to the **loss**.

**PART V – TOWING AND LABOR**

**INSURING AGREEMENT**

Subject to the terms, conditions and exclusions of this policy, and Limits of Liability shown on the declarations page, if **you** pay the premium for Towing and Labor Coverage, **we** will pay the costs incurred by **you** for towing and labor due to the **disablement** of a **covered disabled vehicle**. Coverage under this Part V applies subject to the following:

1. **you** are limited to six (6) occurrences per six (6) month policy period;

2. labor on a **covered disabled vehicle** must be performed at the place of **disablement**; and

3. the location of the **disablement** of a **covered disabled vehicle** cannot be **your** residence.

**ADDITIONAL DEFINITIONS**

When used in this Part V:

1. "**Covered disabled vehicle**" means a disabled **covered vehicle** for which Towing and Labor Coverage has been purchased.

2. "**Disablement**" means the disablement of a **covered disabled vehicle** due to:

   a. mechanical or electrical breakdown;

   b. battery failure;

   c. lack of fuel, oil, or water;

   d. flat tire;

14

e. lock-out; or

f. entrapment within 100 feet of a public road or highway.

EXCLUSIONS – READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART V.

Coverage under this Part V does not apply to:

1. the cost of purchasing parts, fluid, lubricants, fuel or replacement keys;

2. installation of products or materials not related to the **disablement**;

3. labor not related to the **disablement**;

4. labor on a **covered disabled vehicle** for any time period in excess of sixty (60) minutes per disablement;

5. towing or storage related to impoundment, abandonment, illegal parking, or other violations of law;

6. towing from a service station, garage, or repair shop;

7. labor or repair work performed at a service station, garage, or repair shop;

8. vehicle storage charges;

9. a second service call or tow for a single **disablement**;

10. **disablement** that occurs on roads not regularly maintained, sand beaches, open fields, or areas designated as not passable due to construction;

11. mounting or removing of snow tires or chains; or

12. **disablement** that results from the intentional or willful act or actions by **you**, a **relative**, or the operator of a **disabled covered vehicle**.

## PART VI – ACCIDENTAL DEATH BENEFIT

### INSURING AGREEMENT

Subject to the terms, conditions, and exclusions of this policy, and Limit of Liability, if **you** pay the premium for the Accidental Death Benefit, **we** will pay the benefit limit in the event of the **accidental death** of an **insured person**. The Accidental Death Benefit is payable only after **we** are furnished with:

1. a copy of the **insured person's** death certificate; and

2. a sworn statement from the legal representative of the **insured person's** estate which identifies all persons entitled to benefits resulting from the **insured person's** death.

### ADDITIONAL DEFINITIONS

When used in this Part VI:

"**Accidental death**" means the death of an **insured person** that:

1. is a direct result of **bodily injury** sustained in an accident arising from the ownership, maintenance, or use of a **covered vehicle**; and

2. occurs within ninety (90) days of the date the **bodily injury** was sustained.

"**Insured person**" or "**insured persons**" means:

1. **you**; or

2. any person shown on the **declarations page** as an additional driver.

EXCLUSIONS – READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, BENEFITS WILL NOT BE AFFORDED UNDER THIS PART VI.

Coverage under this Part VI does not apply to an accident that:

1. occurs while a **covered vehicle** is being used to carry persons or property for compensation or a fee. This exclusion does not apply to an accident arising from the use of a **covered vehicle** in a shared expense car pool;

2. occurs while a **covered vehicle** is being used for snow removal, or any kind of wholesale or retail delivery, including but not limited to food, magazine, flowers, newspaper, mail or other business types of delivery;

3. occurs while a **covered vehicle** is being used in a commercial capacity;

4. occurs while a **covered vehicle** is being used during the course of an **insured person's** employment to transport people, including but not limited to nursery school children, medical patients, clients, hotel guests, and the like;

5. occurs while a **covered vehicle** is being used to transport explosives, flammable liquid, or similarly hazardous material;

6. occurs while a **covered vehicle** is being towed, or towing another vehicle;

7. arises out of the ownership maintenance or use of any vehicle, other than a **covered vehicle**, which is owned by **you**, a resident, or an **insured person**, furnished or available for **your**, a resident's, or an **insured person's** regular use;

8. occurs while an **insured person** is occupying a **covered vehicle** while being used as a residence or premises;

9. is caused intentionally by an **insured person** or at an **insured person's** direction, even if the actual injury or damage is different than that which was intended or expected;

10. occurs while an **insured person** is



engaged or involved in any illicit trade or transportation;

11. occurs while an **insured person** is fleeing or eluding law enforcement officials;

12. occurs while an **insured person** is engaged in the commission of a crime;

13. results from any pre-arranged or organized racing, speed or demolition contest, stunting activity, or in practice or preparation for any such contest or activity;

14. is caused by war (declared or undeclared), civil war, insurrection, rebellion, revolution, nuclear reaction, radiation, radioactive contamination, or any consequence of any of these;

15. arises from an **accident** that occurred during the period between the cancellation date and time and the reinstatement date and time;

16. occurs while an **insured person** is **occupying a covered vehicle** while being used off of public or private roads for race, sport, rally or other recreational purposes; or

17. occurs while an **insured person** is not wearing a factory installed seat belt and lap or shoulder restraint, as verified by the investigating law enforcement officer.

## LIMIT OF LIABILITY

The Accidental Death Benefit Limit of Liability shown on the **declarations page** is the most we will pay for the **accidental death** of each insured person regardless of the number of:

1. claims made;

2. **covered vehicles**;

3. **insured persons**;

4. lawsuits brought;

5. vehicles involved in the **accident**;

6. premium paid; or

7. policies.

At no time will we owe more than the Accidental Death Benefit Limit of Liability for the **accidental death** of each **insured person** that is otherwise covered under this Part VI.

## PAYMENT OF BENEFITS

The Accidental Death Benefit Limit of Liability shown on the **declarations page** will be paid in the event of the **accidental death** of an **insured person** to the following, in order of priority. Benefits are payable to the insured **person's**:

1. spouse;

2. children, if there is no surviving spouse;

3. parents, if there are no surviving children; or

4. estate, if there are no surviving parents.

If a benefit hereunder becomes payable to a deceased **insured person's** children or parents, each such child or parent will be entitled to an equal portion of the benefit, provided that the total amount of such benefit will not exceed the Accidental Death Benefit Limit of Liability shown on the **declarations page**.

## OTHER INSURANCE

Benefits under this Part VI are primary and shall not reduce, or be reduced by, any other coverage or benefit provided under this policy.

## GENERAL PROVISIONS

### BUSINESS USE COVERAGE

If you pay the additional premium for coverage for **business use**, we will pay for loss that arises from **your business use** of a **covered vehicle** subject to the coverages shown on the **declarations page**, and the terms, conditions and exclusions described throughout this policy, and applicable Limits of Liability.

### POLICY PERIOD AND TERRITORY

This policy applies only to **accidents** and losses during the policy period shown on the **declarations page** and which occur within any state, territory or possession of the United States of America, or any province of Canada, or while a **covered vehicle** is being transported between their ports.

### POLICY CHANGES

This policy, **your** insurance application (which is made a part of this policy as if attached hereto), the **declarations page**, as amended, and endorsements to this policy issued by **us** contain all the agreements between **you** and **us**. Subject to the following, its terms may not be changed or waived except by an endorsement issued by **us**. Only the Named Insured may request any changes that require the execution of a state-mandated form in order to effectuate a change in the policy or coverages. All other changes in the policy may be requested by:

1. the Named Insured; or

2. the Named Insured's resident spouse, but only if the resident spouse is listed as an additional driver on the **declarations page**.

Any change that increases **our** liability must have **our** prior approval.

The premium for each **vehicle** is based on information we have received from **you** and other sources. **You** agree to cooperate with **us** in determining if this information is correct and complete, and to notify **us** if it changes during the policy period. If this information is incorrect, incomplete, or changes during the policy period, **we** may adjust **your** premium during the policy period, or take other appropriate action. To properly insure **your vehicle**, **you** must promptly notify **us** when:

1. an insured person changes their address;

2. any resident operators are added or deleted;

3. an insured person acquires an additional or replacement **vehicle**;

4. an insured person's marital relationship is terminated;

5. the principal garaging address for a **covered vehicle** shown in the **declarations** page changes;

6. **you** or a **relative** obtain a driver's license or **operator's** permit; or

7. there is a change with respect to the residents in **your** household or the persons who regularly operate a **covered vehicle**.

Changes that may result in a premium adjustment are contained in **our** rates and rules. These include, but are not limited to, changes in:

1. the number, type, or use classification of **covered vehicles**;

2. operators using **covered vehicles** or changes in their marital status;

3. **you** or a **relative** obtaining a driver's license or **operator's** permit;

4. the place of principal garaging of any **covered vehicle**;

5. coverage, deductibles, or limits of liability; or

6. rating territory or discount eligibility.

### TWO OR MORE POLICIES ISSUED BY US

If any part of this policy, or any other policies issued by **us**, or any company affiliated with **us**, insure **you** or an insured person as a Named Insured or an additional insured, and apply to the same accident, the aggregate limit of liability under all such policies shall not exceed the highest applicable limit of liability under any one policy.

### TERMS OF POLICY CONFORM TO STATUTES

If any provision of this policy fails to conform with the legal requirements of the state listed on **your** application as **your** residence, the provision shall be deemed amended to conform to such legal requirements. All other provisions shall be given full force and effect. Any disputes as to the coverages provided or the provisions of this policy shall be governed by the law of the state listed on **your** application as **your** residence.

### TRANSFER

This policy cannot be transferred to another person or organization without **our** written consent. If a Named Insured dies, this policy will provide coverage until the end of the policy period for the legal representative of the Named Insured, while acting as such, and for persons covered under this policy on the date of the Named Insured's death, provided that the premium has been paid.

### NUMBER OF OWNED VEHICLES LISTED

Four (4) is the maximum number of **covered vehicles** that may be listed on **your** policy.

### TWO OR MORE VEHICLE POLICIES

If this policy and any other insurance policy issued to **you** by **us** apply to the same **accident**, the maximum limit of **our** liability under all the policies shall not exceed the highest applicable limit of liability under any one policy, even though separate premiums have been paid.

### FRAUD OR MISREPRESENTATION

This policy was issued in reliance upon the information provided on **your** insurance application. This includes information about:

1. the license status and driving history of **you**, **relatives**, any other person listed on the **declarations** page as an additional driver, and all persons residing in **your** household;

2. **your** marital status;

3. the **vehicles** to be insured; or

4. the principal garaging address and **your** residence.

### PREMIUM PAYMENT TERMS AND CONDITIONS

If **your** initial premium payment is by check, draft, or any remittance other than cash, coverage under this policy is conditioned upon the check, draft, or remittance being honored upon presentment to the bank or other financial institution. If the check, draft, or remittance is not honored upon presentment, this policy will be deemed void from its inception – which is as if the policy never existed. This means that **we** will not be liable under this policy for any claims or damages which would otherwise be covered if the check, draft, or remittance had been honored upon presentment.

If **your** installment or renewal payment is by check, draft, or any remittance other than cash, coverage under this policy will continue provided the check, draft or remittance is honored upon presentment to the bank or other financial institution. If the check, draft, or remittance is not honored upon presentment, this policy will be cancelled at the hour and date shown on the notice of cancellation.

If a check, draft, or remittance is not honored upon presentment, a service charge will be added to **your** account. Any action by **us** to present the remittance for payment more than once shall not affect **our** right to void this policy.

