IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| SAFE AUTO INSURANCE COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 2:15-cv-04224-NKL |
| ) | |
| BRYAN ROY ESCABUSA and ) | |
| JAMES MUELLER, ) | |
| ) | |
| Defendants. ) | |

**ORDER**

Defendants Bryan Roy Escabusa and James Mueller jointly move to dismiss Plaintiff Safe Auto Insurance Company's complaint for declaratory judgment, on the basis that a parallel proceeding involving the same parties is pending in state court. [Doc. 6.] The motion to dismiss is granted.

**I.  Background**

Escabusa and Mueller had a motor vehicle accident in May 2012, when Escabusa drove into Mueller's path. Escabusa's vehicle was insured by Safe Auto. Columbia Mutual Insurance Company insured a different vehicle under the names of Escabusa's parents, and Escabusa contends he is also insured under the Columbia Mutual policy for Mueller's claims against him.

Safe Auto alleges that in July 2012, prior to any demand, it offered Mueller its policy limits of $25,000, which Mueller rejected. In October 2013, Mueller filed suit in state court against Escabusa. Safe Auto alleges it accepted coverage and afforded a defense to Escabusa without reservation of rights, and continued to hold open and reiterate its offer of the policy limits to Mueller, which Mueller rejected. Safe Auto states that in rejecting each policy limit offer, counsel for Mueller insisted that both Safe Auto and Escabusa execute a written agreement

with Mueller, that included terms limiting Escabusa's personal exposure, would expose Safe Auto to extra-contractual damages or a claim of bad faith, and amounted to Escabusa's admission of liability.

Escabusa, through counsel, advised Safe Auto in September 2015 that Escabusa would waive a jury trial, not contest liability, and present no evidence, and would execute a post-judgment agreement to limit his personal liability. A bench trial was held October 5, 2015. Mueller's medical specials totaled $73,684.69, and Escabusa did not contest liability, examine witnesses, or present any evidence. Judgment was entered against Escabusa for $1,250,000 in actual damages, $126,665.28 in pre-judgment interest, and $1,850.55 in costs. An amended judgment was entered on 11/3/2015, reducing prejudgment interest to $77,283.99; the grand total of the amended judgment is $1,327,283.90.

One week after the trial, Safe Auto tendered payment of $25,017.55, representing the policy limits plus Safe Auto's calculation of post-judgment interest. The following day, Safe Auto filed its complaint in Federal court, seeking declarations that:

- Safe Auto has satisfied its obligations under the policy and Missouri law by providing Escabusa with a defense in the underlying action without reservation of rights, offering the policy limits in settlement, and tendering policy limits "with applicable post-judgment interest, in partial satisfaction of the underlying judgment";

- Neither the policy nor Missouri law require Safe Auto to execute an "an agreement extraneous to the Policy limiting the insured's personal liability and subjecting Safe Auto to bad faith liability";

- Neither the policy nor Missouri law require Safe Auto to execute "an agreement extraneous to the Policy[,]" sight unseen;

- Under the terms of the policy, Safe Auto is not obligated to indemnify Escabusa for any pre-judgment interest included in the judgment in the underlying action, because "Safe Auto tendered the policy limits prior to any qualifying settlement offer or demand"; and

2

- Under the terms of the policy and Missouri law, Safe Auto is not obligated to pay any sums to "Defendant Escabusa or Defendant Mueller in excess of the policy limit and post-judgment interest already paid, as such payments represent the complete obligation under the Policy. Any payment in excess of the Limit of Liability provided by the Policy is further precluded by defendant Escabusa's actions in voluntarily incurring such liability, contravening" the policy's exclusion for liability voluntarily incurred, and duty to cooperate.

[Doc. 1, pp. 8-9.]