In addition to premium, fees may be charged on **your** policy. **We** may charge fees for installment payments, late payments, and other transactions. Payments made on **your** policy will be applied first to fees, then to premium due.

In order to continue **your** coverage with no interruption, **your** installment or renewal payment must be received in **our** office before the cancellation date and



time shown on **your** notice of cancellation. Payment effective dates and times vary according to the payment method:

1. payments made through the Safe Auto Check by Phone system are effective the date and time the checking account information is relayed to the Customer Service Representative or **our** Automated Attendant;

2. payments made through money wire services are effective the date and time printed on the receipt, converted to Eastern Time Zone;

3. payments made via credit card are effective the date and time the transaction is approved by the creditor;

4. payments mailed via the United States Postal Service with a legible postmark are effective at 12:01 A.M. the day after the postmark date shown on the payment envelope;

5. payments made via a nationally recognized and bonded overnight carrier with a legible received date and time are effective the day and time the overnight carrier receives the payment;

6. payments mailed via the United States Postal Service with an illegible postmark or no postmark are effective at 12:01 A.M. the day we receive the payment envelope;

7. payments delivered by an overnight carrier with an illegible received date and time or no received date and time are effective at 12:01 A.M. the day we receive the payment envelope;

8. payments delivered via a same day carrier are effective the date and time **we** receive the payment;

9. internet-based check payments are effective the date and time the payment information is received by Safe Auto Insurance Company and the "make check payment" button is clicked;

10. internet-based credit card payments are effective the date and time the transaction is approved by the creditor.

If the payment effective date and time is <u>before</u> the cancellation date and time shown on **your** notice of cancellation, the policy will not cancel. If **your** payment is effective after the cancellation date and time, **your** policy will cancel as of the date and time shown on **your** notice of cancellation that applies to that payment and **your** policy will reinstate effective the effective date and time of the payment.

**We** may accept a payment effective after the cancellation date and time and reinstate **your** policy, as long as the payment's effective date and time is no more than seven (7) days after the cancellation's effective date and time.

If **we** accept **your** late payment and reinstate **your** policy, **we** will not cover any **loss** or **accident** that occurs during the period between the cancellation date and time and the reinstatement date and time because

**your** policy is not in force during a lapse period. If **we** accept **your** late payment and reinstate **your** policy, **we** will charge **you** a reinstatement fee. If **your** policy lapses and reinstates due to late payment, **we** will credit **your** account for the lapse period because **you** have no coverage under this policy during a lapse period. In the event that this policy is reinstated, it will reinstate under the same policy terms, limits, conditions, elections, and exclusions which were in effect prior to cancellation. **Your** policy expiration and/or renewal date will remain unchanged by any reinstatement by us.

**We** reserve the right not to accept late payments on policies that have cancelled. **We** cannot accept any payment that is effective more than seven (7) days after the cancellation date and time.

Some of these terms and conditions do not apply if **we** have certified **your** policy under the financial responsibility laws of Missouri. In such case, **we** will notify **you** of any additional restrictions that may apply.

### CANCELLATION

**You** may cancel this policy by calling or writing us and stating the future date and time that **you** wish the cancellation to be effective. **We** may cancel this policy by mailing a notice of cancellation to the Named Insured shown on the declarations page at the last known address appearing in our records.

**We** may cancel this policy for any reason within the first fifty-nine (59) days of the initial policy period.

If **we** cancel this policy within the first fifty-nine (59) days of the initial policy period, or if cancellation is due to nonpayment of premium, notice will be mailed at least ten (10) days before the effective date of cancellation.

If **we** cancel this policy after the first fifty-nine (59) days of the initial policy period, and cancellation is for any reason other than nonpayment of premium, notice will be mailed at least thirty (30) days before the effective date of cancellation.

After this policy has been in effect for more than fifty-nine (59) days, **we** may cancel only for one (1) or more of the following reasons:

1. **you** do not pay the required premium for this policy when due;

2. loss of driving privileges through suspension or revocation of the licensed of the Named Insured. However, in the event more than one person is listed as the Named Insured and only one of the Named Insureds has a loss of driving privileges through suspension or revocation, instead of cancellation, **we** may issue an exclusion stipulating that no coverage will apply while that named insured is operating a **vehicle**; or

3. any other reason provided by law.

Proof of mailing will be sufficient proof of notice. If this policy is cancelled and a notice of cancellation is mailed to **you**, coverage will not be provided as of the effective date and time shown in the notice of cancellation. For

purposes of cancellation, this policy is neither severable nor divisible. Any cancellation will be effective for all coverages for all persons and all **vehicles**. Such notice of cancellation may be included with your periodic billing invoice.

## CANCELLATION REFUND

Upon cancellation, **you** may be entitled to a premium refund, but, our making or offering of a refund is not a condition of cancellation. If this policy is cancelled by **us**, any refund due will be computed on a daily pro-rata basis. If the refund due is less than $1.00, no refund will be sent. If **you** owe **us** less than $1.00, we will not pursue the amount due. If this policy is cancelled at **your** request, a $25 cancellation charge will be applied to **your** policy.

## NONRENEWAL

If we decide not to renew or continue this policy, we will mail notice of nonrenewal to the Named Insured shown on the **declarations page** at the last known address appearing in **our** records. Proof of mailing will be sufficient proof of notice. Notice will be mailed at least thirty (30) days before the end of the policy period.

Once a non-renewal notice has been mailed to **you**, an obligation still exists with **you** to make any outstanding premium installment **payments** when due, for the remainder of the policy period.

Failure to pay any such payments when due may result in an earlier cancellation of **your** policy for nonpayment of premium following at least ten (10) days written notice by **us**. No late payments will be accepted and coverage will not be extended to the non-renewal date.

## AUTOMATIC TERMINATION

Coverage for a **covered vehicle** shall automatically terminate:

1. when a person other than **you** or a **relative** becomes the owner of the **vehicle**;

2. on the effective date of any other motor vehicle insurance policy covering that **vehicle**; or

3. if **you** fail to accept an offer of renewal of this insurance, this coverage will automatically terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due will mean that **you** have not accepted **our** offer.

## COVERAGE CHANGES

If **we** make a change which broadens any coverage **you** have under this edition of **your** policy, **you** will receive the broadened coverage without any additional charge. The broadened coverage applies on the date the coverage change is implemented in **your** state. This provision does not apply to a general program revision or **our** issuance of a subsequent edition of **your** policy. Otherwise, this policy can be changed only by endorsement issued by **us**.

## LEGAL ACTION AGAINST US

We may not be sued unless there is full compliance with all the terms of this policy. Any lawsuit against **us** by **you**, a **relative**, or any other insured person must be commenced following an **accident**, or an alleged breach of **our** obligations under this policy, within the time period set forth as the **bodily injury** statute of limitations in the laws of the state listed in **our** records as **your** principal address.

We may not be sued for payment under Part I – Liability to Others until the obligation of an insured person to pay is finally determined either by final judgment against that person or by written agreement of the insured person, the claimant, and **us**. No one will have any right to make **us** a party to a lawsuit to determine the liability of an insured person.

If **we** retain salvage, we have no duty to preserve or otherwise retain the salvage for any purpose, including evidence for any civil or criminal proceeding.

## OUR RIGHTS TO RECOVER PAYMENT

In the event of any payment under this policy, we are entitled to all the rights of recovery that the insured person to whom payment was made has against another. That insured person must sign and deliver to **us** any legal papers relating to that recovery, do whatever else is necessary to help **us** exercise those rights, and do nothing after an **accident** or **loss** to prejudice **our** rights.

When an insured person has been paid by **us** and also recovers from another, the amount recovered will be held by the insured person in trust for **us** and reimbursed to **us** to the extent of **our** payment. If **we** are not reimbursed, **we** may pursue recovery of that amount directly against that insured person.

If recovery is made by an insured person under this policy from a responsible party or that party's insurer without **our** written consent, the insured person's right to payment under any affected coverage will no longer exist.

These provisions will be applied in accordance with state law.

## BANKRUPTCY

The bankruptcy or insolvency of an insured person will not relieve **us** of any obligation under this policy.

## POLLUTION EXCLUSION

It is agreed that this insurance does not provide coverage for **you** or others for **bodily injury**, **property damage**, or financial loss, including the decrease of property value arising out of or resulting from the intentional or unintentional, actual, alleged, or threatened discharge, release, dispersal, seepage or escape of pollutants into or upon land, the atmosphere or any water course, body of water or underground water of any kind or any environmental damage or pollution.



Pollutants means any solid, liquid, gaseous, or thermal substance, irritant or contaminant including smoke, vapor, soot, fumes, acids, alkalis, toxic chemicals and waste. Waste includes, but is not limited to, materials to be recycled, reconditioned or reclaimed, known or unknown to contain pollutants or result in environmental damage.

It is agreed that this insurance does not provide coverage for any loss, cost, liability, or expense of any kind, including attorney's fees and costs and/or expense of litigation, arising out of any judicial, administrative or governmental order, direction or request that you test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize pollutants or environmental damage.

## MISSOURI PROPERTY AND CASUALTY INSURANCE GUARANTY ASSOCIATION COVERAGE LIMITATION

The Missouri Property and Casualty Insurance Guaranty Association will pay claims covered under the Missouri Property and Casualty Insurance Guaranty Act if we become insolvent. We are required to notify you that the following limitations apply:

1.  Claims covered by the Association do not include a claim by or against an insured of an insolvent insurer if that insured has a net worth of $25 million or more on the later of the end of the insured's most recent fiscal-year-or-December-thirty-first-of-the-year-next preceding the date the insurer becomes an insolvent insurer; provided that an insured's net worth on such a date shall be deemed to include the aggregate net worth of the insured and all of its affiliates as calculated on a consolidated basis.

2.  The Association will not:

    a.  be obligated to an insured or claimant in excess of the limits of liability of the policy from which the claim arises; or

    b.  return to the insured an unearned premium in excess of $25,000.

3.  There is no coverage for any amount that has been awarded as punitive or exemplary damages.

### NAMED OPERATOR - NON-OWNED VEHICLE COVERAGE

If you elect Named Operator – Non-Owned Vehicle Coverage, you agree with us that the policy is amended as follows:

1.  GENERAL DEFINITIONS

    a.  The general policy definition of "you" and "your" is deleted and replaced by the following:

        "You" and "your" mean the person shown as the Named Insured on the declarations page.

    b.  The general policy definition of "covered vehicle" is deleted and no coverage is provided with respect to a covered vehicle under this policy.

    c.  The general policy definition of "non-owned vehicle" is deleted and replaced by the following:

        i.   "Non-owned vehicle" means any vehicle that is not owned by you if this policy is certified as proof of financial responsibility.

        ii.  "Non-owned vehicle" means any vehicle that is not owned by you, a relative, or your spouse if this policy is not certified as proof of financial responsibility.

2.  PART I – LIABILITY TO OTHERS

    ADDITIONAL DEFINITION: When used in Part I, the definition of "insured person" and "insured persons" is deleted and replaced by the following:

    "Insured person" and "insured persons" mean:

    a.  you, when operating or using a vehicle, other than a vehicle owned by you or a relative, with the express or implied permission of the owner; and

    b.  any person or organization with respect only to vicarious liability for an accident arising out of the use of a non-owned vehicle by you with the express or implied permission of the owner.

3.  PART II – EXCESS MEDICAL EXPENSE COVERAGE

    ADDITIONAL DEFINITIONS: When used in Part II, the definition of "insured person" and "insured persons" is deleted and replaced by the following:

    "Insured person" and "insured persons" mean you:

    a.  while occupying any vehicle, other than a vehicle owned by you; or

    b.  when struck by a motor vehicle or trailer while not occupying a motor vehicle.