On December 23, 2015, Mueller filed an equitable garnishment action in state court under Mo. Rev. Stat. § 379.200, against State Farm and Escabusa, as well as Columbia Mutual. Mueller alleges that the amended judgment has not been fully paid or satisfied by any of the three defendants. [Doc. 6-1, p. 4.] Mueller asks, "as judgment creditor" and pursuant to § 379.200, that the state court enter a money judgment against Safe Auto and Columbia Mutual, and order them to pay him, "in partial satisfaction of the judgment against … Escabusa, all insurance coverages and benefits owed under the … policies, including the prejudgment … and the postjudgment interest accrued[.]" [*Id.,* p. 5.] Mueller alleges that Safe Auto and Columbia Mutual breached their contracts of insurance with Escabusa, and that the policies are "ambiguous as to Additional Payments or supplementary payments coverages as to interest and court costs and must be construed in favor of coverage for…Escabusa[.]" [*Id.,* at p. 7.] Mueller also asks the state court to "declare [the] parties['] rights, duties and obligations under all auto insurance policies that insured…Escabusa for [Mueller's] final judgment pursuant to Missouri Supreme Court Rule 87.01 and Missouri Revised Statute § 527.010 *et seq*." [*Id.*] Mueller further alleges that any coverage limitations or exclusions the insurance companies may rely on are against public policy and Missouri law, and are therefore void and unenforceable. Finally, he alleges that Columbia Mutual wrongfully denied coverage to Escabusa for the claim and judgment, "rendering Columbia Mutual … liable for all resulting damages to…Escabusa[.]" [*Id.*, pp. 7-8.]

3

## II. Discussion

Defendants argue that the coverage issue Safe Auto raises in this Court involves no matter of Federal law and can be more appropriately adjudicated in the underlying state court action, which involves the same parties, policy, and coverage issue. Safe Auto argues, "Upon examination of Defendant Mueller's state court pleading, it is clear the two proceedings at issue are not similar enough to constitute parallel proceedings." [Doc. 9, p. 5.]

It is well established that "district courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." *Wilton v. Seven Falls Co.,* 515 U.S. 277, 282 (1995) (citing *Brillhart v. Excess Ins. Co. of Am.,* 316 U.S. 491, 494–95 (1942)). "In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *Id.* at 288. Thus the Supreme Court held in *Wilton* that the standard under which district courts decide whether to dismiss or stay a federal declaratory judgment action during the pendency of a parallel state court proceeding is the discretionary one set out in *Brillhart*. "Under *Brillhart*, the district court must consider the scope and nature of the pending state court proceeding to ascertain whether the issues in controversy between the parties to the federal action, not foreclosed under applicable substantive law, can be better settled by the state court." *Capitol Indem. Corp. v. Haverfield*, 218 F.3d 872, 874 (8th Cir. 2000) (citations omitted). "If so, the district court must dismiss the federal action because 'it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by Federal law, between the same parties.'" *Id.* (quoting *Brillhart*, 316 U.S. at 495). The Eighth Circuit summarized, in

*Scottsdale Ins. Co. v. Detco Indus., Inc.,* 426 F.3d 994, 997 (8th Cir. 2005), that suits are parallel when "substantially the same parties litigate substantially the same issues in different forums."[1]

Where a declaratory judgment action has some relation to an underlying state action but is not "parallel" to it, "the considerations of practicality and wise judicial administration that allow a district court greater discretion under *Wilton* are diminished." *Id.* at 996. Thus, the Eighth Circuit has adopted a six-factor test developed by the Fourth Circuit to guide district courts in determining whether to exercise jurisdiction over a declaratory judgment action related, but not parallel, to an action pending in state court. *Id.* at 998–99 (citing *Aetna Cas. & Sur. Co. v. Ind–Com Elec. Co.,* 139 F.3d 419, 422 (4th Cir.1998)). Under *Scottsdale*, a court examines:

(1) whether the declaratory judgment sought will serve a useful purpose in clarifying and settling the legal relations in issue;

(2) whether the declaratory judgment will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the federal proceeding;

(3) the strength of the state's interest in having the issues raised in the federal declaratory judgment action decided in state courts;

(4) whether the issues raised in the federal action can more efficiently be resolved in the court in which the state action is pending;

(5) whether permitting the federal action to go forward would result in unnecessary entanglement between the federal and state court systems, because of the presence of overlapping issues of fact or law; and

(6) whether the declaratory judgment action is being used merely as a device for procedural fencing—that is to provide another

---

[1] That Safe Auto filed its declaratory judgment action in Federal court before Mueller filed his equitable garnishment action in state court does not resolve the question of whether this Court should abstain. *See, e.g, Capitol Indem. Corp. v. Haverfield,* 218 F.3d 872, 873-74 (8th Cir. 2000) (Eighth Circuit held that the district court abused its discretion in denying a motion to dismiss or stay a federal declaratory judgment action in favor of a parallel state court proceeding, even though the federal action was filed several months prior to the state suit).