4.  PART III – UNINSURED MOTORIST COVERAGE

    a.  ADDITIONAL DEFINITIONS: When used in Part III, the Additional Definition of "insured person" and "insured persons" is deleted and replaced by the following:

        "Insured person" and "insured persons" mean you.

5.  PART VI – ACCIDENTAL DEATH BENEFIT

    ADDITIONAL DEFINITIONS: When used in Part VI, the definition of "insured person" and "insured persons" is deleted and replaced by the following:

    "Insured person" and "insured persons" mean you.

    "Covered vehicle" means "non-owned vehicle."

All other terms, limits, and provisions of this policy remain unchanged.

20

In witness whereof, we have caused this policy to be executed and attested by **our** President and Secretary.

Jon P. Diamond

President

Mark D. LeMaster

Secretary





**Safe Auto Insurance Company**
Corporate Office:
4 Easton Oval
Columbus, Ohio 43219
(614) 231-0200
1(800) SAFE-AUTO
1(800) 723-3288



FORM MO1010/1008



**COLUMBIA**
INSURANCE GROUP

Home Office
2102 White Gate Drive
P.O. Box 618
Columbia, Missouri 65205
(573) 474-6193

SMITH, RONALD W
430 W COOPER ST
TIPTON MO 65081

**TRUE & CERTIFIED**
BY

# YOUR INSURANCE POLICY

Coverage afforded by this policy is provided by the Company named in the Declarations

---

## *Pledge of Service and Satisfaction*

The protection you have in this policy has been personally designed for your insurance needs.

Behind the policy stands not only the reputation of your Agent, but the integrity of a strong and experienced Company-both pledged to serve you.

If you should have any questions regarding coverage afforded by this policy, claims of any kind or questions concerning your other insurance needs, do not hesitate to call your Agent immediately.

We appreciate the confidence you have placed in us.

THIS POLICY JACKET WITH THE POLICY FORMS, DECLARATIONS PAGE AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETES THE POLICY.

The following applies only if this policy is issued by one of the mutual insurance companies named below:

MEMBERSHIP AND VOTING NOTICE: By virtue of this policy, the Insured is a member of the issuing company named in the Declarations and is entitled to vote either in person or by proxy at any and all meetings of members of said Company.

The annual meetings for the Columbia Mutual Insurance Company are held at its Home Office at Columbia, Missouri on the first Friday after the first Saturday in March at 10:00 A.M.

The annual meetings for the Citizens Mutual Insurance Company are held at its Home Office at Columbia, Missouri on the first Friday after the first Saturday in March at 11:00 A.M, or at such other place as may be designated by the Board of Directors.

PARTICIPATION CLAUSE WITHOUT CONTINGENT LIABILITY: No Contingent Liability: This policy is nonassessable. The policyholder is a member of the company and shall participate, to the extent and upon the conditions fixed and determined by the Board of Directors in accordance with the provisions of law, in the distribution of dividends so fixed and determined.

In Witness Whereof, the Company has executed and attested these presents; but this policy shall not be valid unless countersigned by the duly authorized representative of this Company.

*Secretary*          *President*



# COLUMBIA
## INSURANCE GROUP

2102 White Gate Drive
PO Box 618
Columbia MO 65205
(800) 877-3579

**PERSONAL AUTO
POLICY DECLARATIONS**

COLUMBIA MUTUAL INSURANCE CO

POLICY NUMBER    AUMO147957
Renewal of     AUMO147957

Named Insured and Mailing Address:
SMITH, RONALD W
430 W COOPER ST
TIPTON MO 65081

Agent and Mailing Address: 11259-
BLANKENSHIP INSURANCE AGENCY
KENT INSURANCE LLC D/B/A
1021 W BUCHANAN ST STE 16
PO BOX 15
CALIFORNIA MO 65018
573-796-2360

Policy Period: From 02/01/2012 to 08/01/2012 at 12:01 a.m. Standard Time at the mailing address shown above.
IN RETURN FOR THE PAYMENT OF THE PREMIUM AND SUBJECT TO ALL THE TERMS OF THIS POLICY,
WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

---

**TOTAL SEMI-ANNUAL POLICY PREMIUM**     **$124**

---

**VEHICLE(S) SUMMARY:**
VEH 001:   2000 MITS MIRAGE     SEDAN 4D     UsageWork     Driver:   001   Premium:    $124

**DRIVER(S) SUMMARY:**
DRIVER 001:    RONALD W SMITH      Type: P   Birthdate:07/04/1952 License Number: ON FILE
DRIVER 002:    EMMA SMITH      Type: N   Birthdate:07/25/1955 License Number: NEVER BEEN LIC

**THE FOLLOWING FORMS AND ENDORSEMENTS APPLY TO YOUR POLICY:**

| | | |
|---|---|---|
| IL0001 | (11/77) | PUNITIVE OR EXEMPLARY DMG EXCL |
| IL165MO | (03/07) | CONCEALMENT OR FRAUD CONDITION |
| IPJ305 | (10/09) | POLICY JACKET |
| PA230 | (07/91) | AMENDMENT OF POLICY PROVISION |
| PP0001 | (01/05) | PERSONAL AUTO POLICY |
| PP0163 | (09/10) | AMENDMENT - POLICY PROVISIONS |
| PP1301 | (12/99) | COVG FOR DMG TO YOUR AUTO EXCL |
| PP1422 | (09/10) | MO-UNDERINSURED MOTORIST COVG |

---

Please notify your agent if there are any changes needed to the information shown on this declarations page.

**TRUE & CERTIFIED**

BY _[signature]_

---

Payment Plan: D Case 2:15-cv-04124-NKL    Document 6-1    Filed 12/28/15    Page 55 of 82 2012
Distribution Code:D                              Operator:   OPER
PCD-5 (10-08)                       Insured Copy                   Renewal

POLICY NUMBER  AUMO147957          Renewal of      AUMO147957

Named Insured: SMITH, RONALD W

Policy Period: From 02/01/2012 to 08/01/2012 at 12:01 a.m. Standard Time at the mailing address shown above.

---

YOUR INSURED VEHICLE: All vehicles are garaged at the mailing address shown unless otherwise stated below.

| VEH | YEAR | MAKE/MODEL | | VIN | USE | SYM | DRIVER | TERR | CLASS |
|------|------|-----------|---|-----|-----|-----|--------|------|-------|
| 001 | 2000 MITS MIRAGE | SEDAN 4D | JA3AY26C7YU017536 | | Work | 17/17 | 001 | 049 | 885310 |

| COVERAGE VEH  001 | LIMIT | PREMIUM |
|-------------------|-------|---------|
| BODILY INJURY LIABILITY | $50,000 EACH PERSON/$100,000 EACH ACCIDENT | $55 |
| PROPERTY DAMAGE LIABILITY | $50,000 EACH ACCIDENT | $45 |
| UNINSURED MOTORISTS - BI ONLY | $50,000 EACH PERSON/$100,000 EACH ACCIDENT | $9 |
| UNDERINSURED MOT - BI ONLY | $50,000 EACH PERSON/$100,000 EACH ACCIDENT | $7 |
| MEDICAL PAYMENTS | $1000 EACH PERSON | $8 |

DISCOUNTS VEH  001
CROSS CREDIT                    PASSIVE RESTRAINT
HOME OWNERSHIP DISCOUNT

| TOTAL PREMIUM VEHICLE    001 | $124 |
|-----|-----|

POLICY NUMBER   AUMO147957          Renewal of      AUMO147957

Named Insured: SMITH, RONALD W

Policy Period: From 02/01/2012 to 08/01/2012 at 12:01 a.m. Standard Time at the mailing address shown above.

TOTAL POLICY PREMIUM ALL VEHICLES                        $124

Countersigned by _____
                              Authorized Agent

THESE DECLARATIONS, TOGETHER WITH THE COVERAGE FORM(S), COMMON FORM(S), COMMON POLICY CONDITIONS AND
FORMS, AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.

Payment Plan: DIRECT BILL   2-PAY OPTION 50/50                          Date Prepared: December 7, 2012
Distribution Code: 8                                                    Operator: OPER
PCD-5 (10-08)                          Insured Copy                     Renewal

Case 2:15-cv-04224-NKL   Document 6-1   Filed 12/28/15   Page 57 of 82

# PUNITIVE OR EXEMPLARY DAMAGES EXCLUSION

Regardless of any other provision of this policy, this policy does not apply to punitive or exemplary damages. (Definition: "punitive or exemplary damages" means damages which may be imposed to punish a wrongdoer or to deter others from similar conduct.)

TRUE & CERTIFIED

BY *[signature]*

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# AMENDMENT OF POLICY PROVISIONS:
## DUTIES AFTER AN ACCIDENT OR LOSS

This endorsement modifies insurance provided under the following:

PERSONAL AUTO POLICY

PART E – DUTIES AFTER AN ACCIDENT OR LOSS, Paragraph C. is amended by the addition of the following:

3. Report a "phantom vehicle" accident to the police within twenty-four (24) hours and to us within thirty (30) days. "Phantom vehicle" means a vehicle with which there was no physical contact and whose owner or operator cannot be identified.

TRUE & CERTIFIED

BY

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## AMENDMENT OF POLICY PROVISIONS – MISSOURI

**I.  Definitions**

The following is added to the Definitions Section:

Throughout the policy, "minimum limits" refers to the following limits of liability, as required by Missouri law, to be provided under a policy of automobile liability insurance:

1.  $25,000 for each person, subject to $50,000 for each accident, with respect to "bodily injury"; and

2.  $10,000 for each accident with respect to "property damage".

Definition K. is replaced by the following:

**K.  "Newly acquired auto":**

1.  "Newly acquired auto" means any of the following types of vehicles you become the owner of during the policy period:

    a.  A private passenger auto; or

    b.  A pickup or van, for which no other insurance policy provides coverage, that:

        (1) Has a Gross Vehicle Weight Rating of 10,000 lbs. or less; and

        (2) Is not used for the delivery or transportation of goods and materials unless such use is:

            (a) Incidental to your "business" of installing, maintaining or repairing furnishings or equipment; or

            (b) For farming or ranching.

2.  Coverage for a "newly acquired auto" is provided as described below. If you ask us to insure a "newly acquired auto" after a specified time period described below has elapsed, any coverage we provide for a "newly acquired auto" will begin at the time you request the coverage.

    a.  For any coverage provided in this policy except Coverage For Damage To Your Auto, a "newly acquired auto" will have the broadest coverage we now provide for any vehicle shown in the Declarations. Coverage begins on the date you become the owner. However, for this coverage to apply to a "newly acquired auto" which is in addition to any vehicle shown in the Declarations, you must ask us to insure it within 30 days after you become the owner.

    If a "newly acquired auto" replaces a vehicle shown in the Declarations, coverage is provided for this vehicle without your having to ask us to insure it.

    b.  Collision Coverage for a "newly acquired auto" begins on the date you become the owner. However, for this coverage to apply, you must ask us to insure it within:

        (1) 30 days after you become the owner if the Declarations indicates that Collision Coverage applies to at least one auto. In this case, the "newly acquired auto" will have the broadest coverage we now provide for any auto shown in the Declarations.

        (2) Four days after you become the owner if the Declarations does not indicate that Collision Coverage applies to at least one auto. If you comply with the four-day requirement and a loss occurred before you asked us to insure the "newly acquired auto", a Collision deductible of $500 will apply.