5

>     forum in a race for res judicata or to achieve a federal hearing
>     in a case otherwise not removable.

*Id.* (quotations omitted). "Facts bearing on the usefulness of the declaratory judgment remedy, and the fitness of the case for resolution are particularly within [the district court's] grasp." *Aetna Cas.*, 139 F.3d at 422 (quoting *Wilton,* 515 U.S. at 289). Declining to exercise jurisdiction over a declaratory judgment action is within a district court's discretion so long as the factors weigh in favor of denying or postponing declaratory relief. *Scottsdale*, 426 F.3d at 997.

As Defendants point out, this case involves interpretation of an insurance policy, which is a matter of state law, not Federal law. *See Gohagan v. Cincinnati Ins. Co.,* 809 F.3d 1012, 1015 (8th Cir. 2016).

This case and the state-court case also significantly overlap, but they involve some different issues. Mueller's state-court equitable garnishment action, filed under Mo. Rev. Stat. § 379.200 against Safe Auto, Escabusa, and Columbia Mutual, is not really a garnishment action. It is a "suit in equity against the insurance company to seek satisfaction of [his] judgment under [the] insurance policy.'" *Glover v. State Farm Fire & Cas. Co.*, 984 F.2d 259, 260 (8th Cir. 1993). Under § 379.200, a judgment creditor must proceed against both the insurance company and the insured. *See id.* To prevail, the judgment creditor must prove he obtained a judgment in his favor against the insured, that the policy was in effect when the incident occurred, and that the injury is covered by the policy. *Kotini v. Century Sur. Co.*, 411 S.W.3d 374, 377 (Mo. App. 2013). Because the rights of the injured party or judgment creditor are derivative under § 379.200, the insurer may "interpose defenses it would have against" the insured in such an action. *McNeal v. Manchester Ins. & Indem. Co.,* 540 S.W.2d 113, 119 (Mo. Ct. App. 1976). *See, e.g., Adams v. Manchester Ins. & Indem. Co.,* 385 S.W.2d 359, 363 (Mo. Ct. App. 1964) (under § 379.200, an insurer may assert the defense of "no coverage" by proving an applicable

policy exclusion).

Mueller asks in the state-court case for entry of a money judgment against Safe Auto and another insurance company, Columbia Mutual, and an order requiring them to pay, in partial satisfaction of the judgment against Escabusa, all monies owed under the policies, including pre- and post-judgment interest accrued. Mueller alleges the policies are ambiguous with respect to additional or supplementary payment coverages for interest and costs, and asks that the policies be construed in favor of coverage for Escabusa. Mueller also asks for a declaration under Mo. S. Ct. Rule 87.01 and Mo. Rev. Stat. § 527.101 of the parties' rights, duties, and obligations under the policies. And he alleges Columbia Mutual wrongfully denied coverage to Escabusa and is therefore liable for Escabusa's resulting damages.

Safe Auto asks in this case for a declaration that it satisfied its obligations under its policy and Missouri law by providing Escabusa a defense without reservation of rights and tendering policy limits in settlement with applicable post-judgment interest; and a declaration that it is not liable for pre-judgment interest. Safe Auto also asks for a declaration that it is not liable for amounts in excess of policy limits or already paid, whether under the terms of the policy or Missouri law, or because of policy exclusions for liability voluntarily incurred and failure to cooperate. Finally, Safe Auto asks for a declaration that neither the policy nor Missouri law require it to execute an agreement extraneous to the policy, sight unseen, that would limit Escabusa's personal liability and expose Safe Auto to bad faith liability.

In short, the state-court case concerns indemnification under the Safe Auto and Columbia Mutual policies. It also includes an allegation against Columbia Mutual for wrongful failure to settle. This case concerns indemnification under the Safe Auto policy, and whether Safe Auto is liable for certain extra-contractual obligations. While not identical, the issues in the two cases

7

significantly overlap.  The parties are the same in both cases, except that the state-court case includes an additional party, Columbia Mutual.  For suits to be parallel does not mean they must be identical.  *See Landis, et al. v. North American Co.,* 299 U.S. 248, 254 (1936).   Nonetheless, the two cases *are* so related as to satisfy the *Scottsdale* six-factor test for denial of such relief, as discussed below.