**TRUE & CERTIFIED**

BY _(signature)_

Includes copyrighted material of Insurance Services Office, Inc., with its permission. Uniform Forms™

c. Other Than Collision Coverage for a "newly acquired auto" begins on the date you become the owner. However, for this coverage to apply, you must ask us to insure it within:

(1) 30 days after you become the owner if the Declarations indicates that Other Than Collision Coverage applies to at least one auto. In this case, the "newly acquired auto" will have the broadest coverage we now provide for any auto shown in the Declarations.

(2) Four days after you become the owner if the Declarations does not indicate that Other Than Collision Coverage applies to at least one auto. If you comply with the four-day requirement and a loss occurred before you asked us to insure the "newly acquired auto", an Other Than Collision deductible of $500 will apply.

## II. Part A – Liability Coverage

Part A is amended as follows:

A. The Insuring Agreement is replaced by the following:

**Insuring Agreement**

We will pay damages for "bodily injury" or "property damage" for which any "insured" becomes legally responsible because of an auto accident. We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. In addition to our limit of liability, we will pay all defense costs we incur. Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted by payment of judgments or settlements. We have no duty to defend any suit or settle any claim for "bodily injury" or "property damage" not covered under this policy.

"Insured" as used in this Part means:

1. You for the ownership, maintenance or use of any auto or "trailer".

2. Any "family member":

a. Who does not own an auto, for the maintenance or use of any auto or "trailer".

b. Who owns an auto, but only for the use of "your covered auto".

3. Any person using "your covered auto".

4. For "your covered auto", any person or organization but only with respect to legal responsibility for acts or omissions of a person for whom coverage is afforded under this Part.

5. For any auto or "trailer", other than "your covered auto", any other person or organization but only with respect to legal responsibility for acts or omissions of you or any "family member" for whom coverage is afforded under this Part. This Provision (5.) applies only if the person or organization does not own or hire the auto or "trailer".

B. Paragraph 6. is added to the Supplementary Payments Provision:

**Supplementary Payments**

We will pay on behalf of an "insured":

6. Prejudgment interest awarded against the "insured" on that part of the judgment we pay. If we make an offer to pay our limit of liability, we will not pay any prejudgment interest based on that period of time after the offer.

C. Exclusion A.3. is replaced by the following:

We do not provide Liability Coverage for any "insured":

3. For "property damage" to property:

a. Rented to;

b. Used by; or

c. In the care of;

that "insured".

This Exclusion (A.3.) does not apply to "property damage" to:

(1) A residence or private garage; or

(2) Any motor vehicle loaned to you, with or without consideration, by a person, firm or corporation engaged in the "business" of selling, repairing or servicing motor vehicles while such vehicle is being used by any "insured":

(a) For demonstration purposes; or

(b) As a temporary substitute for any vehicle you own which is out of normal use because of its breakdown, repair or servicing.

 © Insurance Services Office, Inc., 2010

D. The following exclusion is added:

We do not provide Liability Coverage for any "insured" for "bodily injury" to you or any "family member" to the extent that the limits of liability for this coverage exceed the minimum limits of liability required by the Missouri Financial Responsibility Law.

E. The Other Insurance Provision is replaced by the following:

Other Insurance

If there is other applicable liability insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide for a vehicle you do not own, including any vehicle while used as a temporary substitute for "your covered auto", shall be excess over any other collectible insurance unless such vehicle is loaned to you, with or without consideration, by a person, firm or corporation engaged in the "business" of selling, repairing or servicing motor vehicles and such vehicle is used by any "insured":

1. For demonstration purposes; or

2. As a temporary substitute for a vehicle you own which is out of normal use because of its breakdown, repair or servicing.

## III. Part B – Medical Payments Coverage

Paragraph B. of the Limit Of Liability Provision of Part B is replaced by the following:

Limit Of Liability

No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and:

1. Part A of this policy; or

2. Any Underinsured Motorists Coverage provided by this policy.

## IV. Part D – Coverage For Damage To Your Auto

Part D is amended as follows:

A. Paragraph C. of the Insuring Agreement is replaced by the following:

"Non-owned auto" means:

1. Any private passenger auto, pickup, van or "trailer" not owned by or furnished or available for the regular use of you or any "family member" while in the custody of or being operated by you or any "family member"; or

2. Any auto or "trailer" you do not own while used as a temporary substitute for "your covered auto" which is out of normal use because of its:

a. Breakdown;

b. Repair;

c. Servicing;

d. Loss; or

e. Destruction.

However, "non-owned auto" does not include any vehicle loaned to you, with or without consideration, by a person, firm or corporation engaged in the "business" of selling, repairing or servicing motor vehicles while such vehicle is being used by any "insured":

1. For demonstration purposes; or

2. As a temporary substitute for a vehicle you own which is out of normal use because of its:

a. Breakdown;

b. Repair; or

c. Servicing.

B. Exclusion 7. is replaced by the following:

We will not pay for:

7. Loss to:

a. A "trailer", camper body, or motor home, which is not shown in the Declarations; or

b. Facilities or equipment used with such "trailer", camper body or motor home. Facilities or equipment include but are not limited to:

(1) Cooking, dining, plumbing or refrigeration facilities;

(2) Awnings or cabanas; or

(3) Any other facilities or equipment used with a "trailer", camper body or motor home.

This Exclusion (7.) does not apply to a:

(1) "Trailer", and its facilities or equipment, which you do not own; or

(2) "Trailer", camper body or the facilities or equipment in or attached to the "trailer" or camper body, which you:

(a) Acquire during the policy period; and

(b) Ask us to insure within 30 days after you become the owner.

Case 2:15-cv-04224-NKL Document 6-1 Filed 12/28/15 Page 62 of 82

C. The Appraisal Provision is replaced by the following:

Appraisal

A. If we and you do not agree on the amount of loss, then an appraisal of the loss may be made. However, both parties must agree to the appraisal. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. The appraisers will state separately the actual cash value and the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

1. Pay its chosen appraiser; and

2. Bear the expenses of the appraisal and umpire equally.

B. We do not waive any of our rights under this policy by agreeing to an appraisal.

## V. Part F – General Provisions

Part F is amended as follows:

A. Paragraph A. of the Our Right To Recover Payment Provision does not apply to Part B.

B. The Termination Provision is replaced by the following:

Termination

Cancellation

This policy may be cancelled during the policy period as follows:

1. The named insured shown in the Declarations may cancel by:

   a. Returning this policy to us; or

   b. Giving us advance written notice of the date cancellation is to take effect.

2. We may cancel by mailing to the named insured shown in the Declarations at the address last known by us:

   a. At least 10 days notice:

      (1) If cancellation is for nonpayment of premium; or

      (2) If notice is mailed during the first 60 days this policy is in effect and this is not a renewal or continuation policy; or

   b. At least 30 days notice by United States Post Office certificate of mailing in all other cases.

3. After this policy is in effect for 60 days, or if this is a renewal or continuation policy, we will cancel only:

   a. For nonpayment of premium; or

   b. If your driver's license has been suspended or revoked. This must have occurred:

      (1) During the policy period; or

      (2) Since the last anniversary of the original effective date if the policy period is other than one year.

   However, in the event more than one person is a named insured shown in the Declarations and only one named person's driver's license has been suspended or revoked we:

   a. May not cancel this policy; but

   b. May issue an exclusion providing that coverage will not be afforded to that named person under the terms of this policy while that person is operating "your covered auto" during any period of suspension or revocation.

Nonrenewal

If we decide not to renew or continue this policy we will mail notice by United States Post Office certificate of mailing to the named insured shown in the Declarations at the address last known by us. Notice will be mailed at least 30 days before the end of the policy period. Subject to this notice requirement, if the policy period is:

1. Less than six months, we will have the right not to renew or continue this policy every six months, beginning six months after its original effective date.

2. Six months or longer, but less than one year, we will have the right not to renew or continue this policy at the end of the policy period.

3. One year or longer, we will have the right not to renew or continue this policy at each anniversary of its original effective date.

**Automatic Termination**

If we offer to renew or continue and you or your representative do not accept, this policy will automatically terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer.

© Insurance Services Office, Inc., 2010
Case 2:15-cv-04224-NKL   Document 6-1   Filed 12/28/15   Page 63 of 82

If you obtain other insurance on "your covered auto", any similar insurance provided by this policy will terminate as to that auto on the effective date of the other insurance.

### Other Termination Provisions

1. Proof of mailing of any notice shall be sufficient proof of notice.
2. If this policy is cancelled, you may be entitled to a premium refund. If so, we will send you the refund. The premium refund, if any, will be computed according to our manuals. However, making or offering to make the refund is not a condition of cancellation.
3. The effective date of cancellation stated in the notice shall become the end of the policy period.

## VI. Snowmobile Endorsement

If the Snowmobile Endorsement is attached to this policy, the provisions of the Snowmobile Endorsement apply except as follows:

Paragraph D. of the Definitions Section is replaced by the following:

D. The term "your covered auto" is replaced by the term "your covered snowmobile". "Your covered snowmobile" means:

1. Any "snowmobile" shown in the Schedule or in the Declarations.
2. Any "snowmobile" on the date you become the owner. This provision applies only if you:
   a. Acquire the "snowmobile" during the policy period; and
   b. Ask us to insure it within 30 days after you become the owner.
3. Any "snowmobile" you do not own while used as a temporary substitute for any other "snowmobile" described in this definition which is out of normal use because of its:
   a. Breakdown;
   b. Repair;
   c. Servicing;
   d. Loss; or
   e. Destruction.

   This Provision (3.) does not apply to Coverage For Damage To Your Auto.

## VII. Named Non-owner Coverage Endorsement

If the Named Non-owner Coverage Endorsement is attached to this policy, the provisions

of the Named Non-owner Coverage Endorsement apply except as follows:

Paragraph D. of the Definitions Section is replaced by the following:

D. The definition of "newly acquired auto" is replaced by the following:

"Newly acquired auto" means any of the following types of vehicles on the date you become the owner:

a. A private passenger auto; or
b. A pickup or van that:
   (1) Has a Gross Vehicle Weight Rating of 10,000 lbs. or less; and
   (2) Is not used for the delivery or transportation of goods and materials unless such use is:
      (a) Incidental to your "business" of maintaining or repairing furnishings or equipment; or
      (b) For farming or ranching.

1. If you acquire the vehicle during the policy period; and
2. For 30 days after you become the owner.

This insurance does not apply if other insurance applies with respect to newly acquired vehicles.

## VIII. Missouri Property And Casualty Insurance Guaranty Association Coverage Limitations

Subject to the provisions of the Missouri Property and Casualty Insurance Guaranty Association Act (to be referred to as the Act), if we are a member of the Missouri Property and Casualty Insurance Guaranty Association (to be referred to as the Association) the Association will pay claims covered under the Act if we become insolvent.

Payments made by the Association for covered claims will include only that amount of each claim which is less than $300,000. However, the Association will not pay an amount in excess of the applicable limit of liability of the policy from which a claim arises.

The claims covered by the Association are subject to the limitations of coverage provided by the Act. These limitations have no effect on the coverage we will provide under this policy.

This endorsement must be attached to the Change Endorsement when issued after the policy is written.

Case 2:15-cv-04224-NKL   Document 6-1   Filed 12/28/15   Page 64 of 82

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## COVERAGE FOR DAMAGE TO YOUR AUTO EXCLUSION ENDORSEMENT

With respect to the coverage provided by this endorsement, the provisions of the policy apply unless modified by the endorsement.

**I.  Definitions**

The following definition is added:

"Diminution in value" means the actual or perceived loss in market or resale value which results from a direct and accidental loss.