The fifth factor asks "whether permitting the federal action to go forward would result in unnecessary entanglement between the federal and state court systems, because of the presence of overlapping issues of fact or law."  This factor weighs heavily in favor of abstention because the two cases significantly overlap, and going forward with the federal action would likely result in unnecessary entanglement, in several ways.  First, the cases share similar requests for declarations or findings concerning the parties' rights, duties, and obligations under the Safe Auto policy.  Further, if the state court concludes Mueller cannot establish entitlement to equitable garnishment, Safe Auto's requests for declaratory relief in this case will become moot.

Also, Safe Auto's allegation that Escabusa violated a policy provision by failing to cooperate is likely to be litigated in state court, because such a violation is an insurer's affirmative defense to equitable garnishment.  *Hayes v. United Fire & Cas. Co.,* 3 S.W.3d 853, 857 (Mo. Ct. App. 1999) ("A cooperation clause in an insurance policy is a condition subsequent which necessitates proof by the insurer of facts sufficient to relieve it of liability."); *see also Smith v. Progressive Cas. Ins. Co.,* 61 S.W.3d 280, 283 (Mo. Ct. App. 2001) (where the insured entered into a consent judgment without notice to the insurer, insurer could raise affirmative defense of failure to cooperate in equitable garnishment proceeding).  Moreover, the "Declaratory Judgment Act is not to be used to bring to the federal courts an affirmative defense which can be asserted in a pending state action."  *International Ass'n of Entrepreneurs of*

8

*America v. Angoff*, 58 F.3d 1266, 1270 (8th Cir. 1995) (citations omitted). *See also BASF Corp. v. Symington,* 50 F.3d 555, 559 (8th Cir. 1995) ("where a declaratory plaintiff raises chiefly an affirmative defense, and it appears that granting relief could effectively deny an allegedly injured party its otherwise legitimate choice of forum and time for suit, no declaratory judgment should issue").

The third *Scottsdale* factor concerns "the strength of the state's interest in having the issues raised in the federal declaratory judgment action decided in state courts." Safe Auto's claims for declaratory relief must be decided in accordance with Missouri law, which controls here. Thus, the Missouri court in which the underlying case is pending has an interest in determining the extent of an insurer's liability and obligations.

The first *Scottsdale* factor asks "whether the declaratory judgment sought will serve a useful purpose in clarifying and settling the legal relations in issue," and the second asks "whether the declaratory judgment will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the federal proceeding." In examining these factors, a court must bear in mind that a declaratory judgment action should not be used "to try a controversy by piecemeal, or to try particular issues without settling the entire controversy, or to interfere with an action which has already been instituted." *Aetna Cas.*, 139 F.3d at 422; *see also Sherwin-Williams Co. v. Holmes Cty.*, 343 F.3d 383, 391 (5th Cir. 2003) ("A federal district court should avoid duplicative or piecemeal litigation where possible.") These two factors weigh in favor of abstention. Proceeding herein would be duplicative with respect to the overlapping issues. It would also risk entry of conflicting orders, which would not help clarify and settle legal relations, nor afford relief from uncertainty, insecurity, and controversy. The risk of conflicting orders goes not only to the possibility of conflicting declarations of the law, but

9

conflicting determinations of the facts, because under Missouri law, "the duty to indemnify is determined by the facts as they are established at trial or as they are finally determined by some other means." *Arch Ins. Co. v. Sunset Fin. Svs., Inc.,* 475 S.W.3d 730, 734 (Mo. Ct. App. 2015). Further, whether Safe Auto's request for declaration concerning any extra-contractual liability is unique to this case, addressing only that issue would result in piecemeal litigation, not resolve all litigation.

The fourth factor asks "whether the issues raised in the federal action can more efficiently be resolved in the court in which the state action is pending." Insurers often bring claims for declaratory relief in state court against their insureds. *See, e.g., Gulf Ins. Co. v. Noble Broadcast,* 936 S.W.2d 810 (Mo. 1997) (en banc); *Bar Plan Mut. Ins. Co. v. Chesterfield Mgmt. Associates,* 407 S.W.3d 621 (Mo. Ct. App. 2013). This Court sees no reason why Safe Auto cannot bring its claims for declaratory relief in the court in which the state action is pending. For example, in *Federated Mut. Ins. Co. v. Shernaman Enterprises, Inc.,* 2014 WL 677832 (E.D. Mo. Dec. 2, 2014), an insurer filed a declaratory judgment action in Federal court, concerning its obligation to defend under two insurance policies, or to indemnify its insured in connection with settlement or judgment. The judgment exceeded policy limits. An equitable garnishment proceeding was pending in state court, and the insured and injured party moved to dismiss or stay the declaratory judgment action. The district court rejected the insurer's "unsupported argument that the state court's jurisdiction is limited to the policy proceeds and [found] that all of the issues pending among the parties [could] be satisfactorily adjudicated in the equitable garnishment action." *Id.* at *5. *See also Columbia Cas. Co. v. HIAR Holdings, LLC,* 411 S.W.3d 258 (Mo. 2013) (en banc) (class brought equitable garnishment against insurer after entry of judgment approving settlement, and insurer sought declaratory judgment that its policy with its insured did not