**II.  Part D - Coverage For Damage To Your Auto**

The following exclusion is added:

We will not pay for:

Loss to "your covered auto" or any "non-owned auto" due to "diminution in value".

This endorsement must be attached to the Change Endorsement when issued after the policy is written.

TRUE & CERTIFIED

BY *[signature]*

Copyright, Insurance Services Office, Inc., 1999

Case 2:15-cv-04224-NKL   Document 6-1   Filed 12/23/15   Page 65 of 82

TRUE & CERTIFIED

BY *[signature]*

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## UNDERINSURED MOTORISTS COVERAGE – MISSOURI

### SCHEDULE

| Limit Of Liability | Premium | | |
|---|---|---|---|
| | Auto 1 | Auto 2 | Auto 3 |
| $          Each Person | $ | $ | $ |
| $          Each Accident | | | |

With respect to the coverage provided by this endorsement, the provisions of the policy apply unless modified by the endorsement.

**Insuring Agreement**

A. We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "underinsured motor vehicle" because of "bodily injury":

1. Sustained by an "insured"; and

2. Caused by an accident.

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the "underinsured motor vehicle".

We will pay under this coverage only if 1. or 2. below applies:

1. The limits of liability under any bodily injury liability bonds or policies applicable to the "underinsured motor vehicle" have been exhausted by payment of judgments or settlements; or

2. A tentative settlement has been made between an "insured" and the insurer of the "underinsured motor vehicle" and we:

   a. Have been given prompt written notice of such tentative settlement; and

   b. Advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification.

B. "Insured" as used in this endorsement means:

1. You or any "family member".

2. Any other person "occupying" "your covered auto".

3. Any person for damages that person is entitled to recover because of "bodily injury" to which this coverage applies sustained by a person described in 1. or 2. above.

C. "Underinsured motor vehicle" means a land motor vehicle or trailer of any type to which a bodily injury liability bond or policy applies at the time of the accident but the amount paid for "bodily injury" under that bond or policy to an "insured" is not enough to pay the full amount the "insured" is legally entitled to recover as damages.

However, "underinsured motor vehicle" does not include any vehicle or equipment:

1. To which a bodily injury liability bond or policy applies at the time of the accident but its limit for bodily injury liability is less than the minimum limit for bodily injury liability specified by the financial responsibility law of Missouri.

2. Owned by or furnished or available for the regular use of you or any "family member".

3. Owned by any governmental unit or agency.

4. Operated on rails or crawler treads.

5. Designed mainly for use off public roads while not upon public roads.

6. While located for use as a residence or premises.

7. Owned or operated by a person qualifying as a self-insurer under any applicable motor vehicle law.

8. To which a bodily injury liability bond or policy applies at the time of the accident but the bonding or insuring company:

   a. Denies coverage; or

   b. Is or becomes insolvent.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.™

## Exclusions

A. We do not provide Underinsured Motorists Coverage for "bodily injury" sustained:

1. By an "insured" while "occupying", or when struck by, any motor vehicle owned by that "insured" which is not insured for this coverage under this policy. This includes a trailer of any type used with that vehicle.

2. By any "family member" while "occupying", or when struck by, any motor vehicle you own which is insured for this coverage on a primary basis under any other policy.

B. We do not provide Underinsured Motorists Coverage for "bodily injury" sustained by any "insured":

1. While "occupying" "your covered auto" when it is being used as a public or livery conveyance. This Exclusion (B.1.) does not apply to a share-the-expense car pool.

2. Using a vehicle without a reasonable belief that that "insured" is entitled to do so. This Exclusion (B.2.) does not apply to a "family member" using "your covered auto" which is owned by you.

C. This coverage shall not apply directly or indirectly to benefit any insurer or self-insurer under any of the following or similar law:

1. Workers' compensation law; or

2. Disability benefits law.

D. We do not provide Underinsured Motorists Coverage for punitive or exemplary damages.

## Limit Of Liability

A. The Limit Of Liability shown in the Schedule or in the Declarations for each person for Underinsured Motorists Coverage is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one accident. Subject to this limit for each person, the Limit Of Liability shown in the Schedule or in the Declarations for each accident for Underinsured Motorists Coverage is our maximum limit of liability for all damages for "bodily injury" resulting from any one accident.

This is the most we will pay regardless of the number of:

1. "Insureds";

2. Claims made;

3. Vehicles or premiums shown in the Schedule or in the Declarations; or

4. Vehicles involved in the accident.

B. No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and Part A, Part B or Part C of this policy.

C. We will not make a duplicate payment under this coverage for any element of loss for which payment has been made by or on behalf of persons or organizations who may be legally responsible.

D. We will not pay for any element of loss if a person is entitled to receive payment for the same element of loss under any of the following or similar law:

1. Workers' compensation law; or

2. Disability benefits law.

## Other Insurance

If there is other applicable insurance available under one or more policies or provisions of coverage that is similar to the insurance provided by this endorsement:

1. Any recovery for damages under all such policies or provisions of coverage may equal but not exceed the highest applicable limit for any one vehicle under any insurance providing coverage on either a primary or excess basis.

2. Subject to all other provisions of this policy, including but not limited to:

   a. Exclusion A. of this endorsement;

   b. Paragraph A. of the Limit Of Liability provision of this endorsement;

   c. Paragraph 1. of the Other Insurance provision of this endorsement; and

   d. The Two Or More Auto Policies provision of this policy;

   any insurance we provide with respect to a vehicle you do not own, including any vehicle while used as a temporary substitute for "your covered auto", shall be excess over any collectible insurance providing such coverage on a primary basis.

3. If the coverage under this policy is provided:

   a. On a primary basis, we will pay only our share of the loss that must be paid under insurance providing coverage on a primary basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage provided on a primary basis.

© Insurance Services Office, Inc., 2010
Case 2:15-cv-04224-NKL   Document 6-1   Filed 12/28/15   Page 67 of 82

b. On an excess basis, we will pay only our share of the loss that must be paid under insurance providing coverage on an excess basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage provided on an excess basis.

## Arbitration

A. If we and an "insured" do not agree:

1. Whether that "insured" is legally entitled to recover damages; or

2. As to the amount of damages which are recoverable by that "insured";

from the owner or operator of an "underinsured motor vehicle", then the matter may be arbitrated. However, disputes concerning coverage under this endorsement may not be arbitrated.

Both parties must agree to arbitration. If so agreed, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction.

B. Each party will:

1. Pay the expenses it incurs; and

2. Bear the expenses of the third arbitrator equally.

C. Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to procedure and evidence will apply. A decision agreed to by at least two of the arbitrators will be binding as to:

1. Whether the "insured" is legally entitled to recover damages; and

2. The amount of damages.

## Additional Duties

A person seeking coverage under this endorsement must also promptly:

1. Send us copies of the legal papers if a suit is brought; and

2. Notify us in writing of a tentative settlement between the "insured" and the insurer of the "underinsured motor vehicle" and allow us 30 days to advance payment to that "insured" in an amount equal to the tentative settlement to preserve our rights against the insurer, owner or operator of such "underinsured motor vehicle".

## General Provisions

The following is added to the Our Right To Recover Payment Provision in Part F:

Our Right To Recover Payment

Our rights do not apply under Paragraph A. with respect to Underinsured Motorists Coverage if we:

1. Have been given prompt written notice of a tentative settlement between an "insured" and the insurer of an "underinsured motor vehicle"; and

2. Fail to advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification.

If we advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification:

1. That payment will be separate from any amount the "insured" is entitled to recover under the provisions of Underinsured Motorists Coverage; and

2. We also have a right to recover the advanced payment.

This endorsement must be attached to the Change Endorsement when issued after the policy is written.


TRUE & CERTIFIED
BY

# PERSONAL AUTO POLICY

## AGREEMENT

In return for payment of the premium and subject to all the terms of this policy, we agree with you as follows:

## DEFINITIONS

A. Throughout this policy, "you" and "your" refer to:

1. The "named insured" shown in the Declarations; and

2. The spouse if a resident of the same household.

If the spouse ceases to be a resident of the same household during the policy period or prior to the inception of this policy, the spouse will be considered "you" and "your" under this policy but only until the earlier of:

1. The end of 90 days following the spouse's change of residency;

2. The effective date of another policy listing the spouse as a named insured; or

3. The end of the policy period.

B. "We", "us" and "our" refer to the Company providing this insurance.

C. For purposes of this policy, a private passenger type auto, pickup or van shall be deemed to be owned by a person if leased:

1. Under a written agreement to that person; and

2. For a continuous period of at least 6 months.

Other words and phrases are defined. They are in quotation marks when used.

D. "Bodily injury" means bodily harm, sickness or disease, including death that results.

E. "Business" includes trade, profession or occupation.

F. "Family member" means a person related to you by blood, marriage or adoption who is a resident of your household. This includes a ward or foster child.

G. "Occupying" means:

1. In;

2. Upon; or

3. Getting in, on, out or off.

H. "Property damage" means physical injury to, destruction of or loss of use of tangible property.

I. "Trailer" means a vehicle designed to be pulled by a:

1. Private passenger auto; or

2. Pickup or van.

It also means a farm wagon or farm implement while towed by a vehicle listed in 1. or 2. above.

J. "Your covered auto" means:

1. Any vehicle shown in the Declarations.

2. A "newly acquired auto".

3. Any "trailer" you own.

4. Any auto or "trailer" you do not own while used as a temporary substitute for any other vehicle described in this definition which is out of normal use because of its:

a. Breakdown;

b. Repair;

c. Servicing;

d. Loss; or

e. Destruction.

This Provision (J.4.) does not apply to Coverage For Damage To Your Auto.

K. "Newly acquired auto":

1. "Newly acquired auto" means any of the following types of vehicles you become the owner of during the policy period:

a. A private passenger auto; or

b. A pickup or van, for which no other insurance policy provides coverage, that:

(1) Has a Gross Vehicle Weight Rating of 10,000 lbs. or less; and

(2) Is not used for the delivery or transportation of goods and materials unless such use is:

(a) Incidental to your "business" of installing, maintaining or repairing furnishings or equipment; or

Case 2:15-cv-04224-NKL   Document 6-1   Filed 12/28/15   Page 69 of 82

(b) For farming or ranching.

2. Coverage for a "newly acquired auto" is provided as described below. If you ask us to insure a "newly acquired auto" after a specified time period described below has elapsed, any coverage we provide for a "newly acquired auto" will begin at the time you request the coverage.

   a. For any coverage provided in this policy except Coverage For Damage To Your Auto, a "newly acquired auto" will have the broadest coverage we now provide for any vehicle shown in the Declarations. Coverage begins on the date you become the owner. However, for this coverage to apply to a "newly acquired auto" which is in addition to any vehicle shown in the Declarations, you must ask us to insure it within 14 days after you become the owner.

   If a "newly acquired auto" replaces a vehicle shown in the Declarations, coverage is provided for this vehicle without your having to ask us to insure it.

   b. Collision Coverage for a "newly acquired auto" begins on the date you become the owner. However, for this coverage to apply, you must ask us to insure it within:

      (1) 14 days after you become the owner if the Declarations indicate that Collision Coverage applies to at least one auto. In this case, the "newly acquired auto" will have the broadest coverage we now provide for any auto shown in the Declarations.