10

provide coverage), and *Mendota Ins. Co. v. Lawson,* 456 S.W.3d 898 (Mo. Ct. App. 2015) (after injured party obtained judgment against the insured, the insurance company filed suit against for declaratory judgment concerning its rights and obligations under the policy, against the injured party and insured; the injured party filed a counter-claim for equitable garnishment under § 379.200). Safe Auto has not argued that it is unable to bring all of its claims for declaratory relief in the state court. Resolving all of its issues in the court in which the state action is pending would be efficient because that court will be as familiar with the facts as this Court, and duplication by this Court and the parties would be avoided.

Finally, the sixth factor asks "whether the declaratory judgment action is being used merely as a device for procedural fencing—that is to provide another forum in a race for res judicata or to achieve a federal hearing in a case otherwise not removable." The Court cannot conclude based on the record before it that Safe Auto's filing of the declaratory judgment action in federal court was for purposes of procedural fencing.

On the whole, the *Scottsdale* factors weigh heavily in favor of abstention, especially those which consider the practicalities of judicial administration and comity to state courts. The Court in its discretion concludes it will abstain.

Safe Auto relies on *Continental Cas. Co. v. Advance Terrazo & Tile Co., Inc.,* 462 F.3d 1002 (8th Cir. 2006), in arguing that the factors weigh in favor of this Court's exercise of jurisdiction. The case does not change the analysis. There, the underlying state court case was the tort case brought against the insured to determine liability for the plaintiff's injuries. The insurer's declaratory judgment case filed in federal court was to determine the insured's coverage under the policy. The district court decided the proceedings were not parallel, and declined to abstain. The Eighth Circuit held that the district court had not abused its discretion.

11

The Eighth Circuit noted, among other things, that the federal action would not unnecessarily entangle the two court systems and the state court could not resolve the legal issue of coverage more efficiently. "Notably, the parties elected to stay the action in state court so that the federal declaratory judgment action could take place." *Id.* at 1007. The case before this Court provides no such demarcations between the two actions.

Following a decision to abstain from adjudicating a declaratory judgment action, a court has discretion to either dismiss or stay the federal action. Generally, a stay rather dismissal is the preferred mode of abstention where the possibility of a return to federal court remains. *Capitol Indem. Corp. v. Haverfield*, 218 F.3d 872, 875 n.2 (8th Cir. 2000). But when the court can see no reason why an action to return to federal court, dismissal is appropriate. *Id.* In deciding whether to dismiss, a court should consider the "scope of the state proceedings, the possibility of delay or procedural inadequacy in the state proceedings, the possibility that another federal action will be time-barred should the instant suit be dismissed, and any other appropriate factor." *U.S. v. City of Las Cruces,* 289 F.3d 1170, 1193 (10th Cir. 2002); *see also Federal Ins. Co. v. Sprint Corp.,* 293 F.Supp.2d 1245, 1248 (D. Kan. 2003) (holding that dismissal of federal declaratory action was more appropriate than a stay because the court "[did] not anticipate a return to federal court or a 'significant possibility of delay or other procedural inadequacy in the state proceedings'").

Here, the Court finds that the scope of the state proceedings is broad enough to fully and efficiently resolve the defenses Safe Auto seeks to assert this case and to pursue any claims for declaratory relief. Safe Auto does not indicate there is a significant possibility of delay or procedural inadequacy in the state court proceeding, nor that it risks a time bar should this case be dismissed. The Court does not anticipate this case returning to federal court. Accordingly, it will be dismissed, rather than stayed.

12

### III. Conclusion

Defendants Escabusa and Mueller' joint motion to dismiss [Doc. 6] is granted.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: March 18, 2016
Jefferson City, Missouri