      (2) Four days after you become the owner if the Declarations do not indicate that Collision Coverage applies to at least one auto. If you comply with the 4 day requirement and a loss occurred before you asked us to insure the "newly acquired auto", a Collision deductible of $500 will apply.

   c. Other Than Collision Coverage for a "newly acquired auto" begins on the date you become the owner. However, for this coverage to apply, you must ask us to insure it within:

      (1) 14 days after you become the owner if the Declarations indicate that Other Than Collision Coverage applies to at least one auto. In this case, the "newly acquired auto" will have the broadest coverage we now provide for any auto shown in the Declarations.

      (2) Four days after you become the owner if the Declarations do not indicate that Other Than Collision Coverage applies to at least one auto. If you comply with the 4 day requirement and a loss occurred before you asked us to insure the "newly acquired auto", an Other Than Collision deductible of $500 will apply.

---

## PART A - LIABILITY COVERAGE

INSURING AGREEMENT

A. We will pay damages for "bodily injury" or "property damage" for which any "insured" becomes legally responsible because of an auto accident. Damages include prejudgment interest awarded against the "insured". We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. In addition to our limit of liability, we will pay all defense costs we incur. Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted by payment of judgments or settlements. We have no duty to defend any suit or settle any claim for "bodily injury" or "property damage" not covered under this policy.

B. "Insured" as used in this Part means:

   1. You or any "family member" for the ownership, maintenance or use of any auto or "trailer".

   2. Any person using "your covered auto".

   3. For "your covered auto", any person or organization but only with respect to legal responsibility for acts or omissions of a person for whom coverage is afforded under this Part.

   4. For any auto or "trailer", other than "your covered auto", any other person or organization but only with respect to legal responsibility for acts or omissions of you or any "family member" for whom coverage is afforded under this Part. This Provision (B.4.) applies only if the person or organization does not own or hire the auto or "trailer".

SUPPLEMENTARY PAYMENTS

We will pay on behalf of an "insured":

   1. Up to $250 for the cost of bail bonds required because of an accident, including re-

Copyright, ISO Properties, Inc., 2003
PP 00 01 01 05

lated traffic law violations. The accident must result in "bodily injury" or "property damage" covered under this policy.

2. Premiums on appeal bonds and bonds to release attachments in any suit we defend.

3. Interest accruing after a judgment is entered in any suit we defend. Our duty to pay interest ends when we offer to pay that part of the judgment which does not exceed our limit of liability for this coverage.

4. Up to $200 a day for loss of earnings, but not other income, because of attendance at hearings or trials at our request.

5. Other reasonable expenses incurred at our request.

These payments will not reduce the limit of liability.

EXCLUSIONS

A. We do not provide Liability Coverage for any "insured":

1. Who intentionally causes "bodily injury" or "property damage".

2. For "property damage" to property owned or being transported by that "insured".

3. For "property damage" to property:

   a. Rented to;

   b. Used by; or

   c. In the care of;

   that "insured".

   This Exclusion (A.3.) does not apply to "property damage" to a residence or private garage.

4. For "bodily injury" to an employee of that "insured" during the course of employment. This Exclusion (A.4.) does not apply to "bodily injury" to a domestic employee unless workers' compensation benefits are required or available for that domestic employee.

5. For that "insured's" liability arising out of the ownership or operation of a vehicle while it is being used as a public or livery conveyance. This Exclusion (A.5.) does not apply to a share-the-expense car pool.

6. While employed or otherwise engaged in the "business" of:

   a. Selling;

   b. Repairing;

   c. Servicing;

   d. Storing; or

   e. Parking;

vehicles designed for use mainly on public highways. This includes road testing and delivery. This Exclusion (A.6.) does not apply to the ownership, maintenance or use of "your covered auto" by:

   a. You;

   b. Any "family member"; or

   c. Any partner, agent or employee of you or any "family member".

7. Maintaining or using any vehicle while that "insured" is employed or otherwise engaged in any "business" (other than farming or ranching) not described in Exclusion A.6.

   This Exclusion (A.7.) does not apply to the maintenance or use of a:

   a. Private passenger auto;

   b. Pickup or van; or

   c. "Trailer" used with a vehicle described in a. or b. above.

8. Using a vehicle without a reasonable belief that that "insured" is entitled to do so. This Exclusion (A.8.) does not apply to a "family member" using "your covered auto" which is owned by you.

9. For "bodily injury" or "property damage" for which that "insured":

   a. Is an insured under a nuclear energy liability policy; or

   b. Would be an insured under a nuclear energy liability policy but for its termination upon exhaustion of its limit of liability.

   A nuclear energy liability policy is a policy issued by any of the following or their successors:

   a. Nuclear Energy Liability Insurance Association;

   b. Mutual Atomic Energy Liability Underwriters; or

   c. Nuclear Insurance Association of Canada.

B. We do not provide Liability Coverage for the ownership, maintenance or use of:

1. Any vehicle which:

   a. Has fewer than four wheels; or

   b. Is designed mainly for use off public roads.

   This Exclusion (B.1.) does not apply:

   a. While such vehicle is being used by an "insured" in a medical emergency;

   b. To any "trailer"; or

   c. To any non-owned golf cart.

Copyright, ISO Properties, Inc., 2003
Case 2:15-cv-04224-NKL   Document 6-1   Filed 12/28/15   Page 71 of 82

2. Any vehicle, other than "your covered auto", which is:

a. Owned by you; or

b. Furnished or available for your regular use.

3. Any vehicle, other than "your covered auto", which is:

a. Owned by any "family member"; or

b. Furnished or available for the regular use of any "family member".

However, this Exclusion (B.3.) does not apply to you while you are maintaining or "occupying" any vehicle which is:

a. Owned by a "family member"; or

b. Furnished or available for the regular use of a "family member".

4. Any vehicle, located inside a facility designed for racing, for the purpose of:

a. Competing in; or

b. Practicing or preparing for;

any prearranged or organized racing or speed contest.

## LIMIT OF LIABILITY

A. The limit of liability shown in the Declarations for each person for Bodily Injury Liability is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one auto accident. Subject to this limit for each person, the limit of liability shown in the Declarations for each accident for Bodily Injury Liability is our maximum limit of liability for all damages for "bodily injury" resulting from any one auto accident.

The limit of liability shown in the Declarations for each accident for Property Damage Liability is our maximum limit of liability for all "property damage" resulting from any one auto accident.

This is the most we will pay regardless of the number of:

1. "Insureds";

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the auto accident.

B. No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and:

1. Part B or Part C of this policy; or

2. Any Underinsured Motorists Coverage provided by this policy.

## OUT OF STATE COVERAGE

If an auto accident to which this policy applies occurs in any state or province other than the one in which "your covered auto" is principally garaged, we will interpret your policy for that accident as follows:

A. If the state or province has:

1. A financial responsibility or similar law specifying limits of liability for "bodily injury" or "property damage" higher than the limit shown in the Declarations, your policy will provide the higher specified limit.

2. A compulsory insurance or similar law requiring a nonresident to maintain insurance whenever the nonresident uses a vehicle in that state or province, your policy will provide at least the required minimum amounts and types of coverage.

B. No one will be entitled to duplicate payments for the same elements of loss.

## FINANCIAL RESPONSIBILITY

When this policy is certified as future proof of financial responsibility, this policy shall comply with the law to the extent required.

## OTHER INSURANCE

If there is other applicable liability insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide for a vehicle you do not own, including any vehicle while used as a temporary substitute for "your covered auto", shall be excess over any other collectible insurance.

## PART B - MEDICAL PAYMENTS COVERAGE

## INSURING AGREEMENT

A. We will pay reasonable expenses incurred for necessary medical and funeral services because of "bodily injury":

1. Caused by accident; and

2. Sustained by an "insured".

We will pay only those expenses incurred for services rendered within 3 years from the date of the accident.

B. "Insured" as used in this Part means:

1. You or any "family member":

a. While "occupying"; or

b. As a pedestrian when struck by;

a motor vehicle designed for use mainly on public roads or a trailer of any type.

2. Any other person while "occupying" "your covered auto".

Copyright, ISO Properties, Inc., 2003
Case 2:15-cv-04224-NKL   Document 6-1   Filed 12/28/15   Page 72 of 82

## EXCLUSIONS

We do not provide Medical Payments Coverage for any "insured" for "bodily injury":

1. Sustained while "occupying" any motorized vehicle having fewer than four wheels.

2. Sustained while "occupying" "your covered auto" when it is being used as a public or livery conveyance. This Exclusion (2.) does not apply to a share-the-expense car pool.

3. Sustained while "occupying" any vehicle located for use as a residence or premises.

4. Occurring during the course of employment if workers' compensation benefits are required or available for the "bodily injury".

5. Sustained while "occupying", or when struck by, any vehicle (other than "your covered auto") which is:
   a. Owned by you; or
   b. Furnished or available for your regular use.

6. Sustained while "occupying", or when struck by, any vehicle (other than "your covered auto") which is:
   a. Owned by any "family member"; or
   b. Furnished or available for the regular use of any "family member".

   However, this Exclusion (6.) does not apply to you.

7. Sustained while "occupying" a vehicle without a reasonable belief that that "insured" is entitled to do so. This Exclusion (7.) does not apply to a "family member" using "your covered auto" which is owned by you.

8. Sustained while "occupying" a vehicle when it is being used in the "business" of an "insured". This Exclusion (8.) does not apply to "bodily injury" sustained while "occupying" a:
   a. Private passenger auto;
   b. Pickup or van; or
   c. "Trailer" used with a vehicle described in a. or b. above.

9. Caused by or as a consequence of:
   a. Discharge of a nuclear weapon (even if accidental);

b. War (declared or undeclared);
c. Civil war;
d. Insurrection; or
e. Rebellion or revolution.

10. From or as a consequence of the following, whether controlled or uncontrolled or however caused:
    a. Nuclear reaction;
    b. Radiation; or
    c. Radioactive contamination.

11. Sustained while "occupying" any vehicle located inside a facility designed for racing, for the purpose of:
    a. Competing in; or
    b. Practicing or preparing for;

    any prearranged or organized racing or speed contest.

## LIMIT OF LIABILITY

A. The limit of liability shown in the Declarations for this coverage is our maximum limit of liability for each person injured in any one accident. This is the most we will pay regardless of the number of:
   1. "Insureds";
   2. Claims made;
   3. Vehicles or premiums shown in the Declarations; or
   4. Vehicles involved in the accident.

B. No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and:
   1. Part A or Part C of this policy; or
   2. Any Underinsured Motorists Coverage provided by this policy.

## OTHER INSURANCE

If there is other applicable auto medical payments insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a vehicle you do not own, including any vehicle while used as a temporary substitute for "your covered auto", shall be excess over any other collectible auto insurance providing payments for medical or funeral expenses.

---

## PART C - UNINSURED MOTORISTS COVERAGE

### INSURING AGREEMENT

A. We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "uninsured motor vehicle" because of "bodily injury":

1. Sustained by an "insured"; and
2. Caused by an accident.

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the "uninsured motor vehicle".

Any judgment for damages arising out of a suit brought without our written consent is not binding on us.

B. "Insured" as used in this Part means:

1. You or any "family member".

2. Any other person "occupying" "your covered auto".

3. Any person for damages that person is entitled to recover because of "bodily injury" to which this coverage applies sustained by a person described in 1. or 2. above.

C. "Uninsured motor vehicle" means a land motor vehicle or trailer of any type:

1. To which no bodily injury liability bond or policy applies at the time of the accident.

2. To which a bodily injury liability bond or policy applies at the time of the accident. In this case its limit for bodily injury liability must be less than the minimum limit for bodily injury liability specified by the financial responsibility law of the state in which "your covered auto" is principally garaged.

3. Which is a hit-and-run vehicle whose operator or owner cannot be identified and which hits:

   a. You or any "family member";

   b. A vehicle which you or any "family member" are "occupying"; or

   c. "Your covered auto".

4. To which a bodily injury liability bond or policy applies at the time of the accident but the bonding or insuring company:

   a. Denies coverage; or

   b. Is or becomes insolvent.

However, "uninsured motor vehicle" does not include any vehicle or equipment:

1. Owned by or furnished or available for the regular use of you or any "family member".

2. Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer which is or becomes insolvent.

3. Owned by any governmental unit or agency.

4. Operated on rails or crawler treads.

5. Designed mainly for use off public roads while not on public roads.

6. While located for use as a residence or premises.

EXCLUSIONS

A. We do not provide Uninsured Motorists Coverage for "bodily injury" sustained:

1. By an "insured" while "occupying", or when struck by, any motor vehicle owned by that "insured" which is not insured for this coverage under this policy. This includes a trailer of any type used with that vehicle.

2. By any "family member" while "occupying", or when struck by, any motor vehicle you own which is insured for this coverage on a primary basis under any other policy.

B. We do not provide Uninsured Motorists Coverage for "bodily injury" sustained by any "insured":

1. If that "insured" or the legal representative settles the "bodily injury" claim and such settlement prejudices our right to recover payment.

2. While "occupying" "your covered auto" when it is being used as a public or livery conveyance. This Exclusion (B.2.) does not apply to a share-the-expense car pool.

3. Using a vehicle without a reasonable belief that that "insured" is entitled to do so. This Exclusion (B.3.) does not apply to a "family member" using "your covered auto" which is owned by you.

C. This coverage shall not apply directly or indirectly to benefit any insurer or self-insurer under any of the following or similar law:

1. Workers' compensation law; or

2. Disability benefits law.

D. We do not provide Uninsured Motorists Coverage for punitive or exemplary damages.

LIMIT OF LIABILITY

A. The limit of liability shown in the Declarations for each person for Uninsured Motorists Coverage is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one accident. Subject to this limit for each person, the limit of liability shown in the Declarations for each accident for Uninsured Motorists Coverage is our maximum limit of liability for all damages for "bodily injury" resulting from any one accident.

This is the most we will pay regardless of the number of:

1. "Insureds";

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the accident.

Copyright, ISO Properties, Inc., 2003

B. No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and:

1. Part A or Part B of this policy; or

2. Any Underinsured Motorists Coverage provided by this policy.

C. We will not make a duplicate payment under this coverage for any element of loss for which payment has been made by or on behalf of persons or organizations who may be legally responsible.

D. We will not pay for any element of loss if a person is entitled to receive payment for the same element of loss under any of the following or similar law:

1. Workers' compensation law; or

2. Disability benefits law.

OTHER INSURANCE

If there is other applicable insurance available under one or more policies or provisions of coverage that is similar to the insurance provided under this Part of the policy:

1. Any recovery for damages under all such policies or provisions of coverage may equal but not exceed the highest applicable limit for any one vehicle under any insurance providing coverage on either a primary or excess basis.

2. Any insurance we provide with respect to a vehicle you do not own, including any vehicle while used as a temporary substitute for "your covered auto", shall be excess over any collectible insurance providing such coverage on a primary basis.

3. If the coverage under this policy is provided:

   a. On a primary basis, we will pay only our share of the loss that must be paid under insurance providing coverage on a primary basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage provided on a primary basis.

   b. On an excess basis, we will pay only our share of the loss that must be paid under insurance providing coverage on an excess basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage provided on an excess basis.

ARBITRATION

A. If we and an "insured" do not agree:

1. Whether that "insured" is legally entitled to recover damages; or

2. As to the amount of damages which are recoverable by that "insured";

from the owner or operator of an "uninsured motor vehicle", then the matter may be arbitrated. However, disputes concerning coverage under this Part may not be arbitrated.

Both parties must agree to arbitration. If so agreed, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction.

B. Each party will:

1. Pay the expenses it incurs; and

2. Bear the expenses of the third arbitrator equally.

C. Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to procedure and evidence will apply. A decision agreed to by at least two of the arbitrators will be binding as to:

1. Whether the "insured" is legally entitled to recover damages; and

2. The amount of damages. This applies only if the amount does not exceed the minimum limit for bodily injury liability specified by the financial responsibility law of the state in which "your covered auto" is principally garaged. If the amount exceeds that limit, either party may demand the right to a trial. This demand must be made within 60 days of the arbitrators' decision. If this demand is not made, the amount of damages agreed to by the arbitrators will be binding.

---

## PART D - COVERAGE FOR DAMAGE TO YOUR AUTO

INSURING AGREEMENT

A. We will pay for direct and accidental loss to "your covered auto" or any "non-owned auto", including their equipment, minus any applicable deductible shown in the Declarations. If loss to more than one "your covered auto" or "non-owned auto" results from the same "collision", only the highest applicable deductible will apply. We will pay for loss to "your covered auto" caused by:

1. Other than "collision" only if the Declarations indicate that Other Than Collision Coverage is provided for that auto.

Case 2:15-cv-04224-NKL   Document 6-1   Filed 12/28/15   Page 75 of 82

2. "Collision" only if the Declarations indicate that Collision Coverage is provided for that auto.

If there is a loss to a "non-owned auto", we will provide the broadest coverage applicable to any "your covered auto" shown in the Declarations.

B. "Collision" means the upset of "your covered auto" or a "non-owned auto" or their impact with another vehicle or object.

Loss caused by the following is considered other than "collision":

1. Missiles or falling objects;
2. Fire;
3. Theft or larceny;
4. Explosion or earthquake;
5. Windstorm;
6. Hail, water or flood;
7. Malicious mischief or vandalism;
8. Riot or civil commotion;
9. Contact with bird or animal; or
10. Breakage of glass.

If breakage of glass is caused by a "collision", you may elect to have it considered a loss caused by "collision".

C. "Non-owned auto" means:

1. Any private passenger auto, pickup, van or "trailer" not owned by or furnished or available for the regular use of you or any "family member" while in the custody of or being operated by you or any "family member"; or

2. Any auto or "trailer" you do not own while used as a temporary substitute for "your covered auto" which is out of normal use because of its:
   a. Breakdown;
   b. Repair;
   c. Servicing;
   d. Loss; or
   e. Destruction.

## TRANSPORTATION EXPENSES

A. In addition, we will pay, without application of a deductible, up to a maximum of $600 for:

1. Temporary transportation expenses not exceeding $20 per day incurred by you in the event of a loss to "your covered auto". We will pay for such expenses if the loss is caused by:

   a. Other than "collision" only if the Declarations indicate that Other Than Collision Coverage is provided for that auto.

   b. "Collision" only if the Declarations indicate that Collision Coverage is provided for that auto.

2. Expenses for which you become legally responsible in the event of loss to a "non-owned auto". We will pay for such expenses if the loss is caused by:

   a. Other than "collision" only if the Declarations indicate that Other Than Collision Coverage is provided for any "your covered auto".

   b. "Collision" only if the Declarations indicate that Collision Coverage is provided for any "your covered auto".

However, the most we will pay for any expenses for loss of use is $20 per day.

B. Subject to the provisions of Paragraph A., if the loss is caused by:

1. A total theft of "your covered auto" or a "non-owned auto", we will pay only expenses incurred during the period:

   a. Beginning 48 hours after the theft; and

   b. Ending when "your covered auto" or the "non-owned auto" is returned to use or we pay for its loss.

2. Other than theft of a "your covered auto" or a "non-owned auto", we will pay only expenses beginning when the auto is withdrawn from use for more than 24 hours.

Our payment will be limited to that period of time reasonably required to repair or replace the "your covered auto" or the "non-owned auto".

## EXCLUSIONS

We will not pay for:

1. Loss to "your covered auto" or any "non-owned auto" which occurs while it is being used as a public or livery conveyance. This Exclusion (1.) does not apply to a share-the-expense car pool.

2. Damage due and confined to:
   a. Wear and tear;
   b. Freezing;
   c. Mechanical or electrical breakdown or failure; or
   d. Road damage to tires.

This Exclusion (2.) does not apply if the damage results from the total theft of "your covered auto" or any "non-owned auto".

Copyright, ISO Properties, Inc., 2003
Case 2:15-cv-04224-NKL   Document 6-1   Filed 12/28/15   Page 76 of 82

3. Loss due to or as a consequence of:

   a. Radioactive contamination;

   b. Discharge of any nuclear weapon (even if accidental);

   c. War (declared or undeclared);

   d. Civil war;

   e. Insurrection; or

   f. Rebellion or revolution.

4. Loss to any electronic equipment that reproduces, receives or transmits audio, visual or data signals. This includes but is not limited to:

   a. Radios and stereos;

   b. Tape decks;

   c. Compact disk systems;

   d. Navigation systems;

   e. Internet access systems;

   f. Personal computers;

   g. Video entertainment systems;

   h. Telephones;

   i. Televisions;

   j. Two-way mobile radios;

   k. Scanners; or

   l. Citizens band radios.

This Exclusion (4.) does not apply to electronic equipment that is permanently installed in "your covered auto" or any "non-owned auto".

5. Loss to tapes, records, disks or other media used with equipment described in Exclusion 4.

6. A total loss to "your covered auto" or any "non-owned auto" due to destruction or confiscation by governmental or civil authorities.

This Exclusion (6.) does not apply to the interests of Loss Payees in "your covered auto".

7. Loss to:

   a. A "trailer", camper body, or motor home, which is not shown in the Declarations; or

   b. Facilities or equipment used with such "trailer", camper body or motor home. Facilities or equipment include but are not limited to:

     (1) Cooking, dining, plumbing or refrigeration facilities;

     (2) Awnings or cabanas; or

     (3) Any other facilities or equipment used with a "trailer", camper body, or motor home.

This Exclusion (7.) does not apply to a:

   a. "Trailer", and its facilities or equipment, which you do not own; or

   b. "Trailer", camper body, or the facilities or equipment in or attached to the "trailer" or camper body, which you:

     (1) Acquire during the policy period; and

     (2) Ask us to insure within 14 days after you become the owner.

8. Loss to any "non-owned auto" when used by you or any "family member" without a reasonable belief that you or that "family member" are entitled to do so.

9. Loss to equipment designed or used for the detection or location of radar or laser.

10. Loss to any custom furnishings or equipment in or upon any pickup or van. Custom furnishings or equipment include but are not limited to:

   a. Special carpeting or insulation;

   b. Furniture or bars;

   c. Height-extending roofs; or

   d. Custom murals, paintings or other decals or graphics.

This Exclusion (10.) does not apply to a cap, cover or bedliner in or upon any "your covered auto" which is a pickup.

11. Loss to any "non-owned auto" being maintained or used by any person while employed or otherwise engaged in the "business" of:

   a. Selling;

   b. Repairing;

   c. Servicing;

   d. Storing; or

   e. Parking;

vehicles designed for use on public highways. This includes road testing and delivery.

12. Loss to "your covered auto" or any "non-owned auto", located inside a facility designed for racing, for the purpose of:

   a. Competing in; or

   b. Practicing or preparing for;

any prearranged or organized racing or speed contest.

13. Loss to, or loss of use of, a "non-owned auto" rented by:

   a. You; or

   b. Any "family member";

Case 2:15-cv-04224-NKL   Document 6-1   Filed 12/28/15   Page 77 of 82

if a rental vehicle company is precluded from recovering such loss or loss of use, from you or that "family member", pursuant to the provisions of any applicable rental agreement or state law.

## LIMIT OF LIABILITY

A. Our limit of liability for loss will be the lesser of the:

1. Actual cash value of the stolen or damaged property; or

2. Amount necessary to repair or replace the property with other property of like kind and quality.

However, the most we will pay for loss to:

1. Any "non-owned auto" which is a trailer is $1500.

2. Electronic equipment that reproduces, receives or transmits audio, visual or data signals, which is permanently installed in the auto in locations not used by the auto manufacturer for installation of such equipment, is $1,000.

B. An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total loss.

C. If a repair or replacement results in better than like kind or quality, we will not pay for the amount of the betterment.

## PAYMENT OF LOSS

We may pay for loss in money or repair or replace the damaged or stolen property. We may, at our expense, return any stolen property to:

1. You; or

2. The address shown in this policy.

If we return stolen property we will pay for any damage resulting from the theft. We may keep all or part of the property at an agreed or appraised value.

If we pay for loss in money, our payment will include the applicable sales tax for the damaged or stolen property.

## NO BENEFIT TO BAILEE

This insurance shall not directly or indirectly benefit any carrier or other bailee for hire.

## OTHER SOURCES OF RECOVERY

If other sources of recovery also cover the loss, we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a "non-owned auto" shall be excess over any other collectible source of recovery including, but not limited to:

1. Any coverage provided by the owner of the "non-owned auto";

2. Any other applicable physical damage insurance;

3. Any other source of recovery applicable to the loss.

## APPRAISAL

A. If we and you do not agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. The appraisers will state separately the actual cash value and the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

1. Pay its chosen appraiser; and

2. Bear the expenses of the appraisal and umpire equally.

B. We do not waive any of our rights under this policy by agreeing to an appraisal.

---

## PART E - DUTIES AFTER AN ACCIDENT OR LOSS

We have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us:

A. We must be notified promptly of how, when and where the accident or loss happened. Notice should also include the names and addresses of any injured persons and of any witnesses.

B. A person seeking any coverage must:

1. Cooperate with us in the investigation, settlement or defense of any claim or suit.

2. Promptly send us copies of any notices or legal papers received in connection with the accident or loss.

3. Submit, as often as we reasonably require:

a. To physical exams by physicians we select. We will pay for these exams.

b. To examination under oath and subscribe the same.

4. Authorize us to obtain:

a. Medical reports; and

b. Other pertinent records.

5. Submit a proof of loss when required by us.

C. A person seeking Uninsured Motorists Coverage must also:

Copyright, ISO Properties, Inc., 2003

Case 2:15-cv-04224-NKL   Document 6-1   Filed 12/28/15   Page 78 of 82

1. Promptly notify the police if a hit-and-run driver is involved.

2. Promptly send us copies of the legal papers if a suit is brought.

D. A person seeking Coverage For Damage To Your Auto must also:

1. Take reasonable steps after loss to protect "your covered auto" or any "non-owned auto" and their equipment from further loss. We will pay reasonable expenses incurred to do this.

2. Promptly notify the police if "your covered auto" or any "non-owned auto" is stolen.

3. Permit us to inspect and appraise the damaged property before its repair or disposal.

## PART F - GENERAL PROVISIONS

### BANKRUPTCY

Bankruptcy or insolvency of the "insured" shall not relieve us of any obligations under this policy.

### CHANGES

A. This policy contains all the agreements between you and us. Its terms may not be changed or waived except by endorsement issued by us.

B. If there is a change to the information used to develop the policy premium, we may adjust your premium. Changes during the policy term that may result in a premium increase or decrease include, but are not limited to, changes in:

1. The number, type or use classification of insured vehicles;

2. Operators using insured vehicles;

3. The place of principal garaging of insured vehicles;

4. Coverage, deductible or limits.

If a change resulting from A. or B. requires a premium adjustment, we will make the premium adjustment in accordance with our manual rules.

C. If we make a change which broadens coverage under this edition of your policy without additional premium charge, that change will automatically apply to your policy as of the date we implement the change in your state. This Paragraph (C.) does not apply to changes implemented with a general program revision that includes both broadenings and restrictions in coverage, whether that general program revision is implemented through introduction of:

1. A subsequent edition of your policy; or

2. An Amendatory Endorsement.

### FRAUD

We do not provide coverage for any "insured" who has made fraudulent statements or engaged in fraudulent conduct in connection with any accident or loss for which coverage is sought under this policy.

### LEGAL ACTION AGAINST US

A. No legal action may be brought against us until there has been full compliance with all the terms of this policy. In addition, under Part A, no legal action may be brought against us until:

1. We agree in writing that the "insured" has an obligation to pay; or

2. The amount of that obligation has been finally determined by judgment after trial.

B. No person or organization has any right under this policy to bring us into any action to determine the liability of an "insured".

### OUR RIGHT TO RECOVER PAYMENT

A. If we make a payment under this policy and the person to or for whom payment was made has a right to recover damages from another we shall be subrogated to that right. That person shall do:

1. Whatever is necessary to enable us to exercise our rights; and

2. Nothing after loss to prejudice them.

However, our rights in this Paragraph (A.) do not apply under Part D, against any person using "your covered auto" with a reasonable belief that that person is entitled to do so.

B. If we make a payment under this policy and the person to or for whom payment is made recovers damages from another, that person shall:

1. Hold in trust for us the proceeds of the recovery; and

2. Reimburse us to the extent of our payment.

### POLICY PERIOD AND TERRITORY

A. This policy applies only to accidents and losses which occur:

1. During the policy period as shown in the Declarations; and

2. Within the policy territory.

B. The policy territory is:

1. The United States of America, its territories or possessions;

2. Puerto Rico; or

3. Canada.

Case 2:15-cv-04224-NKL Document 6-1 Filed 12/28/15 Page 79 of 82

This policy also applies to loss to, or accidents involving, "your covered auto" while being transported between their ports.

## TERMINATION

### A. Cancellation

This policy may be cancelled during the policy period as follows:

1. The named insured shown in the Declarations may cancel by:

   a. Returning this policy to us; or

   b. Giving us advance written notice of the date cancellation is to take effect.

2. We may cancel by mailing to the named insured shown in the Declarations at the address shown in this policy:

   a. At least 10 days notice:

      (1) If cancellation is for nonpayment of premium; or

      (2) If notice is mailed during the first 60 days this policy is in effect and this is not a renewal or continuation policy; or

   b. At least 20 days notice in all other cases.

3. After this policy is in effect for 60 days, or if this is a renewal or continuation policy, we will cancel only:

   a. For nonpayment of premium; or

   b. If your driver's license or that of:

      (1) Any driver who lives with you; or

      (2) Any driver who customarily uses "your covered auto";

      has been suspended or revoked. This must have occurred:

      (1) During the policy period; or

      (2) Since the last anniversary of the original effective date if the policy period is other than 1 year; or

   c. If the policy was obtained through material misrepresentation.

### B. Nonrenewal

If we decide not to renew or continue this policy, we will mail notice to the named insured shown in the Declarations at the address shown in this policy. Notice will be mailed at least 20 days before the end of the policy period. Subject to this notice requirement, if the policy period is:

1. Less than 6 months, we will have the right not to renew or continue this policy every 6 months, beginning 6 months after its original effective date.

2. 6 months or longer, but less than one year, we will have the right not to renew or continue this policy at the end of the policy period.

3. 1 year or longer, we will have the right not to renew or continue this policy at each anniversary of its original effective date.

### C. Automatic Termination

If we offer to renew or continue and you or your representative do not accept, this policy will automatically terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer.

If you obtain other insurance on "your covered auto", any similar insurance provided by this policy will terminate as to that auto on the effective date of the other insurance.

### D. Other Termination Provisions

1. We may deliver any notice instead of mailing it. Proof of mailing of any notice shall be sufficient proof of notice.

2. If this policy is cancelled, you may be entitled to a premium refund. If so, we will send you the refund. The premium refund, if any, will be computed according to our manuals. However, making or offering to make the refund is not a condition of cancellation.

3. The effective date of cancellation stated in the notice shall become the end of the policy period.

## TRANSFER OF YOUR INTEREST IN THIS POLICY

### A. Your rights and duties under this policy may not be assigned without our written consent. However, if a named insured shown in the Declarations dies, coverage will be provided for:

1. The surviving spouse if resident in the same household at the time of death. Coverage applies to the spouse as if a named insured shown in the Declarations; and

2. The legal representative of the deceased person as if a named insured shown in the Declarations. This applies only with respect to the representative's legal responsibility to maintain or use "your covered auto".

### B. Coverage will only be provided until the end of the policy period.

## TWO OR MORE AUTO POLICIES

If this policy and any other auto insurance policy issued to you by us apply to the same accident, the maximum limit of our liability under all the policies shall not exceed the highest applicable limit of liability under any one policy.

Copyright, ISO Properties, Inc., 2003
PP 00 01 01 05

# CONCEALMENT OR FRAUD CONDITION

This policy is amended to include the following additional condition or if the policy now contains a similar condition, it is deleted and the following substituted:

Concealment or fraud. This entire policy shall be void if, whether before or after a loss, any insured has intentionally concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof or the interest of any insured therein, or in the case of any fraud or false swearing by any insured relating thereto.

This condition, however, does not apply to liability coverage if this policy is certified, as described in 303.170 RSMo. In this case liability coverage only is provided, and only to the extent of the minimum financial responsibility limits of liability required by Chapter 303 RSMo.

All other provisions of this policy apply.

TRUE & CERTIFIED

BY

# COLUMBIA INSURANCE GROUP
## PRIVACY PROTECTION POLICY NOTICE
## NO RESPONSE IS REQUIRED

It is Columbia Insurance Group's policy to safeguard the confidentiality of information concerning you and your business with us. This notice describes our privacy policy with respect to the collection, disclosure and protection of such information.

## COLLECTION OF INFORMATION

We obtain most of the information we need directly from you and your insurance agent. You provide this information when you apply for our products or services or when you file claims for benefits. We may also obtain information about your transactions with us, our affiliates or others to assist us in evaluating requests for insurance and benefit claims, to administer and process transactions which you have requested or initiated, or other business purposes.

## DISCLOSURE OF INFORMATION

Information may be shared among our companies in order to provide you better service. We may disclose information to third parties when we believe it is necessary to conduct our business or when disclosure is permitted by law. Information may be disclosed to others who assist us in providing business services such as helping us evaluate requests for insurance or benefits, performing general insurance activities for us, or assisting us in processing transactions which you have requested or initiated. Information may also be disclosed for audit purposes, to help us prevent fraud, to law enforcement or regulatory agencies, to consumer reporting agencies or as otherwise permitted by law. This information may include your policy coverages, as well as your claims, premium and payment history. We do not share medical or health information except as you have authorized to provide services you have initiated.

## PROTECTION OF INFORMATION

We restrict access to non-public personal information about you to authorized persons who need the information to provide services related to your policy or transaction with us. We also maintain physical, electronic, and procedural safeguards that comply with applicable law to guard your non-public personal information.

We require any organization who assists us in providing business services to maintain the confidentiality of your non-public personal information and not use such information for any other purpose. We strive to keep all information about you accurate and up to date. If you discover any inaccuracy, please notify us immediately.

If you have questions or would like to contact us regarding your information, you may do so by writing to us at:

Columbia Insurance Group
Attn: Legal Department
2102 White Gate Drive
Columbia, Missouri 65202

or telephoning us at: 1-573-474-6193

We promise to strive to keep you informed about how we protect your privacy. We reserve the right to change these privacy principles at any time.

Edition 5/05

TRUE & CERTIFIED
BY